1  Todd C. Ringstad (State Bar No. 97345)
   todd@ringstadlaw.com
2  RINGSTAD & SANDERS LLP
   23101 Lake Center Drive, Suite 355
3  Lake Forest, CA 92630
   Telephone: 949-851-7450
4  Facsimile: 949-851-6926

5  Proposed Counsel for
   Thomas H. Casey, Chapter 11 Trustee

6

7

8            **UNITED STATES BANKRUPTCY COURT**

9        **CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION**

10

11  In re                                    Case No. 8:25-bk-11898 MH

12  SERENADE NEWPORT, LLC.,                  Chapter 11 Proceeding

13
                                            **DISCLOSURE STATEMENT DESCRIBING**
14              Debtor.                      **CHAPTER 11 PLAN FILED BY CHAPTER 11**
                                            **TRUSTEE**
15
                                            **Disclosure Statement Hearing:**
16                                          Date:        -
                                            Time:
17                                          Place: _____ – Virtual (Via ZoomGov)
                                                   411 West Fourth Street
18                                                 Santa Ana, CA 92701
19
                                            **Plan Confirmation Hearing:**
20                                          Date:
                                            Time:
21                                          Place: _____ (Via ZoomGov)
                                                   411 West Fourth Street
22                                                 Santa Ana, CA 92701
23

24

25

26

27

28

Ringstad & Sanders
— LLP —
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949-851-7450

## TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................... 5

II.   DEFINITIONS AND RULES OF INTERPRETATION……………………….. 11
    2.1     Definitions………………………………………………………. 11
    2.1.1   Administrative Claim…………………………………………… 11
    2.1.2   Administrative Tax Claim……………………………………… 11
    2.1.3   Allowed Administrative Claim………………………………… 11
    2.1.4   Allowed Claim………………………………………………….. 11
    2.1.5   Allowed Deficiency Claim……………………………………… 12
    2.1.6   Allowed General Unsecured Claim…………………………… 12
    2.1.7   Allowed Priority Tax Claim…………………………………… 12
    2.1.8   Allowed Priority Unsecured Claim…………………………….. 12
    2.1.9   Allowed Secured Claim………………………………………… 13
    2.1.10  Avoidance Action……………………………………………… 13
    2.1.11  Bankruptcy Code……………………………………………….. 13
    2.1.12  Bankruptcy Court……………………………………………… 13
    2.1.13  Bankruptcy Rules ……………………………………………… 13
    2.1.14  Bar Date(s)……………………………………………………… 13
    2.1.15  Business Day……………………………………………………. 13
    2.1.16  Case…………………………………………………………….. 14
    2.1.17  Cash…………………………………………………………….. 14
    2.1.18  Claim…………………………………………………………… 14
    2.1.19  Claims Objection Deadline…………………………………… 14
    2.1.20  Class……………………………………………………………. 14
    2.1.21  Confirmation Date……………………………………………... 14
    2.1.22  Confirmation Hearing ………………………………………… 14
    2.1.23  Confirmation Order…………………………………………… 14
    2.1.24  Creditor………………………………………………………… 14
    2.1.25  Debtor………………………………………………………….. 14
    2.1.26  Disclosure Statement…………………………………………… 14
    2.1.27  Disputed Claim………………………………………………… 15
    2.1.28  Disputed Disputed Claims Reserve ………………………….. 15
    2.1.29  Distribution …………………………………………………… 15
    2.1.30  Effective Date………………………………………………….. 15
    2.1.31  Estate…………………………………………………………… 16
    2.1.32  Estate Claims………………………………………………….. 16
    2.1.33  Final Order…………………………………………………….. 16
    2.1.34  General Administrative Claims Bar Date …………………….. 16
    2.1.35  General Unsecured Claim……………………………………… 16
    2.1.36  General Unsecured Creditor…………………………………… 16
    2.1.37  Governmental Unit…………………………………………….. 16
    2.1.38  Initial Distribution Date……………………………………….. 16
    2.1.39  Insiders………………………………………………………… 17
    2.1.40  Lien…………………………………………………………….. 17
    2.1.41  Net Proceeds…………………………………………………… 17
    2.1.42  Net Sales Proceeds…………………………………………….. 17
    2.1.43  Net Sales Proceeds Account…………………………………… 17
    2.1.44  Petition Date…………………………………………………… 17
    2.1.45  Plan…………………………………………………………….. 17
    2.1.46  Plan Agent……………………………………………………… 17
    2.1.47  Post-Confirmation Expenses………………………………….. 17
    2.1.48  PPRF…………………………………………………………… 18

Ringstad & Sanders
LLP
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

2.1.49  Priority Tax Claim……………………………………………… 18
2.1.50  Priority Tax Holder……………………………………………… 18
2.1.51  Professional……………………………………………………… 18
2.1.52  Proof of Claim…………………………………………………… 18
2.1.53  Pro Rata………………………………………………………… 18
2.1.54  Property………………………………………………………… 18
2.1.55  Schedules………………………………………………………… 18
2.1.56  Secured Claim…………………………………………………… 18
2.1.57  Secured Creditors………………………………………………... 19
2.1.58  Sitlani Holdings………………………………………………… 19
2.1.59  Tax……………………………………………………………… 19
2.1.60  Tax Claim………………………………………………………… 19
2.1.61  Trustee…………………………………………………………… 19
2.1.62  Unclaimed Property……………………………………………… 19
2.1.63  Unclaimed Property Reserve……………………………………… 19
2.1.64  United States Trustee…………………………………………… 19

III.    CONFIRMATION AND VOTING ...................................................... 19

IV.    BACKGROUND OF THE DEBTOR ................................................... 21

        A.    Formation of the Debtor.................................................... 22
        B.    Acquisition of the Property ............................................... 22
        C.    Litigation Involving the Property ....................................... 25

V.    THE DEBTOR'S CHAPTER 11 PROCEEDING ............................... 26

        A.    Events Precipitating the Debtor's Chapter 11 Filing ................... 26
        B.    Debtor-in-Possession Status .............................................. 26
        C.    The Automatic Stay ......................................................... 27
        D.    Other Significant Events Which Have Occurred Since the Petition Date .... 27
        E.    Sale of the Property........................................................ 28

VI.    DESCRIPTION OF THE PLAN ....................................................... 29

        A.    Basic Structure of the Plan ............................................... 29
        B.    Classification and Treatment of Claims .................................. 29

VII.    UNCLASSIFIED CLAIMS .............................................................. 29

        A.    Administrative Claims ...................................................... 30
                1.    Payment Generally ................................................ 30
                2.    Administrative Claims Bar Date................................. 30
                3.    Projected Administrative Claims ................................ 30

        B.    Priority Tax Claims ......................................................... 31

VIII.    CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ........ 31

        A.    General Overview  ........................................................... 31
        B.    Classes of Secured Claims .................................................. 32
                1.    Class 1: Secured Claim of County of Orange ..................... 32

Ringstad & Sanders
LLP
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

| | | | 2. | Class 2: Secured Claim of PPRF | 33 |
| | | | 3. | Class 3: Secured Claim of Sitlani Holdings | 34 |
| | C. | | | Other Classes of Claims | 35 |
| | | | 1. | Class 4: Priority Unsecured Claims | 35 |
| | | | 2. | Class 5: Class of Unsecured Claims | 36 |
| | | | 3. | Class 6: Interests in the Debtor | 37 |
| IX. | | | | MEANS OF IMPLEMENTING THE PLAN | 37 |
| | A. | | | Means of Performing the Plan | 37 |
| | | | 1. | Funding for the Plan | 38 |
| | | | 2. | Liquidation Analysis | 38 |
| | | | 3. | The Plan Agent | 39 |
| | | | 4. | Cash on Hand on the Confirmation Date | 40 |
| | | | 5. | Avoidance Actions | 40 |
| X. | | | | TAX CONSEQUENCES OF THE PLAN | 41 |
| XI. | | | | RETENTION OF JURISDICTION | 42 |
| XII. | | | | MODIFICATION OF THE PLAN CRAMDOWN | 44 |
| | A. | | | Modification of the Plan | 44 |
| | B. | | | Nonconsensual Confirmation | 44 |
| XIII. | | | | MISCELLANEOUS | 45 |
| | A. | | | Payment of Statutory Fees | 45 |
| | B. | | | Payment Dates | 45 |
| | C. | | | Other Documents and Actions | 45 |
| | D. | | | Notices | 45 |
| | E. | | | Governing Law | 46 |
| | F. | | | Binding Effect | 46 |
| | G. | | | Successors and Assigns | 46 |
| | H. | | | No Waiver | 46 |
| | I. | | | Inconsistencies | 47 |
| | J. | | | Exemption from Certain Transfer Taxes and Recording Fees | 47 |
| | K. | | | Post-Confirmation Status Report | 47 |
| | L. | | | Post-Confirmation Conversion/Dismissal | 47 |
| | M. | | | Changes in Rates Subject to Regulatory Commission Approval | 47 |
| | N. | | | Final Decree | 48 |
| XIV. | | | | CONCLUSION | 49 |

EXHIBIT "1" – LIQUIDATION ANALYSIS
EXHIBIT "2" -  PROJECTED CASH FLOW

Ringstad & Sanders
LLP
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

# I.

## **INTRODUCTION**

Serenade Newport, LLC, a California limited liability corporation (the "Debtor"), is the Debtor in this Chapter 11 bankruptcy case.  On July 11, 2025, the Debtor commenced this bankruptcy proceeding by filing a voluntary petition under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101 et seq.

On August 14, 2025, Bryan Gadol and Darren Testa, individuals, filed a Notice and Motion to Dismiss this Bankruptcy Case for Cause as Doc. 53 (the "Dismissal Motion").  The Dismissal Motion came on for hearing on September 9, 2025.  At the hearing, the Court determined that cause existed to grant the motion and dismiss or convert the case under 11 U.S.C. section 1112(b).  However, the Court further determined that appointment of a Chapter 11 Trustee in lieu of dismissal or conversion of the case was in the best interests of the creditors and the bankruptcy estate (the "Estate").  The Court therefore entered its Order Granting Motion to Dismiss Bankruptcy for Cause (the "Dismissal Order") as Doc. 92, which authorized and directed the United States Trustee ("UST") to promptly appoint a Chapter 11 Trustee in the case.

Thereafter, on September 16, 2025, the UST filed its Notice of Appointment of Chapter 11 Trustee appointing Thomas H. Casey as chapter 11 Trustee [Doc. 95] and the Acceptance of Appointment of Chapter 11 Trustee [Doc. 96], in which Mr. Casey accepted the appointment. The same day, the UST filed its Application for Order Approving Appointment of Trustee and Fixing Bond [Doc. 97], and the Court promptly entered its Order Approving the U.S. Trustee's Application for the Appointment of a Chapter 11 Trustee approving the UST's Application and appointing Thomas H. Casey as Chapter 11 Trustee. [Doc. 98]  Since September 16, 2025, Thomas H. Casey has served and continues to serve as Chapter 11 Trustee herein (the "Trustee").  This document is the Disclosure Statement describing the Chapter 11 Plan (the "Plan") filed by the Trustee

The Plan proposed by the Trustee is sent to you in the same envelope as this document, which is the Disclosure Statement which has been approved by the Court, and which is provided to help you understand the Plan.

1      The Trustee seeks to accomplish a sale of the Debtor's real estate asset and utilize the net

2   proceeds from the sale for payments to creditors under the Plan, and if sufficient funds are

3   generated, to the Debtor's interest holders.

4      The Effective Date of the proposed Plan is as defined at Section II. 2.1.30 herein below,

5   unless such day falls on a weekend or legal holiday, in which case the Effective Date shall be the

6   first business day following such weekend or legal holiday.

7      Chapter 11 allows the Debtor, and under some circumstances, a trustee, creditors and

8   others parties-in-interest, to propose a plan of reorganization (the "Plan").  The Trustee is the

9   party proposing the Plan sent to you in the same envelope as this document.

10      The document that you are reading is the Trustee's Disclosure Statement.  This

11   Disclosure Statement is furnished for the purpose of soliciting acceptances to the Trustee's Plan

12   which has been filed with the Bankruptcy Court.  A copy of the Plan accompanies this Disclosure

13   Statement.

14      Section 1125[1] of the Bankruptcy Code requires that, at the time when the Plan is

15   delivered to Creditors, the Plan be accompanied by this Disclosure Statement.  The purpose of

16   this Disclosure Statement is to provide adequate information of a kind, and in sufficient detail, so

17   far as is reasonably practicable, in light of the nature and history of the Debtor and the condition

18   of the Debtor's books and records, to enable a typical Creditor to make an informed judgment

19   about the Plan and to enable such Creditor to determine whether it is in its best interest to vote

20   for (accept) or against (reject) the Plan.

21      This Disclosure Statement contains a description of the Plan and other information

22   relevant to the decision whether to vote to accept or to reject the Plan.  The Trustee urges you to

23   read this Disclosure Statement because it contains important information concerning the Debtor's

24   history, business, assets and liabilities, and sets forth a summary of the Plan.

25      This Disclosure Statement does not purport to be a complete description of the Plan, the

26   ─────────────────
   [1] Section 1125(b) provides, in pertinent part, as follows:
     An acceptance or rejection of a plan may not be solicited after the commencement of the
27   case under this title from a holder of a claim or interest with respect to such claim or
     interest, unless, at the time of or before such solicitation, there is transmitted to such
28   holder the plan or a summary of the plan, and a written disclosure statement approved,
     after notice and a hearing, by the court as containing adequate information.

Ringstad & Sanders
LLP
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

financial data pertaining to the Debtor's operations, the applicable provisions of the Bankruptcy

Code, or any other matters which may be deemed significant by Creditors.  Out of practical

necessity, this Disclosure Statement represents an attempt to summarize extensive overall data,

legal documents, and legal principles, including provisions of the Bankruptcy Code, and set them

forth in an understandable, readable form.  Thus, although the Trustee has attempted to describe

fairly and accurately the matters set forth and discussed in this Disclosure Statement, the Trustee

emphasizes that he has out of necessity relied upon documents and information provided to him

by the Debtor, various Creditors and parties in interest, including their respective counsel and

financial advisors.

To vote to accept or reject the Plan, a Creditor must indicate its acceptance or rejection

thereof on the ballot which accompanies this Disclosure Statement and return it to Ringstad &

Sanders in the envelope provided, by facsimile (949) 851-6926, or email

(becky@ringstadlaw.com), such that the ballot is actually received by Ringstad & Sanders by

4:00 p.m. Pacific Daylight Time on _____.  Each Class of Creditors allowed to vote

on the Plan will be deemed to have accepted the Plan if the Plan is accepted by valid ballots cast

by Creditors in that Class holding at least two-thirds (2/3) in dollar amount and more than one

half (1/2) in number of the Allowed Claims of Creditors in that Class actually voting on the Plan.

**ONLY PROPERLY EXECUTED BALLOTS TIMELY RECEIVED BY TRUSTEE'S**

**COUNSEL WILL BE COUNTED AS HAVING VOTED ON THE PLAN.**

Since mail delays may occur, and because time is of the essence, it is important that

ballots be mailed well in advance of the date specified hereinabove as the deadline for Ringstad

& Sanders to receive ballots.  Any ballots received after that date will <u>not</u> be included in any

calculation to determine whether Creditors have accepted or rejected the Plan.

At the Confirmation Hearing, the Bankruptcy Court will determine, pursuant to

Section 1129 of the Bankruptcy Code, whether the Plan has been accepted by the necessary

Classes of Claims created under the Plan, and, if not, whether the Bankruptcy Court should,

nevertheless, confirm the Plan.  If at such hearing the Bankruptcy Court should determine that

the Plan meets all of the requirements for confirmation prescribed by the Bankruptcy Code, the

Bankruptcy Court will enter a Confirmation Order.  Pursuant to Section 1141 of the Bankruptcy Code, the effect of the Confirmation Order will be to make the provisions of the Plan binding upon the Debtor and each of its Creditors, regardless of whether the Creditor voted to accept the Plan.

Pursuant to Section 1128 of the Bankruptcy Code, any party-in-interest may object to the confirmation of the Plan.  The Bankruptcy Court has fixed _____, 2025 as the deadline for filing an objection to the Plan and for serving a copy thereof upon the Trustee's attorneys, Ringstad & Sanders, at the address set forth hereinabove (Attn: Todd C. Ringstad, Esq.); the Debtor's attorneys, Goe Forsythe & Hodges (attn.: Robert P. Goe, Esq. and Reem Bello, Esq.) and the and upon the United States Trustee, located at 411 West Fourth Street, Suite 9041, Santa Ana, California  92701 (Attn: Queenie K. Ng, Esq.), and any other parties as may be required by any further notice, order or any applicable rule.

**THIS IS A SOLICITATION BY THE TRUSTEE.  THE INFORMATION AND REPRESENTATIONS HEREIN ARE DERIVED FROM DOCUMENTS RECEIVED FROM AND DISCLOSURES MADE BY THE DEBTOR.  NO REPRESENTATIONS CONCERNING THE DEBTOR, INCLUDING, BUT NOT LIMITED TO, REPRESENTATIONS AS TO ITS FUTURE BUSINESS OPERATIONS, CASH FLOW PROJECTIONS, THE VALUE OF ITS PROPERTY, THE AMOUNT OF CLAIMS AGAINST THE ESTATE, OR ANY TAX EFFECT OF THE TRANSACTIONS PROPOSED UNDER THE PLAN, ARE AUTHORIZED BY THE TRUSTEE, OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT.  ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE ACCEPTANCE OF THE PLAN THAT ARE IN ADDITION TO OR DIFFERENT FROM THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON BY ANY PARTY-IN-INTEREST.  ANY SUCH ADDITIONAL REPRESENTATIONS OR INDUCEMENTS SHOULD BE REPORTED TO THE TRUSTEE'S ATTORNEYS WHO, IN TURN, WILL DELIVER THE INFORMATION TO THE BANKRUPTCY COURT FOR SUCH ACTION AS THE BANKRUPTCY**

Ringstad & Sanders
LLP
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

1   COURT MAY DEEM TO BE APPROPRIATE.

2          THE DISCUSSION IN THIS DISCLOSURE STATEMENT REGARDING THE

3   DEBTOR MAY CONTAIN "FORWARD LOOKING STATEMENTS" WITHIN THE

4   MEANING OF THE PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995.

5   SUCH STATEMENTS CONSIST OF ANY STATEMENT OTHER THAN A

6   RECITATION OF HISTORICAL FACT AND CAN BE IDENTIFIED BY THE USE OF

7   FORWARD LOOKING TERMINOLOGY SUCH AS "MAY," "EXPECT,"

8   "ANTICIPATE," "ESTIMATE," OR "CONTINUE," OR THE NEGATIVE THEREOF

9   OR OTHER VARIATIONS THEREON OR COMPARABLE TERMINOLOGY.  THE

10  READER IS CAUTIONED THAT ALL FORWARD LOOKING STATEMENTS ARE

11  NECESSARILY SPECULATIVE AND THERE ARE CERTAIN RISKS AND

12  UNCERTAINTIES THAT COULD CAUSE ACTUAL EVENTS OR RESULTS TO

13  DIFFER MATERIALLY FROM THOSE REFERRED TO IN SUCH FORWARD

14  LOOKING STATEMENTS.  THE LIQUIDATION ANALYSES, PROJECTED

15  OPERATING BUDGET, AND OTHER INFORMATION CONTAINED HEREIN ARE

16  ESTIMATES ONLY, AND THE TIMING, AMOUNT AND VALUE OF ACTUAL

17  DISTRIBUTIONS TO CREDITORS MAY BE AFFECTED BY MANY FACTORS THAT

18  CANNOT BE PREDICTED.  THEREFORE, ANY ANALYSES, ESTIMATES, OR

19  PROJECTIONS MAY OR MAY NOT PROVE TO BE ACCURATE.

20          UNLESS SPECIFICALLY SET FORTH HEREIN TO THE CONTRARY, THE

21  INFORMATION CONTAINED OR REFERRED TO IN THIS DISCLOSURE

22  STATEMENT HAS NOT BEEN SUBJECT TO AN AUDIT.  RECORDS KEPT BY THE

23  DEBTOR RELY FOR THEIR ACCURACY ON BOOKKEEPING PERFORMED

24  INTERNALLY BY THE DEBTOR.  THE TRUSTEE BELIEVES THAT THE DEBTOR

25  HAS MADE EVERY REASONABLE EFFORT TO PROVIDE THE TRUSTEE AND HER

26  PROFESSIONALS WITH FINANCIAL INFORMATION AS ACCURATE AS IS

27  REASONABLY PRACTICABLE GIVEN THE NATURE AND HISTORY OF THE

28  DEBTOR'S OPERATIONS AND THE CONDITION OF THE DEBTOR'S BOOKS AND

Ringstad & Sanders
LLP
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

RECORDS.  HOWEVER, THE RECORDS KEPT BY THE DEBTOR ARE NEITHER WARRANTED NOR REPRESENTED TO BE FREE OF INACCURACY, EITHER BY THE DEBTOR OR THE TRUSTEE.  NEITHER THE TRUSTEE'S ACCOUNTANTS NOR THE TRUSTEE'S INSOLVENCY COUNSEL HAVE INDEPENDENTLY VERIFIED THE INFORMATION CONTAINED HEREIN, OR MAKE ANY REPRESENTATIONS OR WARRANTIES WITH RESPECT TO THE ACCURACY THEREOF.

THE TRUSTEE AND HIS PROFESSIONALS HAVE MADE A DILIGENT EFFORT TO IDENTIFY IN THIS DISCLOSURE STATEMENT ALL LITIGATION CLAIMS, INCLUDING CLAIMS FOR RELIEF, COUNTERCLAIMS, AND OBJECTIONS TO CLAIMS.  HOWEVER, NO RELIANCE SHOULD BE PLACED ON THE FACT THAT A PARTICULAR LITIGATION CLAIM IS OR IS NOT IDENTIFIED IN THIS DISCLOSURE STATEMENT.  THE DEBTOR, THE TRUSTEE, OR OTHER PARTIES-IN-INTEREST MAY SEEK TO INVESTIGATE, FILE AND PROSECUTE POST-CONFIRMATION ESTATE CLAIMS WHETHER OR NOT SUCH CLAIMS ARE IDENTIFIED IN THIS DISCLOSURE STATEMENT.

ALL PARTIES ENTITLED TO VOTE ON THE PLAN ARE URGED TO CAREFULLY REVIEW THE PLAN AND THIS DISCLOSURE STATEMENT PRIOR TO VOTING ON THE PLAN.  THE CONTENTS OF THIS DISCLOSURE STATEMENT SHOULD NOT BE CONSTRUED IN ANY MANNER TO BE LEGAL, BUSINESS OR TAX ADVICE.  EACH CREDITOR AND OTHER PARTY-IN-INTEREST SHOULD CONSULT WITH ITS OWN LEGAL COUNSEL, BUSINESS ADVISOR, CONSULTANT OR ACCOUNTANT PRIOR TO VOTING ON THE PLAN IN ORDER TO ENSURE A COMPLETE UNDERSTANDING OF THE TERMS OF THE PLAN.  THIS DISCLOSURE STATEMENT IS INTENDED FOR THE SOLE USE OF THE CREDITORS OF THE DEBTOR TO ENABLE THEM TO MAKE AN INFORMED DECISION REGARDING THE PLAN.

THE BANKRUPTCY COURT'S APPROVAL OF THIS DISCLOSURE

**STATEMENT INDICATES ONLY THAT THE DISCLOSURE STATEMENT**

**CONTAINS ADEQUATE INFORMATION FOR THE PURPOSE OF SOLICITATION**

**OF ACCEPTANCES TO THE PLAN PROPOSED BY THE TRUSTEE, ASSUMING THE**

**ACCURACY OF THE CONTENTS OF THIS DISCLOSURE STATEMENT.  THE**

**BANKRUPTCY COURT HAS NOT YET DETERMINED SUCH ACCURACY, BUT**

**MAY DO SO PRIOR TO OR AT THE HEARING REGARDING THE CONFIRMATION**

**OF THE PLAN.**

**II.**

**DEFINITIONS AND RULES OF INTERPRETATION**

2.1.    <u>Definitions</u>.  The following defined terms are used in this Disclosure Statement.
Any capitalized term that is not defined herein, but that is defined in the Bankruptcy Code or in the
Bankruptcy Rules shall have the meaning ascribed to that term in the Bankruptcy Code or
Bankruptcy Rules.

2.1.1.  "<u>Administrative Claim</u>" means a Claim for costs and expenses of the
administration of a Case under Section 503(b) or 507(a)(1) of the Bankruptcy Code, including,
without limitation, a Claim of a Professional employed at the expense of the Estate and any fees
or charges asserted against the Estate under 28 U.S.C. § 1930.

2.1.2.  "<u>Administrative Tax Claim</u>" means a request by a Governmental Unit for payment
of Administrative Claims for Taxes (and for interest or penalties related to such Taxes) for any
tax year or period, all or any portion of which occurs within the period from and including the
Petition Date through and including the Effective Date.

2.1.3.  "<u>Allowed Administrative Claim</u>" means an Administrative Claim allowed
pursuant to Sections 503(b) or 507(a)(1) of the Bankruptcy Code or pursuant to 28 U.S.C. § 1930.

2.1.4.  "<u>Allowed Claim</u>"  means a Claim that is either (i) listed in the Schedules filed with
the Bankruptcy Court by the Debtor and not listed as disputed, contingent, unliquidated or
unknown as to amount and as to which no timely objection has been filed; or (ii) with respect to
which a Proof of Claim has been filed within the time period fixed by the Bankruptcy Court, and
as to which no objection was filed within the time period fixed by the Bankruptcy Code, the

Bankruptcy Rules, the Plan or order of the Bankruptcy Court, or as to which any such objection has been determined by a Final Order.  The amount of an Allowed Claim shall be as follows: (a) if the Creditor did not file a Proof of Claim with the Bankruptcy Court on or before the applicable Bar Date, the amount of the Creditor's Claim as listed in the Schedules as neither disputed, contingent, unliquidated or unknown; or (b) if the Creditor filed a Proof of Claim with the Bankruptcy Court on or before the applicable Bar Date, (1) the amount stated in such Proof of Claim if no objection to such Proof of Claim was filed within the time period fixed by the Bankruptcy Code, the Bankruptcy Rules, the Plan or order of the Bankruptcy Court, or (2) the amount thereof as fixed by a Final Order of the Bankruptcy Court if an objection to such Proof of Claim was filed within the time period fixed by the Bankruptcy Code, the Bankruptcy Rules, the Plan or order of the Bankruptcy Court.  Any Claim that is not filed by the applicable Bar Date and that is listed as disputed, unliquidated, contingent, or unknown, or that is not allowed under the terms of the Plan, shall be zero, and no Distribution shall be made on account of such Claim.

2.1.5.  "Allowed Deficiency Claim" means that portion of an Allowed Claim which is in excess of the value of any collateral which is security for the repayment of the Claim, calculated in accordance with the provisions of Section 506 of the Bankruptcy Code.  Unless the Creditor should make an election under Section 1111(b) of the Bankruptcy Code, an Allowed Deficiency Claim is treated hereunder as a Class 11 Allowed General Unsecured Claim.

2.1.6.  "Allowed General Unsecured Claim" means an unsecured Allowed Claim against the Debtor, however arising, not entitled to priority under Section 507(a) of the Bankruptcy Code and which is not secured by a perfected security interest in any asset of the Estate, or to the extent that the value of the holder's security interest in the Estate's interest in any property that stands as security for such claim is less than the amount of such Allowed Claim, determined in accordance with Section 506(a)(1) of the Bankruptcy Code, and includes a Rejection Claim.

2.1.7.  "Allowed Priority Tax Claim" means an Allowed Claim provided for by Section 507(a)(8) of the Bankruptcy Code.

2.1.8.  "Allowed Priority Unsecured Claim" means an unsecured Allowed Claim entitled to priority under Section 507 of the Bankruptcy Code.

Ringstad & Sanders
—— LLP ——
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

2.1.9.  "Allowed Secured Claim" means an Allowed Claim secured by a valid and unavoidable Lien against property in which the Estate has an interest, or which is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value, determined in accordance with Section 506(a) of the Bankruptcy Code, of the interest of the holder of such Allowed Claim in the Estate's interest in such property, or to the extent of the amount subject to any setoff, as the case may be.

2.1.10.  "Avoidance Action" means any action or proceeding filed pursuant to the provisions of Sections 510, 542, 543, 544, 545, 547, 548, 549,  550 or 551 of the Bankruptcy Code, or any similar action or proceeding filed to recover property for or on behalf of an Estate or to avoid a Lien or transfer.  The actions may be commenced prior to the Plan Confirmation Hearing, or post Plan confirmation.

2.1.11.  "Bankruptcy Code" means Title 11, United States Code, as amended.  All citations in the Plan to Section numbers are to the Bankruptcy Code, unless otherwise expressly stated herein.

2.1.12.  "Bankruptcy Court" or "Court" means the United States Bankruptcy Court for the Central District of California, Santa Ana Division, which has jurisdiction over the Case and the Estate of the Debtor, or such successor court or tribunal as may hereafter be confirmed or created by lawful authority with power to confirm reorganization plans under Chapter 11 of the Bankruptcy Code and all applicable statutes, rules and regulations pertaining thereto.

2.1.13.  "Bankruptcy Rules" means, collectively, the Federal Rules of Bankruptcy Procedure, as amended, and the Local Bankruptcy Rules for use in the United States Bankruptcy Court for the Central District of California, as amended.

2.1.14.  "Bar Date(s)" means the last date for Creditors whose Claims are not scheduled, or are scheduled as disputed, contingent, or unliquidated in the Debtor's Schedules to file Proofs of Claim, except for Administrative Claims other than Section 503(b)(9) Administrative Claims[2]. The Bar Date for General Unsecured Creditors was set as October 1, 2025 by Order of the Court. [Doc. 27]

---

[2] The Trustee is unaware of any Section 503(b)(9) Claims asserted against the Estate.

2.1.15. "Business Day" means any day, other than a Saturday, a Sunday or a "legal holiday," as defined in Rule 9006(a) of the Bankruptcy Rules.

2.1.16. "Case" means the Chapter 11 case commenced by the Debtor on the Petition Date and pending before the Bankruptcy Court, designated Case No. 8:25-bk-11898-MH.

2.1.17. "Cash" means cash and cash equivalents including, but not limited to, checks or similar forms of payment or exchange.

2.1.18. "Claim" means (i) a right to payment from the Debtor, whether or not such right to payment is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, or (ii) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment from the Debtor whether or not such right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

2.1.19. "Claims Objection Deadline" means, (i) the one hundred and eightieth (180th) day after the Effective Date; or (ii) such greater period of limitation as may be fixed or extended by the Bankruptcy Court.

2.1.20. "Class" means the group of Claims classified in Article III of the Plan pursuant to Sections 1122 and 1123 of the Bankruptcy Code.

2.1.21. "Confirmation Date" means the date on which the Bankruptcy Court enters the Confirmation Order.

2.1.22. "Confirmation Hearing" means the hearing(s) scheduled by the Bankruptcy Court for the purpose of considering the confirmation of the Plan.

2.1.23. "Confirmation Order" means the order, as entered, of the Bankruptcy Court confirming the Plan.

2.1.24. "Creditor" means the holder of an Allowed Claim or Allowed Administrative Claim.

2.1.25. "Debtor" means Serenade Newport, LLC.

2.1.26. "Disclosure Statement" means the Trustee's Disclosure Statement, as the same may be amended or modified from time to time.

Ringstad & Sanders
LLP
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

2.1.27. "Disputed Claim" means all or any part of a Claim as to which any one of the following applies: (i) no Proof of Claim has been filed with respect to such Claim, and the Claim is listed in the Schedules as unliquidated, disputed, contingent or unknown, or; (ii) the Claim is the subject of a timely objection or request for estimation which is filed on or before the Claims Objection Deadline, which objection or request for estimation has not been withdrawn or determined by a Final Order.  In addition, prior to the earlier of (a) the Claims Objection Deadline, and (b) such date as the Bankruptcy Court allows the Claim pursuant to a Final Order, any Claim that is evidenced by a Proof of Claim shall be deemed a Disputed Claim for purposes of calculating and making any Distributions under the Plan if: (1) no Claim corresponding to the Proof of Claim is listed in the Schedules, (2) the Claim corresponding to the Proof of Claim is listed in the Schedules as disputed, contingent, unliquidated or unknown, (3) the amount of the Claim as specified in the Proof of Claim exceeds the amount of any corresponding Claim listed in the Schedules as not disputed, not contingent, and liquidated, but only to such extent, or (4) the priority or classification of the Claim as specified in the Proof of Claim differs from the priority of any corresponding Claim listed in the Schedules.

2.1.28. "Disputed Claims Reserve" means a segregated trust account for the benefit of holders of Disputed Claims, including any disputed Secured Claims of PPRF or Sitlani Holdings, established at a financial institution that is an authorized depository under United States Trustee Guidelines, into which the Plan Agent will deposit the Distributions required by Article IV hereof.

2.1.29. "Distribution" means the Cash that is required to be distributed under the Plan to the holders of Allowed Claims.

2.1.30. "Effective Date" means a date selected by the Plan Agent which shall occur no later than the one hundred and twenty (120th) calendar day after the Confirmation Date, unless the Bankruptcy Court authorizes an extension of the Effective Date beyond the 120th calendar day after the Confirmation Date, upon a showing of good cause therefor by the Plan Agent.  This date is intended to allow the Plan Agent a reasonable opportunity to market for sale the Debtor's Property, locate an acceptable buyer, submit a motion to the Court requesting authorization to sell

the Property, and thereafter consummate a sale, thereby generating Net Sale Proceeds for the

benefit of Creditors of the Estate.

2.1.31. "Estate" means the Debtor's bankruptcy estate created under Section 541 of the

Bankruptcy Code in the Case.

2.1.32. "Estate Claims" means any and all claims and causes of action that constitute

property of the Estate including, but not limited to, any Avoidance Actions and any causes of

action or claims for recovery of any amounts owing to the Debtor or the Estate by third parties or

by Insiders.

2.1.33. "Final Order" means an order or judgment of the Bankruptcy Court, or of any

court of competent jurisdiction where there is pending an action in which the Debtor or the

Trustee is a party, as to which the time to appeal, petition for certiorari, or move for reargument

or rehearing has expired and as to which no appeal, petition for certiorari, or other proceeding for

reargument or rehearing shall then be pending or as to which any right to appeal, petition for

certiorari, move to reargue, or to rehear shall have been waived in writing in form and substance

satisfactory to the Trustee.

2.1.34 "General Administrative Claims Bar Date" means the date by which all requests

for payment of Administrative Claims, with the exception of Administrative Tax Claims, shall be

filed and served upon the Trustee.

2.1.35. "General Unsecured Claim" means an unsecured Claim against the Debtor,

however arising, not entitled to priority under Section 507(a) of the Bankruptcy Code.  Pursuant

to the terms of this Plan, General Unsecured Claims are Class 11 Claims.

2.1.36. "General Unsecured Creditor" means the holder of an Allowed General Unsecured

Claim.

2.1.37. "Governmental Unit" shall have the meaning provided in Section 101(27) of the

Bankruptcy Code.

2.1.38. "Initial Distribution Date" means the date on which the first Distribution is made

to a Class.

2.1.39. "Insiders" includes but is not limited to the following individuals and entities: Sahand Zargari, Michael Gerro, Mordechai Ferder, Edit Ferder, Raj Mulchandani, First Capital Trust Deeds, the Daftarian Group, Jacob Wolf, the Haim Trust, Simba IL Holdings, LLC, Diamonds and Jewelry, Inc., Lugano Diamonds, and other parties to be identified by the Trustee prior to the Confirmation Hearing.

2.1.40. "Lien" means any lien, encumbrance, pledge, or other charge against property.

2.1.41. "Net Proceeds" means the proceeds generated from the pursuit of Estate Claims, net of all attorneys' fees and other costs necessary to recover such proceeds.

2.1.42. "Net Sales Proceeds."  The Cash generated from the sale or liquidation of the Debtor's Property, less payment of selling expenses, brokers' commissions, closing costs, taxes, association dues, any associated expenses incurred in furtherance of such sale or liquidation, and the satisfaction of any Allowed Secured Claim(s).

2.1.43. "Net Sales Proceeds Account."  The Plan Agent shall establish a separate account at an FDIC insured bank into which all Net Sale Proceeds shall be deposited from the sale of the Debtor's real property asset.  The Plan Agent, in his discretion, may create a general operating account, separate and apart from the Net Sales Proceeds Account, for the purpose of satisfying fees, expenses and costs incurred in the ordinary course of the implementation of the Plan, or for the purpose of effectuating the Distributions required pursuant to the terms of this Plan.

2.1.44. "Petition Date" means the date on which the Debtor filed its petition for relief under Chapter 11 of the Bankruptcy Code, i.e. July 11, 2025.

2.1.45. "Plan" means the Trustee's Chapter 11 Plan, together with the exhibits thereto, as the same may be amended or modified from time to time.

2.1.46. "Plan Agent" means the Trustee, who shall be designated to administer the Debtor's assets, including the liquidation of the Debtor's Property, and distribution of all net proceeds to the holders of Allowed Claims.

2.1.47. "Post-Confirmation Expenses" means the fees and expenses incurred by the Plan Agent and any Court-approved professionals following the Confirmation Date (including the fees and costs of Professionals) for the purpose of (i) prosecuting and liquidating the Avoidance

Actions; (ii) objecting to and resolving Disputed Claims and Disputed Liens; (iii) selling or

otherwise liquidating the Debtor's Property; (iv) effectuating Distributions under the Plan; and

(v) otherwise consummating the Plan and closing the Debtor's Chapter 11 Case.

2.1.48. "PPRF" means PPRF REIT, LLC, holder of a note in the original principal amount

of $5,278,125.00 secured by the first deed of trust encumbering the Property.

2.1.49. "Priority Tax Claim" means any Claim provided for by Section 507(a)(8) of the

Bankruptcy Code.

2.1.50. "Priority Tax Holder" means a holder of an Allowed Priority Tax Claim.

2.1.51.  "Professional" means a person or entity employed by the Debtor, the Trustee, or

by the Plan Agent pursuant to a Final Order of the Bankruptcy Court in accordance with

Sections 327 or 1103 of the Bankruptcy Code.

2.1.52. "Proof of Claim" means a written statement filed in the Case by a Creditor in

which the Creditor sets forth the amount of its Claim, in accordance with Rule 3001 of the

Bankruptcy Rules.

2.1.53. "Pro Rata" means proportionately, so that with respect to any Distribution in

respect of any Allowed Claim, the ratio of (i) (a) the amount of property distributed or reserved

on account of such Allowed Claim to (b) the amount of such Allowed Claim, is the same as the

ratio of (ii) (a) the amount of property distributed or reserved on account of all Allowed Claims of

the Class sharing in such Distribution to (b) the amount of all Allowed Claims in such Class.

2.1.54  "Property" means the real property located at 1501 Serenade Ter, Corona del Mar,

California 92625, and all improvements thereon or thereto.

2.1.55. "Schedules" means the Schedules of Assets and Liabilities and Statement of

Financial Affairs filed by the Debtor in the Case, as required by Section 521(1) of the Bankruptcy

Code, Rules 1007(a)(3) and (b)(1) of the Bankruptcy Rules, and Official Bankruptcy Form No. 6,

as the Schedules may have been amended from time to time.

2.1.56. "Secured Claim" means any Allowed Claim, including interest, reasonable

attorneys' fees, costs, and charges, to the extent allowable pursuant to Section 506(b) of the

Bankruptcy Code and the Plan, that is secured by a Lien on the Property or that is subject to

1  recoupment or setoff under Section 553 of the Bankruptcy Code, to the extent of the value of the

2  interest of the holder of such Secured Claim in the Debtor's interest in the Property, determined

3  pursuant to Section 506(a) of the Bankruptcy Code.

4      2.1.57. "Secured Creditors" means, collectively, all Creditors holding Secured Claims,

5  which are described in Classes 1 through 3.

6      2.1.58  "Sitlani Holdings" means Sitlani Holdings, LLC, holder of note in the original

7  principal amount of $500,000 secured by a second deed of trust encumbering the Property.

8      2.1.59. "Tax" means any tax, charge, fee, levy, or other assessment by any federal, state,

9  local or foreign taxing authority, including, without limitation, income, excise, property, sales,

10  transfer, employment, payroll, franchise, profits, license, use, ad valorem, estimated, severance,

11  stamp, occupation and withholding tax.  "Tax" shall include any interest or additions attributable

12  to, or imposed on or with respect to, such assessments.

13      2.1.60. "Tax Claim" means any Claim, pre-petition or post-petition, relating to a Tax.

14      2.1.61. "Trustee" means Thomas H. Casey, the Chapter 11 Trustee, appointed by order of

15  the Bankruptcy Court.

16      2.1.62. "Unclaimed Property" means any Distribution of Cash or other property to a

17  Creditor that is returned to the Plan Agent as undeliverable.

18      2.1.63. "Unclaimed Property Reserve" means a segregated account in which Unclaimed

19  Property shall be set aside and held.

20      2.1.64. "United States Trustee" means the Office of the United States Trustee.

21

22  **III.**

23  **CONFIRMATION AND VOTING**

24      A Creditor may vote to accept or reject the Plan by filling out and sending to counsel for

25  the Committee the form of the ballot which has been provided herewith.  Ballots may be sent by:

26  mail to Ringstad & Sanders, 23101 Lake Center Drive, Suite 355, Lake Forest, CA 92630 (Attn:

27  Ms. Becky Metzner); facsimile (949) 851-6926; or email becky@ringstadlaw.com.

28      In order to vote for or against the Plan, a Creditor must have filed a Proof of Claim on or

Ringstad & Sanders
LLP
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

1    before the applicable Bar Date, unless its Claim is listed in the Schedules filed in the Debtor's

2    Case as not being disputed, unliquidated, contingent or unknown.  Any such Creditor is, to the

3    extent listed in the Schedules, deemed to have filed a Claim, and, absent a timely objection to the

4    Claim, such Claim is deemed allowed.  In order to determine whether a Creditor is entitled to vote

5    on the Plan notwithstanding any failure to timely file a Proof of Claim, the Creditor should review

6    the Debtor's Schedules on file with the Bankruptcy Court.  If the Creditor's Claim is not

7    scheduled, or if it is scheduled as contingent, disputed, unliquidated or unknown and the Creditor

8    did not file a Proof of Claim prior to the Bar Date, the Creditor may not be entitled to vote on the

9    Plan.

10          The Bankruptcy Court has fixed _____, 2025 as the last date by which

11   ballots must be received by the Trustee's counsel.  Subject to review and determination by the

12   Bankruptcy Court, votes received by the Trustee after that date may not be counted.  Regardless

13   of whether a Creditor votes on the Plan, it will be bound by the terms and treatment set forth in

14   the Plan if the Plan is confirmed by the Bankruptcy Court.  Absent some affirmative act

15   constituting a vote, such Creditor will not be included in the voting tally.  Allowance of a Claim

16   for voting purposes, or disallowance of any Claim for voting purposes, does not necessarily mean

17   that all or a portion of the Claim will be allowed or disallowed for distribution purposes.

18          The Bankruptcy Court will confirm the Plan if the requirements of Section 1129 of the

19   Bankruptcy Code are satisfied.  Section 1129 requires, inter alia, that:  (a) with respect to each

20   Class of Claims, each Creditor in that Class has accepted the Plan, or will receive or retain under

21   the Plan on account of such Claim, property of a value that is not less than the amount such

22   Creditor would receive if the Debtor was to liquidate its assets under Chapter 7 of the Bankruptcy

23   Code; (b) confirmation of the Plan is not likely to be followed by a liquidation of the Debtor or

24   the need for further reorganization of the Debtor; and (c) the Plan be accepted by each Class of

25   Claims that is impaired by the Plan, and/or the Plan does not discriminate unfairly and is fair and

26   equitable to any impaired Class that has not accepted the Plan.

27          To confirm the Plan, the Bankruptcy Court must determine whether the Plan has been

28   accepted by each "impaired" Class entitled to vote on the Plan.  Pursuant to Section 1124 of the

Ringstad & Sanders
LLP
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

Bankruptcy Code, Classes "impaired" by the Plan are those Classes whose legal, equitable or contractual rights are altered pursuant to the Plan.  Under Section 1126(c) of the Bankruptcy Code, an impaired Class of Claims is deemed to have accepted the Plan if the Plan is accepted by Creditors in that Class holding at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of Creditors in that Class actually voting on the Plan.

Only the votes of those Creditors whose ballots are timely received may be counted in determining whether a Class has accepted the Plan.  Creditors are, therefore, urged to fill in, date, sign and promptly mail the enclosed ballot.  Each Creditor must properly complete the ballot and legibly identify its name on the ballot.

Any Creditor holding Claims in more than one impaired Class must file one ballot for each such Class.  If a Creditor has received an incorrect ballot, or believes that it is entitled to vote in more than one Class, additional ballots may be obtained upon written request to Ringstad & Sanders (Attn:  Ms. Becky Metzner) by mail, facsimile (949) 851-6926; or email (becky@ringstadlaw.com).

In the event that one impaired class but not all impaired Classes accept the Plan, the Committee intends to request that the Bankruptcy Court confirm the Plan pursuant to the provisions of Section 1129(b) of the Bankruptcy Code.  Pursuant to Section 1129(b), the Plan may be confirmed despite the failure of a Class of Claims to accept the Plan if the Bankruptcy Court determines that the Plan does not discriminate unfairly and is fair and equitable with respect to each Class of Claims that is impaired under, and has not accepted, the Plan.  The condition that the Plan be fair and equitable with respect to such non-accepting Classes includes certain legal requirements as more fully set forth in Section 1129(b).

## IV.

## **BACKGROUND OF THE DEBTOR**

**ANY HISTORICAL AND FINANCIAL INFORMATION PROVIDED HEREIN WAS GATHERED FROM PLEADINGS FILED BY THE DEBTOR WITH THE COURT, AND/OR INFORMATION PROVIDED BY THE DEBTOR DIRECTLY TO THE**

Ringstad & Sanders
LLP
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

1  **TRUSTEE OR HER PROFESSIONALS.  THE TRUSTEE IS INFORMED AND**

2  **BELIEVES SUCH INFORMATION TO BE ACCURATE BUT MAKES NO**

3  **REPRESENTATIONS OR WARRANTIES AS TO SAME.**

4      *Note: The following description of the Debtor, its background, its efforts and*

5  *negotiations to purchase the Property, and other facts described herein were obtained from the*

6  *representations made by the Debtor, its principals, and its counsel (see, e.g., the Notice of*

7  *Hearing on Motion and Motion for Order: (1) Authorizing Sale of Real Property, etc., and the*

8  *Declarations of Sahand Zargari, Michael Gerro, and Robert P. Goe included therein.  [Doc.*

9  *No. 43]and is included here to assist Creditors in understanding the background and context*

10  *of this case, and basic facts regarding the Debtor, its principals and its purported assets.  The*

11  *Trustee does not represent or warrant the accuracy of this information.*

12      **A.**    **Formation of the Debtor.**   According to the Debtor, the Debtor is a limited

13  liability corporation formed on June 13, 2025, to purchase the residential real property consisting

14  of a single-family home located at 1501 Serenade Terrace, Corona del Mar, CA 92625-1753 (the

15  "Property").  *See* attached declaration of Sahand Zargari ("Zargari Declaration")[3], at paragraph 2.

16  The Property is the principal asset of Debtor's bankruptcy estate ("Estate").  *Id.*

17      Mr. Zargari asserts that he is a licensed real estate agent with The Daftarian Group ("DG")

18  and regularly acquires properties to purchase and resell for a profit.  *See* ¶ 3 of Zargari

19  Declaration.  On or about May 25, 2025, Jacob Wolf ("Mr. Wolf"), a licensed real estate agent

20  with DG, approached Sahand Zargari ("Mr. Zargari") regarding the Property which was

21  potentially being offered for sale off-market.  *Id.*  On or about May 27, 2025, Mr. Zargari viewed

22  the Property and discussed possibly writing an offer to purchase the Property with Mr. Wolf.  *See*

23  ¶ 4 of Zargari Declaration.

24      **B.**    **Acquisition of the Property.**

25      Mr. Zagari represents that on or about May 30, 2025, Mr. Zargari submitted an offer to

26  purchase the Property for $8,800,000 in his individual capacity and the Property's prior owner,

27
28  ---

[3] References to the Zargari Declaration, the Gerro Declaration, and the Mulchandi Declaration
refer to the declarations attached to the Notice of Hearing on Motion and Motion for Order
Authorizing Sale of Real Property etc. [Docket No. 43]

The Haim Family Trust ("Haim Trust") accepted this offer. *See* ¶ 5 of Zargari Declaration. The purchase agreement contained an inspection contingency and also provided that it could be assigned. *Id.* On or about June 6, 2025, Mr. Zargari had an inspection performed of the Property. *See* ¶ 6 of Zargari Declaration. During this time period, Mr. Zargari was looking for a second investor and hard money lender to fund the purchase of the Property. *See* ¶ 7 of Zargari Declaration. Mr. Zargari was also viewing other properties in the area in order to give him a clearer idea of market value of the Property during the due diligence period. *Id.*

Mr. Zargari further asserts that he contacted Michael Gerro ("Mr. Gerro") about co-investing in the Property through a limited liability company and securing a hard money loan. *See* ¶ 8 of Zargari Declaration; *see also* ¶ 1 of Gerro Declaration. Mr. Gerro asserts that he also buys properties to resell for a profit. *See* ¶ 2 of Gerro Declaration. DG has represented Mr. Gerro on multiple occasions and Mr. Gerro is a licensed real estate agent with DG but has not sold any real estate in his capacity as a licensed real estate agent with DG. *See* ¶ 2 of Gerro Declaration. Mr. Gerro's underwriting valued the Property at about $7,400,000. *See* ¶ 3 of Gerro Declaration. Mr. Zargari asserts that Mr. Gerro and he determined that the purchase price needed to be reduced to $7,400,000 in order to bring in outside capital. *See* ¶ 9 of Zargari Declaration; *see also Id.* On or about June 13, 2025, Mr. Zargari and Mr. Gerro formed the Debtor and the purchase agreement was assigned to the Debtor. *See* ¶ 9 of Zargari Declaration; *see also* ¶ 3 of Gerro Declaration.

According to Mr. Zagari, the purchase price was then reduced further to $7,037,500 because of a number of factors. First, he asserts that the United States was going to war with Iran and the situation could have escalated to involve other major powers such as Russia and China. Mr. Zagari further asserts that Debtor sought a further discount for the purchase price to reflect the heightened uncertainty and changed circumstances under those market conditions. *See* ¶ 10 of Zargari Declaration; *see also* ¶ 4 of Gerro Declaration. Pursuant to the liquidated damages clause in the purchase agreement, Debtor would lose its 3% deposit if it walked away from the purchase of the Property. *See* ¶ 11 of Zargari Declaration; *see also* ¶ 5 of Gerro Declaration. Mr. Zargari agreed to waive his 2% commission as the Debtor's agent, and Mr. Wolf agreed to reduce

Ringstad & Sanders
LLP
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

his commission as the seller's agent by 1%. *Id.* Mr. Zagari further asserts that during these negotiations, the seller requested that the closing occur sooner, with no further physical inspection, and no loan or appraisal contingency, and Debtor agreed as part of the agreement to reduce the purchase price of the Property. *See* ¶ 12 of Zargari Declaration; *see also* ¶ 5 of Gerro Declaration. On or about June 16, 2025, the Debtor presented the Haim Trust with a final offer of $7,037,500.00 for the purchase of the Property ("Debtor's Purchase Price") which the Haim Trust accepted. *Id.* Escrow closed on the Debtor's purchase of the Property on June 18, 2025 ("Debtor Sale Closing Date"). *See* ¶ 13 of Zargari Declaration; *see also* ¶ 6 of Gerro Declaration; Attached as **Exhibit 2** to the Zargari Declaration is a true and correct copy of the escrow closing statement on Debtor's purchase of the Property.

Mr. Zargari and Mr. Gerro assert that they have no relationship with the prior owner of the Property, the Haim Trust or Mordechai Ferder and Edit Ferder, the trustees of the Haim Trust ("Ferders"). *See* ¶ 14 of Zargari Declaration; *see also* ¶ 7 of Gerro Declaration. Mr. Zargari and Mr. Gerro also assert that they have never met the Ferders and only communicated with the Ferders through Mr. Wolf, the real estate agent representing the Haim Trust. *See* ¶ 15 of Zargari Declaration; *see also* ¶ 8 of Gerro Declaration. Debtor asserts that it negotiated the purchase of the Property through Mr. Wolf in good faith, arms-length negotiations and through a good faith, arms-length transaction. *See* ¶ 16 of Zargari Declaration; *see also* ¶ 9 of Gerro Declaration.

Mr. Zagari asserts that at the time of the Debtor Sale Closing Date, there were no writs of attachment, lis pendens, temporary protective orders, or pending actions recorded, listed or reflected on the preliminary title report. *See* ¶ 17 of Zargari Declaration; Attached as **Exhibit 3** to the Zargari Declaration is a true and correct copy of the preliminary title report at the time of the Debtor Sale Closing Date.

Mr. Zagari asserts that in connection with the purchase of the Property, Debtor made a down payment of $1,373,753.39 and financed the balance of the purchase price with two secured loans from PPRF Reit LLC ("PPRF") in the amount of $5,278,125 as a first priority lien with a first priority deed of trust recorded against the Property and from Sitlani Holdings LLC ("Sitlani") in the amount of $500,000 as a second priority lien with a second priority deed of trust

recorded against the Property. *See* ¶ 18 of Zargari Declaration; *see also* ¶ 10 of Gerro

Declaration; s*ee also* **Exhibit 2** to the Zargari Declaration; *see also* PPRF loan documents a true

and correct copy of which are attached as **Exhibit 4** to the Zargari Declaration; *see also* Sitlani

loan documents a true and correct copy of which are attached as **Exhibit 5** to the Zargari

Declaration.  Mr. Gerro and Mr. Zargari assert that they do not have any relationship with either

PPRF or Sitlani.  *See* ¶ 19 of Zargari Declaration; *see also* ¶ 11 of Gerro Declaration.  The loans

from PPRF and Sitlani were brokered by Raj Mulchandani ("Mr. Mulchandani"), a Senior Partner

at First Capital Trust Deeds, which loans were fully funded for Debtor to acquire the Property.

*See* ¶ 20 of Zargari Declaration; *see also* ¶ 12 of Gerro Declaration.  Mr. Zagari asserts that other

than brokering the loans from PPRF and Sitlani for the Debtor, Mr. Zargari does not have any

relationship with Mr. Mulchandani.  *See* ¶ 21 of Zargari Declaration; *see also* ¶ 3 of Mulchandani

Declaration.  In addition to brokering the loans from PPRF and Sitlani for the Debtor, Mr.

Mulchandani has brokered loans for Mr. Gerro for other real estate transactions.  *See* ¶ 13 of

Gerro Declaration.  The Debtor asserts that Mr. Mulchandani has no relationship with the Haim

Trust, the Ferders, Lugano Diamonds or Simba.  The Debtor asserts that Mr. Mulchandani has

never met the Ferders and has never communicated with the Ferders.

C.    **Litigation Involving the Property**

According to the Debtor, after Debtor purchased the Property, Debtor discovered that

there were two actions filed in the Superior Court of the State of California involving the Haim

Trust, the Ferders, and Mr. Ferder's businesses, Diamonds and Jewelry, Inc. ("Lugano

Diamonds") and Simba IL Holdings, LLC ("Simba").  *See* ¶ 22 of Zargari Declaration.  One

action was filed on June 6, 2025, and amended on July 1, 2025 (to include the Debtor), by Bryan

Gadol and Darren Testa ("Gadol Testa Plaintiffs"), against the Haim Trust, Mr. Ferder, Lugano

Diamonds, Simba, Debtor, and others, ("Gadol Testa State Court Action") in the Orange County

Superior Court ("State Court").  *See* ¶ 23 of Zargari Declaration.

The Debtor asserts that another state court action was filed on or about July 9, 2025, by

Avina LLC and Global Innovations, LLC ("Avina Global Plaintiffs") against Haim Trust, the

Ferders, Lugano Diamonds, Debtor, and others in the Orange County Superior Court ("Avina

1  Global State Court Action").  Debtor asserts that it has not yet been served in the Avina Global

2  State Court Action.

3       Debtor asserts that after Debtor purchased the Property, Debtor also discovered that there

4  was an action filed by Kristoffer Winters ("Winters") in the United States District Court, Central

5  District of California ("District Court Action") against Lugano Diamonds, Haim Trust, Mr.

6  Ferder and Simba.  Debtor further asserts that a temporary protective order ("TPO") issued in the

7  District Court action was recorded on June 19, 2025, one day after the Debtor Sale Closing Date,

8  and that neither Debtor, Mr. Zargari nor Mr. Gerro are defendants in the District Court Action.

9       Mr. Zargari and Mr. Gerro assert that they have no relationship with Lugano Diamonds or

10  Simba.  *See* ¶ 24 of Zargari Declaration; *see also* ¶ 14 of Gerro Declaration.

11  **V.**

12  **THE DEBTOR'S CHAPTER 11 PROCEEDING**

13       **A.**     **Events Precipitating the Debtor's Chapter 11 Filing.  THE FOLLOWING**

14  **INFORMATION WAS OBTAINED FROM VARIOUS PLEADINGS FILED IN THE**

15  **BANRKUPTCY CASE.  THE TRUSTEE MAKES NO REPRESENTATION AS TO THE**

16  **ACCURACY OF THIS INFORMATION.**

17       The Debtor asserts that the primary reason for Debtor's filing of the bankruptcy case is to

18  protect the best interest of all creditors.  The Debtor asserts that "the Property should be sold as it

19  will net the Estate significant proceeds which can be used to distribute to allowed claims in order

20  of their validity, extent and priority."

21       The Trustee is informed and believes that the Debtor's bankruptcy proceeding was

22  precipitated primarily by the efforts of Citizens to foreclose against the Property.  The Trustee is

23  further informed and believes that disputes between the Debtor's principals, various related

24  entities, and disputed Creditor WCVR contributed to the Debtor's financial distress and resulting

25  bankruptcy filing.

26       **B.**     **Debtor-in-Possession Status.**  Upon the commencement of the Case, the Debtor

27  continued to operate as a "debtor-in-possession" subject to the supervision of the Bankruptcy

28  Court and in accordance with the Bankruptcy Code.  The Trustee was subsequently appointed,

Ringstad & Sanders
LLP.
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

divesting the Debtor of its "in possession" status, with the Trustee vested with the sole authority

to operate the Debtor in the ordinary course.  However, all transactions outside of the ordinary

course of business must be approved by the Bankruptcy Court.

      **C.**    **The Automatic Stay.**  Upon the filing of the Case, an automatic stay was imposed

in the Case pursuant to Section 362 of the Bankruptcy Code.  Subject to certain statutorily

defined exceptions, the stay enjoins the commencement or continuation of all collection efforts

by Creditors, the enforcement of Liens against property of the Debtor, and the continuation of

litigation against the Debtor. The Trustee anticipates that the automatic stay will remain in effect

in this Case until the earliest of the entry of an order of the Bankruptcy Court lifting or

modifying the stay, the Effective Date of the Plan, or the closing of the Case.

      **D.**    **Alleged Violations of the Automatic Stay.**

      The Debtor asserts that, after the Petition Date, on July 14, 2025, in violation of the

automatic stay in Debtor's Bankruptcy Case, the Gadol Testa Plaintiffs recorded a Notice of

Pendency of Action in the Official Records of the County of Orange ("Post-Petition Lis

Pendens").  The Debtor further asserts that, on July 16, 2025, in violation of the automatic stay in

Debtor's Bankruptcy Case, it appears that the Gadol Testa Plaintiffs also recorded a Writ of

Attachment in the Official Records of the County of Orange ("Post-Petition Writ.  The Debtor

asserts that, the Gadol Testa Plaintiffs had a Notice of the Post-Petition Writ ("Notice") posted by

a levying officer on Debtor's Property on or about August 8, 2025, in violation of the automatic

stay in Debtor's Bankruptcy Case.  Debtor has asserted that the Post-Petition Lis Pendens and

Post-Petition Writ were recorded after the Petition Date and are void pursuant to Section 549 of

the Bankruptcy Code.

      The other state court action was filed on or about July 9, 2025, by Avina LLC and Global

Innovations, LLC ("Avina Global Plaintiffs") against Haim Trust, the Ferders, Lugano Diamonds,

Debtor, and others in the Orange County Superior Court ("Avina Global State Court Action").

      **D.**    **Other Significant Events Which Have Occurred Since the Petition Date.**

      On June 17, 2025, the Debtor filed its application to employ Goe, Forsythe & Hodges as

its bankruptcy counsel in this case.  [Dkt. No. 16]. The Court approved the Application to permit

1   the Debtor to employ Goe Forsythe & Hodges as its counsel in the matter.  [Doc. 35]

2     On August 1, 2025, the Debtor filed its Notice of Motion and Motion for Order Setting

3   Bar date for Filing Proofs of Claim.  [Doc. 26]. The Court issued its Order thereon setting the last

4   day for the filing of Proofs of Claim as October 1, 2025.  [Doc. 27]

5     On August 12, 2025, the Debtor filed its Notice of Hearing on Motion ands Motion for

6   Order: (1) Authorizing Sale of Real Property, etc. ("Sale Motion") which proposed a sale of the

7   Property to Gadi and Caren Weinrich for the sum of $8,800,000.  (The "Sale Motion;" Doc. 43.)

8     On August 14, 2025, Creditors Gadol and Testa filed their Notice and Motion to Dismiss

9   Bankruptcy for Cause (the "Dismissal Motion").

10    On August 19, 2025, Creditors Gadol and Testa filed their Objection to Debtor's Sale

11  Motion. [Doc. 61.]  On August 19, 2025, Secured Creditors PPRF and Sitlani Holdings filed their

12  Notice of Non-Opposition to the Sale Motion.  [Doc. 62.]

13    On August 19, 2025, Creditor Kristoffer Winters filed his Opposition to Debtor's Sale

14  Motion. [Doc. 63.]

15    On August 20, 2025, Creditor Kristoffer Winters filed his Joinder to the Motion to

16  Dismiss filed by Creditors Gadol and Testa. [Doc. 64.]

17    On September 9, 2025, the Dismissal Motion filed by Creditors Gadol and Testa, and the

18  Debtor's Sale Motion came on for hearing before the Hon. Mark Houle, United States

19  Bankruptcy Judge.  The Court found that the Debtor's bankruptcy case was filed in bad faith, but

20  determined that the interests of creditors would be best served by appointment of a Chapter 11

21  Trustee.  The Court therefore did not order the dismissal of the case or the conversion of the case

22  to Chapter 7.

23    A. **Sale of the Property.**  Due to the appointment of a trustee, the Debtor at the

24  September 9, 2025 hearing, orally withdrew its Sale Motion.  The Debtor's proposed Buyers

25  (subject to overbids) has subsequently withdrawn their offer to purchase.

26    The Trustee intends to proceed with the engagement of a qualified real estate broker to

27  market and sell the Property and will seek Court approval of such engagement.  Upon receipt of

28  an offer that the Trustee (or the Plan Agent, if post confirmation), in his business judgment,

Ringstad & Sanders
L.L.P.
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

believes fair and reasonable, the Trustee (or the Plan Agent, if post confirmation) will file the necessary motion with the Court to obtain authorization to proceed with a sale in accordance with the provisions of Section 363 of the Bankruptcy Code

## VI.

## DESCRIPTION OF THE PLAN

The following is a brief summary of the Plan and is qualified in its entirety by the full text of the Plan.  In the event of any conflict between the terms of the Plan and the terms of this Disclosure Statement, the terms of the Plan will be controlling.  Therefore, all Creditors are urged to read the Plan carefully in its entirety rather than relying on this summary.

**A.    Basic Structure of the Plan.**  The Plan proposes to pay the Claims of the Classes of Creditors in accordance with the provisions of the Plan.  The Trustee believes that Classes 1, 2, and 3 may or may not be unimpaired under the Plan if the Property is sold before the Effective Date of the Plan which may allow for payment of the secured claims in the full amount allowed on or before the Effective Date.  Further, Classes 4, 5, and 6 may or may not be impaired, depending upon the ultimate amount of the allowed claims and interests in Classes 4, 5 and 6, and the amount of Net  Proceeds available for the claims and interests in those Classes.

**B.    Classification and Treatment of Claims.**  Section 1123 of the Bankruptcy Code requires that, with certain exceptions, the Trustee classify separately in the Plan all Claims.  Pursuant to Section 1122 of the Bankruptcy Code, the Trustee may place all Claims that are substantially the same in the same Class in the Plan.  Section 1123(a)(4) of the Bankruptcy Code requires that the Plan provide the same treatment for all Claims in the same Class, unless the holder of a particular Claim agrees to a less favorable treatment of its Claim.  The treatment of each Class of Claims is set forth in Articles VIII and IX, below.

## VII.

## UNCLASSIFIED CLAIMS

As required by the Bankruptcy Code, the Plan places Claims into various Classes according to their right to priority.  However, in accordance with the provisions of Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Section 503(b)(9)

Ringstad & Sanders
LLP
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

Administrative Claims, and Priority Tax Claims are deemed "unclassified." These Claims are not considered impaired, and they do not vote on the Plan, because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Trustee has not placed these Claims in a Class. The treatment of these unclassified Claims is as provided below.

A.    **Administrative Claims**. Administrative Claims are Claims for the expenses of administering a debtor's Case that are allowed under Bankruptcy Code Section 507(a)(2). The Bankruptcy Code requires that all administrative claims be paid on the effective date of a Chapter 11 plan unless a particular creditor agrees to a different treatment of its claim. The treatment of Administrative Claims in the Plan is as described below.

1.    Payment Generally. Except to the extent that the holder of an Allowed Administrative Claim agrees to a different treatment of its Administrative Claim, each Allowed Administrative Claim shall be Paid in Full, in Cash, on the latest of (i) the Effective Date, (ii) the tenth (10th) Business Day after the date upon which such Administrative Claim becomes an Allowed Administrative Claim, or (iii) the date upon which such Allowed Administrative Claim becomes due according to its terms.

2.    Administrative Claims Bar Date. Any holder of an Administrative Claim that does not file and properly serve such a request for payment by the Administrative Claims Bar Date shall be forever barred from asserting such Administrative Claim against the Debtor, the Reorganized Debtor, the Estate or any of its property, or the Trustee. Notwithstanding anything to the contrary contained in the foregoing, any Governmental Unit may assert an Administrative Tax Claim or other post-petition Tax Claim pursuant to the statutory requirements applicable thereto without regard to the Administrative Claims Bar Date.

3.    Projected Administrative Claims. The following chart is an estimate of the projected and unpaid Administrative Claims as of the Effective Date[4],to the extent known.

| Claimant | Estimated Amount |
|---|---|
| Clerk's Office Fees | $500.00 |

---

[4] Based on his review of the Schedules and Claims Register, the Trustee does not believe that there are any Section 503(b)(9) Claims.

Ringstad & Sanders
— LLP —
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

| | |
|---|---|
| Office of the United States Trustee | To be determined |
| Thomas H. Casey, Chapter 11 Trustee | To be determined |
| Hahn Fife & Co. – Accountants for Chapter 11 Trustee[5] | To be determined |
| Ringstad & Sanders, LLP – Bankruptcy Counsel for Chapter 11 Trustee | To be determined |
| _____ – Real Estate Broker / Agent employed by the Trustee[6] | To be determined |
| Goe Forsythe & Hodges, Bankruptcy Counsel for Debtor | To be determined |

The Court must approve all Professional fees listed in this chart. For all fees except Clerk's Office fees and U.S. Trustee fees, the Professional in question must file and serve a properly noticed fee application and the Court must rule on the application. Only the amount of fees allowed by the Court will be required to be paid under this Plan.

**B.** **Priority Tax Claims**. Priority tax claims are certain unsecured income, employment and other taxes described by Code Section 507(a)(8). The Code requires that each holder of such a 507(a)(8) priority tax claim receive the present value of such claim in deferred cash payments, over a period not exceeding five years from the date of the commencement of the Debtor's bankruptcy case, and in a manner not less favorable than the most favored non-priority unsecured claim provided for by this Plan.

The Debtor scheduled or Creditors have asserted the following Priority Tax Claims:

| Agency | Amount | Treatment |
|---|---|---|
| To be determined, | To be determined. | Paid in full on the Effective Date. |

**VIII.**

**CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

**A.** **General Overview.** As required by the Bankruptcy Code, the Plan places Claims into various Classes according to their right to priority and other relative rights. A Class is

---

[5] An employment application is pending for this Professional, the Trustee's proposed accountants.
[6] Only in the event that the employment of this Professional is approved by the Court, net of any pre-petition retainer received.

Ringstad & Sanders
— LLP —
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

"unimpaired" if the Plan leaves unaltered the legal, equitable and contractual rights to which the holders of Claims in the Class are entitled, with certain exceptions specified in the Bankruptcy Code.  The Plan sets forth the treatment that each Class will receive under the Plan.

**B.** **Classes of Secured Claims.**

Secured Claims are Claims secured by liens on property of the Estate.  The following is a description of all Classes of the Debtor's Secured Claims and their treatment under this Plan:

| Class | Creditor | Impaired or Unimpaired |
|-------|----------|------------------------|
| Class 1 | Allowed Secured Claim of Orange County Treasurer and Tax Collector ("County of Orange") | To be determined. |
| Class 2 | Allowed Secured Claim of PPRF (Claim No. 6-1) | To be determined. |
| Class 3 | Allowed Secured Claim of Sitlani Holdings [Claim No. 7-1] | To be determined. |

**1.** **Class 1:  Secured Claim of County of Orange.**

Class 1 includes the Allowed Secured Claim of the County of Orange for secured real property taxes.  The amount of any secured real property taxes due is presently unknown.

The full amount of Allowed Class 1 Claim including any lawful interest accrued thereon shall be paid in full upon the earlier of the closing of escrow for the sale of the Property or the Effective Date.

Until paid, the County of Orange shall retain all of its liens securing its Allowed Claims, unmodified, to the extent of the allowed amount of the County's Class 1 Claim as determined by the Bankruptcy Court.

| CLASS# | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|--------|-------------|---------------|----------------|-----------|
|        |             |               |                |           |

Ringstad & Sanders
— L.L.P. —
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

| 1 | Secured claim of:<br>County of Orange<br><br>Collateral description:<br>The Property<br><br>Collateral value:<br>$8,500,000 (est.)<br><br>Priority of security interest:<br>First<br><br>Total claim amount (est.):<br>To be determined. | No | To be determined. | Treatment of claim:<br><br>Paid in full with interest as authorized by applicable law as described herein, within 30 days following the close of escrow for the sale of the Property.<br><br>Treatment of lien(s):<br>Retained until Claim is paid. |

2.    **Class 2: Secured Claim of PPRF.**

Class 2 is the Allowed Secured Claim of PPRF arising out of a first priority deed of trust encumbering the Property, recorded June 18, 2025 as Instrument No. 2025000174619, securing a note in the original principal amount of $5,278,125.00.  PPRF filed Claim No. 6-1 asserting a Secured Claim in the amount of $5,278,125.00 as of the Petition Date.

The amount of the Allowed Class 2 Claim including principal, interest, and fees, as allowed by the Bankruptcy Court, within 30 days following the later of (i) closing of the sale of the Property, or (ii) determination and allowance of any interest, fees, and charges to which PPRF is entitled.

Until paid, PPRF shall retain its first priority deed of trust, unmodified, to the extent of the allowed amount of the Class 6 Claim as determined by the Bankruptcy Court.

| CLASS# | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 2 | **Secured claim of:** PPRF<br><br>**Collateral description:** The Property<br><br>**Collateral value:** $8,500,000 (est.)<br><br>**Priority of security interest:** First priority deed of trust, junior only to Class 1 secured property tax claim of County of Orange.<br><br>**Total claim amount:** Principal amount of $5,278,125 plus interest and fees as allowed by the Court | No | To be determined. | **Treatment of claim:**<br><br>Allowed amount of claim paid in full upon within 30 days following the later of (i) closing of the sale of the Property, or (ii) determination and allowance of any interest, fees, and charges to which PPRF is entitled..<br><br><br>**Treatment of lien:** Retained until Claim is paid. |

**3.    Class 3: Secured Claim of Sitlani Holdings.**

Class 3 consists of the Allowed Secured Claim of Sitlani Holdings, arising out of a note secured by a second priority deed of trust encumbering the Property, recorded June 18, 2025 as Instrument No. 2025000174620, a related assignment of rents, and subsequent recorded modifications, securing obligations in the original principal amounts of $2,547,000.00 and $1,800,000.  Sitlani Holdings filed Claim No. 7-1 asserting a Secured Claim in the amount of $500,000.00 as of the Petition Date.

The full amount of the Allowed Class 3 Claim including principal, interest, and fees, as allowed by the Bankruptcy Court, will be paid within 30 days following the following the later of (i) closing of the sale of the Property, or (ii) determination and allowance of any interest, fees, and charges to which Sitlani Holdings is entitled..

Until paid, Sitlani Holdings shall retain its first priority deed of trust, unmodified, to the

Ringstad & Sanders
LLP
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

extent of the allowed amount of the Class 7 Claim as determined by the Bankruptcy Court.

| CLASS# | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 3 | **Secured claim of:** Sitlani Holdings<br><br>**Collateral description:** The Property<br><br>**Collateral value:** $8,500,000 (est.)<br><br>**Priority of security interest:** Second priority deed of trust, in third Lien position following Class 1 Claim of the County of Orange, and Class 2 Claim of PPRF<br><br>**Total claim amount:** Principal amount of $500,000 plus interest, fees, and charges as allowed by the Court | No | To be determined. | **Treatment of claim:**<br><br>Allowed amount of claim paid in full within 30 days following the later of (i) closing of the sale of the Property, or (ii) determination and allowance of any interest, fees, and charges to which Sitlani Holdings is entitled..<br><br>**Treatment of lien:** Retained until Claim is paid. |

C.    **Other Classes of Claims.**

1.    **Class 4: Priority Unsecured Claims.**

Certain priority claims that are referred to in Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes. These types of claims are entitled to priority treatment as follows: the Code requires that each holder of such a claim receives cash on the Effective Date equal to the allowed amount of such claim.  However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claims.

Based upon information obtained to date, the Trustee does not believe that any priority unsecured claims have been asserted against the Debtor.  In the event such claims do exist, they will be paid in full on the later of 30 days following the closing of the sale of the Property, or as

Ringstad & Sanders
LLP
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

soon as reasonably practicable following the Effective Date of the Plan. If any such claims are filed, it cannot yet be determined if such claims are impaired or unimpaired under the Plan.

**2.     Class 5:  Class of General Unsecured Claims.**

Class 11 consists of all Allowed General Unsecured Claims not entitled to priority under Code Section 507(a).

Holders of Allowed Class 5 Claims will receive distributions on account of their Allowed Claims from the net proceeds of the sale of the Debtor's Property, after payment in full of all Allowed Secured Claims (Classes 1 through 3 as detailed above), all Allowed Administrative Claims asserted against the Estate, and all Allowed Class 4 Claims.  In the event that the available funds are sufficient to pay in full the amount of Allowed Class 4 Claims, then Class 4 Claims shall be entitled to receive pro rata payments of interest on their claims from the Petition Date to the date of payment at the Federal Judgment Rate in effect on the Effective Date of the Plan.

In the event the net proceeds from the sale of the Property are insufficient to pay the Class 5 Allowed Claims in full, holders of Allowed Class 5 Claims will receive Pro-Rata Distributions on account of their Allowed Claims.

Attached hereto as Exhibit "2" is a list of what appear to be general unsecured claims filed in the case as of the October 4, 2025, or scheduled in the Debtor's Schedules.

Holders of Allowed Class 5 Claims will receive distributions on account of their Allowed Claims from the net proceeds of the sale of the Debtor's Property, after payment in full of all Allowed Secured Claims (Classes 1 through 3 as detailed above), all Allowed Administrative Claims asserted against the Estate, and all Allowed Class 4 Claims.  In the event that the available funds are sufficient to pay in full the amount of Allowed Class 5 Claims, then Class 5 Claims shall be entitled to receive pro rata payments of interest on their claims from the Petition Date to the date of payment at the Federal Judgment Rate in effect on the Effective Date of the Plan.

In the event the net proceeds from the sale of the Property are insufficient to pay the Class 5 Allowed Claims in full, holders of Allowed Class 5 Claims will receive Pro-Rata Distributions on account of their Allowed Claims.

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 5 | General Unsecured Claims<br><br>Total Amount:<br>To be determined. | To be determined. | **Treatment:** The holders of all Allowed General Unsecured Claims shall receive Pro-Rata Distributions on Account of their Allowed Claims.<br><br>**See, Article IV of the Plan, Means for Implementing the Plan, for further details regarding timing of payments to Class 5 Creditors.** |

3. **Class 6: Interests in the Debtor.**

Class 6, Holders of Interest in the Debtor, consists of the Insiders holding membership interests in the Debtor LLC. Based upon the Debtor's Schedules and its organizational documents, the Trustee believes the following are the Interest Holders of the Debtor:

| Interest Holder | Interest |
|---|---|
| Sahand Zagari | 50% |
| Michael J. Gerro, Trustee of the MJ Gerro Family Trust | 50% |

The excess Net Sale Proceeds from a sale of the Property, if any, after satisfaction of all Allowed Claims asserted against the Estate in accordance with this Plan, will be distributed to the Class 6 Interest holders, pro rata.

**IX.**

**MEANS OF IMPLEMENTING THE PLAN**

A. **Means of Performing the Plan.**

This article is intended to explain the means by which the Trustee intends to effectuate the distributions to creditors provided for under this Plan. This article provides information regarding prospective corporate governance of the Reorganized Debtor, if any, funding sources for Plan obligations, and other material issues bearing upon the performance of the Plan.

1    **1.    Funding for the Plan.**

2        The proposed payments to Creditors and interest holders contemplated by the Plan shall

3    be collectively referred to herein as the "Plan Obligations."

4        The Plan will be funded from the Net Sale Proceeds from the sale of the Property. The

5    Trustee intends to proceed with a sale of the Property for the highest possible sale price,

6    distributing the Net Sale Proceeds on account of Allowed Claims according to the priorities

7    established by the Bankruptcy Code.

8        The Plan Agent shall be responsible for the consummation of a sale of the Property.  It is

9    likely that he Trustee will have engaged a real estate broker to assist in the marketing and sale of

10    the Property prior to the Confirmation Hearing.  Post-confirmation, the Plan Agent shall be vested

11    with the authority to negotiate and sign all necessary documents to complete the sale of the Real

12    Property, including but not limited to Listing Agreements, Offers for Purchase and Sale,

13    Agreements for Purchase and Sale, Escrow Instructions and Grant Deeds.  If the Property has not

14    been sold by the Effective Date of the Plan, the Plan Agent will use his best efforts to complete

15    the sale of the Property within six months following the Confirmation Hearing, including the

16    filing of an appropriate motion to sell the Property before the Court.  It is anticipated that all

17    Allowed Secured Creditors with an interest in Property sold under the Plan will be paid in the full

18    amount of their Allowed Claim from the proceeds of sale upon the close of escrow or as

19    otherwise provided by the terms of the Plan.

20        THE TRUSTEE MAKES NO REPRESENTATIONS OR WARRANTIES REGARDING

21    THE DISTRIBUTIONS TO BE RECEIVED BY GENERAL UNSECURED CREDITORS

22    UNDER THIS PLAN ON ACCOUNT OF THEIR ALLOWED CLAIMS.  THE PROCEEDS

23    FROM THE SALE OF THE DEBTOR'S PROPERTY AND CASH ON HAND ON THE

24    CONFIRMATION DATE MAY BE INSUFFICIENT TO SATISFYALLOWED CLASS 5

25    CLAIMS IN FULL, IN WHICH CASE ALLOWED CLASS 5 CLAIMS WILL RECEIVE PRO-

26    RATA DISTRIBUTIONS OF CASH ON HAND AFTER SATISFACTION OF ALL OTHER

27    ALLOWED CLAIMS, IF ANY.

28    **2.    Liquidation Analysis.**

Ringstad & Sanders
LLP
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

Section 1129(a)(7) requires that in order to confirm a plan, the plan must provide that as to each impaired class of claims or interests, each holder of a claim or interest (i) has accepted the plan; or (ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of the Bankruptcy Code.

Attached hereto as Exhibit "1" is a liquidation analysis that estimates the amount of funds that may be available for payment to creditors. Under the unique circumstances of this case, the amount of the anticipated distribution to creditors is the same as the creditors would receive if the debtor were liquidated under chapter 7.

This is so because this plan anticipates a liquidation of the debtor's sole asset and payment of the net proceeds of sale to creditors in manner that is in accordance with the priorities set forth in section 726 of the Bankruptcy Code, which governs distributions to creditors in a Chapter 7 case. The Trustee in this case, Thomas H. Casey, is a highly experienced trustee who has served as trustee in thousands of Chapter 7 cases. Mr. Casey's intention in the plan to liquidate the assets and distribute those in a fashion consistent with Chapter 7 of the Code provide assurance to the creditors that they will receive distributions in this case no less than they would receive if the Debtor were liquidated under Chapter 7.

As set forth in the Liquidation Analysis attached hereto as Exhibit "1," estimated cash on hand with the Debtor at the Confirmation Date, coupled with proceeds from the sale of the Debtor's Property, will provide funds to satisfy the Plan Obligations described in this Plan.

The Plan Agent shall deposit the Net Sales Proceeds into the Net Sales Proceeds Account, and establish a reserve account for all disputed Secured Claims and other Claims to be paid pursuant to the Plan.

**3.      The Plan Agent.**

Following confirmation of the Plan, the Trustee shall serve as the Plan Agent. The Plan Agent will be responsible for carrying out the terms of this Plan.

Legal representation of the Plan Agent will be provided by Ringstad & Sanders, LP ("R&S"), the law firm presently representing the Trustee, and which firm will provide legal

1   services to the Plan Agent in his efforts to ensure that the goals of this Plan are fully achieved.

2   The Plan Agent will further utilize the accounting services of Hahn Fife & Co. ("Hahn Fife").

3   R&S and Hahn Fife will be entitled to receive payment on an ongoing basis for their services

4   from the funds in the possession of the Plan Agent.  Prior to entry of a final decree, the Plan

5   Agent, R&S, and Hahn Fife shall file fee applications and obtain court approval of their fees and

6   expenses and shall disgorge any funds not awarded.   The final compensation of the Trustee and

7   the Plan Agent combined will not, in any event, exceed the maximum compensation that would

8   be payable to a trustee pursuant to 11 U.S.C. § 326, unless the Trustee is not appointed the Plan

9   Agent.

10       All compensation of the Plan Agent and any professionals engaged by the Plan Agent

11   shall be paid from funds otherwise distributable to Priority Unsecured and General Unsecured

12   Creditors under the Plan.  The Plan Agent may create a reserve from such funds, in the Plan

13   Agent's discretion, to pay for anticipated future fees and expenses prior to any distribution to

14   Priority Unsecured and General Unsecured Creditors.

15       **4.**    **Cash on Hand on the Confirmation Date**.

16       The Cash on hand with the Trustee as of the Confirmation Date shall be deposited by the

17   Plan Agent in the Net Sales Proceeds Account.

18       **5.**    **Avoidance Actions**.

19       **THE TRUSTEE HAS NOT DETERMINED WHETHER THE ESTATE HOLDS**

20   **ANY AVOIDANCE CLAIMS.  THIS INVESTIGATION IS ONGOING AND ANY**

21   **AVOIDANCE CLAIMS THAT MAY EXIST WILL, IN LARGE PART, BE**

22   **COMMENCED AFTER THE CONFIRMATION DATE.  AS A RESULT, ALL PARTIES-**

23   **IN-INTEREST ARE HEREBY ADVISED THAT, NOTWITHSTANDING THE FACT**

24   **THAT THE EXISTENCE OF ANY PARTICULAR AVOIDANCE ACTION OR OTHER**

25   **ESTATE CLAIM MAY NOT BE LISTED, DISCLOSED OR SET FORTH IN THE PLAN,**

26   **AN AVOIDANCE ACTION OR OTHER ESTATE CLAIM MAY BE FILED AGAINST**

27   **ANY CREDITOR OR OTHER PARTY AT ANY TIME.**

28

Ringstad & Sanders
LLP
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

1    Notwithstanding anything to the contrary herein, one hundred percent (100%) of any Net

2    Proceeds recovered, either before or after the Effective Date, from prosecution or settlement of

3    Avoidance Action claims shall be paid in the following Order:  (i) first, to satisfy any unpaid

4    professional fees incurred in prosecuting the Avoidance Action(s); (ii) second, to Creditors

5    holding Allowed Administrative Claims, based on the pro rata share of such Claims, up to an

6    amount that, in conjunction with other payments made to these Creditors under the Plan, renders

7    such Creditors Paid in Full; (iii) third, to Creditors holding Allowed Priority Tax Claims, up to an

8    amount that, in conjunction with other payments made to these Creditors under the Plan, renders

9    such Creditors Paid in Full; and (iv) fourth, to Creditors holding Allowed General Unsecured

10    Claims, up to an amount that, in conjunction with other payments made to these Creditors under

11    the Plan, renders such Creditors Paid in Full, and (fifth) pro rata to the holders of interest in the

12    Debtor.  Within three Business Days after the Plan Agent receives any such Net Proceeds, the

13    Plan Agent shall deposit such proceeds into the Net Sales Proceeds Account for the benefit of the

14    foregoing from which no disbursements shall be made except for the purpose of funding

15    Distributions hereunder to the foregoing Creditors.  The Plan Agent shall use the funds held in

16    this account to make distributions pursuant to the terms of the Plan.  Allowed Claims of the

17    foregoing Creditors shall be credited by the amount of Net Proceeds paid to the Creditors on

18    account of such Claims.

19                                          **X.**

20                          **TAX CONSEQUENCES OF THE PLAN**

21    The implementation of this Plan may have federal, state, and local tax consequences to the

22    Debtor, its Creditors, or Insiders.  No tax opinion has been sought or will be obtained with respect

23    to any tax consequences of this Plan.  In particular, the anticipated sale of the Property may result

24    in capital gains taxes and other taxes or obligations which may inure to certain Insiders.

25    The discussion below summarizes only certain of the federal income tax consequences

26    associated with this Plan's implementation.  This discussion does not attempt to comment on all

27    aspects of the federal income tax consequences associated with this Plan, nor does it attempt to

28    consider various facts or limitations applicable to any particular Creditor or party in interest

Ringstad & Sanders
LLP
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

which may modify or alter the consequences described herein.  A Creditor or party in interest

may find that the tax consequences of the Plan to such Creditor or party in interest differ

materially from the tax consequences discussed below because of the facts and circumstances of

such Creditor or party in interest.  This discussion does not address state, local, or foreign tax

consequences or the consequences of any federal tax other than the federal income tax.

This discussion is based upon the provisions of the Internal Revenue Code of 1986, as

amended (the "Internal Revenue Code"), the regulations promulgated thereunder, and existing

judicial decisions and administrative rulings.  In light of the rapidly changing nature of tax law,

no assurance can be given that legislative, judicial or administrative changes will not be

forthcoming that would affect the accuracy of the discussion below.  Any such changes could be

material and could be retroactive with respect to the transactions entered into or completed prior

to the enactment or promulgation thereof.  The tax consequences of certain aspects of the Plan are

uncertain due to the lack of applicable legal authority and may be subject to judicial or

administrative interpretations that differ from the discussion below.

CREDITORS AND PARTIES IN INTEREST ARE ADVISED TO CONSULT WITH

THEIR OWN TAX ADVISORS REGARDING THE TAX CONSEQUENCES TO THEM AND

TO THE DEBTOR OF THE TRANSACTIONS CONTEMPLATED BY THIS PLAN,

INCLUDING FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES

### XI.

### **RETENTION OF JURISDICTION**

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective

Date, the Bankruptcy Court will retain jurisdiction over the Case and any of the proceedings

arising from, or relating to, the Case pursuant to Section 1142 of the Bankruptcy Code and 28

U.S.C. § 1334 to the fullest extent permitted by the Bankruptcy Code and other applicable law,

including, without limitation, such jurisdiction as is necessary to ensure that the purposes and

intent of the Plan are carried out.  Without limiting the generality of the foregoing, the

Bankruptcy Court will retain jurisdiction for the following purposes:

A.    To hear and determine any and all objections to the allowance, or requests for estimation, of Claims or the establishment of reserves pending the resolution of Disputed Claims;

B.    To consider and act on the compromise and settlement of any Claim against, or cause of action on behalf of, the Estate, including, without limitation, any Avoidance Action;

C.    To hear and determine any motions pending on the Effective Date to assume, assume and assign or reject any executory contract or unexpired lease and to determine the allowance of any Claim resulting therefrom;

D.    To enter such orders as may be necessary or appropriate in connection with the recovery or liquidation of the Debtor's assets, wherever located;

E.    To hear and determine any and all applications for allowance of compensation and reimbursement of expenses of Professionals;

F.    To hear and determine any and all controversies, suits and disputes arising under or in connection with the interpretation, implementation, or enforcement of the Plan and any of the documents intended to implement the provisions of the Plan or any other matters to be resolved by the Bankruptcy Court under the terms of the Plan;

G.    To hear and determine any motions or contested matters involving Taxes, tax refunds, tax attributes and tax benefits and similar and related matters with respect to the Debtor or the Estate, including, without limitation, matters involving federal, state, and local Taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code;

H.    To hear and determine any and all applications, adversary proceedings and contested matters pending on the Effective Date or that may be commenced after the Effective Date as provided in the Plan;

I.    To effectuate Distributions under, and performance of, the provisions of the Plan;

J.        To hear and determine any motion to modify any provision of the Plan after confirmation of the Plan, and, if in the best interests of the Estate and/or Creditors, modification of the Plan even after the Plan has been substantially consummated;

K.        To correct any defect, cure any omission or reconcile any inconsistency in the Plan, the exhibits to the Plan or the Disclosure Statement and any documents executed in connection with the Plan, or any order of the Bankruptcy Court, including the Confirmation Order, as may be necessary to carry out the purposes and intent of the Plan;

L.        To determine such other matters as may be provided for in the Confirmation Order or as may from time to time be authorized under the provisions of the Bankruptcy Code or any other applicable law;

M.        To enforce all orders, judgments, injunctions, and exculpations issued or entered in connection with the Case or the Plan;

N.        To enter such orders as may be necessary or appropriate in aid of confirmation and to facilitate implementation of the Plan, including, without limitation, any orders as may be appropriate in the event that the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

O.        To determine any other matter not inconsistent with the Bankruptcy Code; and,

P.        To issue a final decree closing the Case.

## XII.

## MODIFICATION OF THE PLAN; CRAMDOWN

**A.      Modification of the Plan.**  After confirmation of the Plan, the Plan Agent may (i) apply to the Bankruptcy Court to modify the Plan, notwithstanding any substantial consummation of the Plan if in the best interests of the Debtor and Creditors; and (ii) apply to the Bankruptcy Court to remedy defects or omissions in the Plan or to reconcile inconsistencies in the Plan.

**B.      Nonconsensual Confirmation.**  In the event that any impaired Class of Claims should fail to accept the Plan in accordance with Section 1129(a)(8) of the Bankruptcy Code, the Committee (i) may request that the Bankruptcy Court confirm the Plan in accordance with

Ringstad & Sanders
LLP
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

Section 1129(b) of the Bankruptcy Code, and (ii) may modify the Plan in accordance with Section 1127(a) of the Bankruptcy Code.

## XIII.

## MISCELLANEOUS

**A.      Payment of Statutory Fees.**  All quarterly fees due and payable to the United States Trustee pursuant to 28 U.S.C. 1930(a)(6) will be paid in full on or before the Effective Date, or, to the extent such quarterly fees are disputed, an adequate reserve will be established and set aside for payment in full thereof, as required by Section 1129(a)(12) of the Bankruptcy Code.  The Confirmation Order may provide for the conversion of the case to one under Chapter 7 and the Plan Agent will comply with any reporting requirements of the United States Trustee, and the payment of any statutory fees at the conclusion of the Case.

**B.      Payment Dates.**  Whenever any Distribution to be made under the Plan becomes due on a day other than a Business Day, such Distribution instead will be made, without interest, on the immediately following Business Day.

**C.      Other Documents and Actions.**  The Plan Agent may execute such other documents and take such other actions as may be necessary or appropriate to effectuate the transactions contemplated under the Plan.

**D.      Notices.**  Except as expressly set forth herein to the contrary, all notices and requests in connection with the Plan must be in writing and must be hand delivered or sent by electronic mail, with a copy sent by first-class mail, addressed to:

**TO THE DEBTOR:**

Serenade Newport, LLC
Attn:  Sahand Zagari
500 N. State College Blvd., Suite 1100
Orange, CA 92868
Email address:  _____

**WITH A COPY TO:**

Robert P. Goe, Esq.
Goe Forsythe & Hodges LLP
17701 Cowan, Lobby D, Suite 210
Suite 600

Ringstad & Sanders
LLP
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

Irvine, CA 92614
Email address:  rgoeforlaw.com

**TO THE TRUSTEE OR THE PLAN AGENT:**

Thomas H. Casey
26400 La Alameda, Suite 210
Mission Viejo, CA 92691
Email address:  tom@tomcaseylaw.com

**WITH A COPY TO:**

Todd C. Ringstad, Esq.
Ringstad & Sanders, LLP
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
Email address:  todd@ringstadlaw.com

All notices to any Creditor will be sent to it at its last known address or to the last known address of its attorney of record.  Any such person may designate in writing, and file with the Court, any other address for purposes of this paragraph, which designation will be effective on receipt thereof by the Trustee or Plan Agent, or the Debtor.

E.      **Governing Law.**  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of California (without reference to its conflict of law rules) will govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, unless otherwise specifically provided in such agreements, documents, or instruments.

F.      **Binding Effect.**  The Plan and all rights, duties and obligations thereunder will be binding upon and inure to the benefit of the Debtor, the Estate, Creditors, the Trustee, the Plan Agent, and their respective successors and assigns.

G.      **Successors and Assigns.**  The rights, benefits, and obligations of any entity named or referred to in the Plan will be binding on, and will inure to the benefit of, the heirs, executors, administrators, successors, and assigns of such entity.

H.      **No Waiver.**  The failure of the Trustee, the Plan Agent, or any other entity to object to any Claim for purposes of voting will not be deemed to be a waiver of any right to object to or examine such Claim, in whole or in part.

- 46 -

**I.**    **Inconsistencies.**  In the event that the terms or provisions of the Plan are inconsistent with the terms and provisions of the exhibits to the Plan, any document executed in connection with the Plan, the Disclosure Statement, or the exhibits to the Disclosure Statement, the terms of the Plan will control.

**J.**    **Exemption from Certain Transfer Taxes and Recording Fees.**  Pursuant to Section 1146(c) of the Bankruptcy Code, any transfers from the Estate, the Trustee, or the Plan Agent to the any person or entity pursuant to, or implemented by, the Plan will not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment.  The Confirmation Order will direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**K.**    **Post-Confirmation Status Report.**  Within 180 days following the entry of the Confirmation Order, the Plan Agent will file with the Bankruptcy Court a status report explaining the progress made toward consummation of the Plan.  The status report will be served on the United States Trustee, the Debtor, if applicable, and any parties who file a request for special notice of post-confirmation matters.  Unless otherwise ordered by the Bankruptcy Court, further status reports will be filed every 180 days and served on the same entities.

**L.**    **Post-Confirmation Conversion/Dismissal.**  A Creditor or other party in interest may file a motion to convert or dismiss the Case under Section 1112(b) if there is a default by the Plan Agent in performing the Plan.  The Plan Agent reserves the right to object to any such motion for conversion or dismissal.

**M.**    **Changes in Rates Subject to Regulatory Commission Approval.**  The Trustee is informed and believes that the Debtor is not subject to governmental regulatory commission approval of its rates.

**N.** **Final Decree.** Once the Plan has been fully consummated or administered as referred to in Bankruptcy Rule 3022, the Plan Agent may file a motion with the Court to obtain a final decree to close the Case. If the case is converted to one under Chapter 7, either pre or post-confirmation, the Plan Agent/Chapter 7 Trustee will file a proposed trustee's final report for approval by the Court and closure of the Case.

## XIV.

## CONCLUSION

The materials provided in this Disclosure Statement are intended to assist Creditors in voting on the Plan. If the Plan is confirmed, Creditors will be bound by the terms of the Plan. Therefore, all Creditors are urged to review this material and to make such further inquiries as they deem appropriate, and then cast an informed vote on the Plan.

Date: October 7, 2025

By: _____
Thomas H. Casey,
Chapter 11 Trustee

SUBMITTED BY:

RINGSTAD & SANDERS LLP

By: ___/s/ Todd C. Ringstad_____
Todd C. Ringstad
Proposed Counsel for Thomas H. Casey,
Chapter 11 Trustee

# **Exhibit 1**

# **LIQUIDATION ANALYSIS**

This Liquidation Analysis assumes that the real property belonging to the Estate, the single-family residence located at 1501 Serenade Terrace, Corona del Mar, CA 92625, is sold during the Chapter 11 case at fair market value, which is estimated for these purposes at $8,500,000.  The actual selling price may vary significantly.

| | |
|---|---:|
| Chapter 11 Sale Price | $8,500,000 |
| Less estimated Commissions and Sale Costs (6%) | (510,000) |
| Less Real Estate Taxes | Unk |
| Less Senior Trust Deed Principal (PPRF REIT LLC) | (5,278,125) |
| Less Senior Trust Deed Interest and Fees | Unk |
| Less Junior Trust Deed Principal | (500,000) |
| Less Junior Trist Deed Principal and Fees | Unk |
| Estimated Net (not incl. secured debt interest and fees | $2,211,875 |
| Less estimated admin. claim incl. attorney fees | ($500,000) |
| Net avail. for distribution (not incl. sec. debt int. and fees | $1,711,875 |

# **Exhibit 2**

## **CASH FLOW ANALYSIS**

The Debtor is a single asset real estate company formed to own and market the real property that is the sole asset of this Estate, the single family residence located at 1501 Serenade Terrace, Corona del Mar, CA 92625.  The Property is unoccupied and being marketed for sale.  This analysis assumes that the Property is sold during the Chapter 11 case at fair market value, which is estimated for these purposes at $8,500,000.  Since the property does not currently generate income, carrying costs will accrue until the Property is sold.

| | |
|---|---:|
| Monthly income | $0.00 |
| Less carrying costs (est.) | |
|    PPRF | (43,940.39) |
|    Sitlani Holdings | (5,412.50) |
| Net Monthly Income | ($49,352.89) |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 23101 Lake Center Drive, Suite 355, Lake Forest, Ca 92630.

A true and correct copy of the foregoing documents entitled (*specify*): **DISCLOSURE STATEMENT DESRIBING CHAPTER 11 PLAN FILED BY CHAPTER 11 TRUSTEE** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On October 7, 2025, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Reem J Bello**    rbello@goeforlaw.com, kmurphy@goeforlaw.com
- **Anthony Bisconti**    tbisconti@bklwlaw.com, 1193516420@filings.docketbird.com,docket@bklwlaw.com
- **Thomas H Casey (TR)**    msilva@tomcaseylaw.com, thc@trustesolutions.net
- **George Gerro**    george@gerrolaw.com
- **Robert P Goe**    rgoe@goeforlaw.com, kmurphy@goeforlaw.com; goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goeforlaw.com
- **Christopher J Harney**    charney@tocounsel.com, dfunsch@tocounsel.com
- **Steven J. Katzman**    skatzman@bklwlaw.com, 1193516420@filings.docketbird.com,docket@bklwlaw.com
- **Bahram Paya**    brian.paya@payafirm.com
- **Charles Pernicka**    charles@opuslawfirm.com
- **Todd C. Ringstad**    becky@ringstadlaw.com, arlene@ringstadlaw.com
- **Matthew Rosene**    mrosene@epgrlawyers.com
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov
- **David B Zolkin**    dzolkin@wztslaw.com, maraki@wztslaw.com,sfritz@wztslaw.com,admin@wztslaw.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On  October 7, 2025, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Honorable Mark D. Houle, U.S. Bankruptcy Court, Ronald Reagan Federal Building, 411 W. Fourth St., Suite 6135, Courtroom 6C, Santa Ana, CA 92701-4593

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 7, 2025 | Becky Metzner | */s/ Becky Metzner* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                                                **F 9013-3.1.PROOF.SERVICE**