Todd C. Ringstad (State Bar No. 97345)
todd@ringstadlaw.com
Nanette D. Sanders (State Bar No. 120169)
nanette@ringstadlaw.com
RINGSTAD & SANDERS LLP
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
Telephone: (949) 851-7450
Facsimile:  (949) 851-6926

Counsel for Thomas H. Casey,
Chapter 11 Trustee

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>SERENADE NEWPORT, LLC<br><br><br>Debtor. | Case No. 8:25-bk-11898 MH<br><br>Chapter 11 Proceeding<br><br>**MOTION OF CHAPTER 11 TRUSTEE FOR ORDER:**<br><br>**(1) APPROVING SALE OF REAL PROPERTY OF THE ESTATE, FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES, PURSUANT TO 11 U.S.C. §§ 363(b), 363(f), AND 363(m);**<br>**(2) APPROVING OVERBID PROCEDURES;**<br>**(3) AUTHORIZING TRUSTEE TO PAY ALLOWED SECURED CLAIMS, COSTS OF SALE, AND BROKER COMMISSIONS IN FULL FROM NET SALE PROCEEDS; AND,**<br>**(4) WAIVING THE STAY OF RULE 6004(h);**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES, DECLARATIONS OF THOMAS H. CASEY, AND TIM SMITH IN SUPPORT THEREOF**<br><br>[1501 Serenade Terrace, Corona Del Car, CA 92625]<br><br>Hearing:<br>Date:       May 26, 2026<br>Time:       2:30 p.m.<br>Place:      Courtroom 6C<br>                411 West Fourth Street<br>                Santa Ana, CA 92701 |

Ringstad & Sanders
L.L.P.
23101 Lak Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

**TO THE HONORABLE MARK D. HOULE, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL OTHER INTERESTED PARTIES:**

Thomas H. Casey, the Chapter 11 Trustee (the "Trustee") for the bankruptcy estate (the "Estate") of Serenade Newport, LLC (the "Debtor"), hereby moves the Court for an order (1) approving the sale of the real property of the Estate located at 1501 Serenade Terrace, Corona del Mar, California, APN 050-282-16 (the "Property")[1], free and clear of liens, claims, and encumbrances pursuant to 11 U.S.C. §§ 363(b), 363(f), and 363(m); (2) approving overbid procedures; (3) authorizing the Trustee to pay undisputed, allowed secured claims, costs of sale, and broker commissions in full from net sale proceeds, and (4) waiving the stay of Rule 6004(h) (the "Motion").

This Motion is based upon the attached Memorandum of Points and Authorities, the Declarations of Thomas H. Casey and Tim Smith, and supporting exhibits filed concurrently herewith, the separate Notice of the Motion, all pleadings, papers and records on file with the Court and such other evidence, oral or documentary, as may be presented to and considered by the Court, including prior to or at the hearing on this Motion.

WHEREFORE, the Trustee respectfully requests that the Court enter an order:

1.      Granting the Motion and authorizing the sale of the Property to the Proposed Buyer on the terms set forth in the Sale Agreement (as defined hereinafter), or to any qualified overbidder, according to the terms and conditions proposed herein, free and clear of any liens, interests and encumbrances, including the subject lease;

2.      Authorizing the payment of valid secured creditor claims, property taxes, brokers' commissions, and costs of sale directly from escrow;

3.      Approving the overbid procedures requested herein;

4.      Finding that the sale of the Property was conducted in good faith within the meaning of 11 U.S.C. § 363(m), and that the Trustee and buyer(s) of the Property is

[1] The legal description of the Property is set forth in the preliminary title report on page 3, a true and correct copy of which is attached to the Declaration of Casey as Exhibit "1."

Ringstad & Sanders
L.L.P.
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

entitled to the benefits and protections of this subsection of the Bankruptcy Code;

5.      Authorizing the Trustee to sign any and all documents necessary and to undertake any non-material amendments and modifications necessary to complete the sale of the Property to the highest qualified bidder without further notice, hearing or order of this Court;

6.      Waiving the 10 day stay of Rule 6004(h) of the Federal Rules of Bankruptcy Procedure; and,

7.      For such other and further relief as the Court deems just and proper.

Dated:  April 30, 2026                    RINGSTAD & SANDERS LLP


By:  */s/ Todd C. Ringstad*
        Todd C. Ringstad
General Bankruptcy Counsel for Thomas H. Casey,
Chapter 11 Trustee

Ringstad & Sanders
L.L.P.
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

# TABLE OF CONTENTS

Page No.

MEMORANDUM OF POINTS AND AUTHORITIES ... 4

I.  STATEMENT OF FACTS ... 4

    A.  Case Background and Appointment of Trustee. ... 4
    B.  The Liens Asserted Against the Property. ... 5
    C.  The Trustee's Efforts to Sell the Property. ... 5
    D.  The Trustee Proposes to Sell the Property Free and Clear of Liens, Claims, and Encumbrances. ... 8

II.  PROPOSED OVERBID PROCEDURES ... 9

III.  ARGUMENT AND APPLICABLE LEGAL AUTHORITY ... 11

    A.  The Trustee May Sell the Property Pursuant to Bankruptcy Code Section 363(b). ... 11

        1.  A Sound Business Purpose Justifies the Proposed Sale. ... 11
        2.  Fair and Reasonable Price. ... 12
        3.  Accurate and Reasonable Notice. ... 12
        4.  Good Faith. ... 12

    B.  The Trustee May Sell the Property Free and Clear of Claims, Interests, and Encumbrances. ... 12

IV  THE PROPOSED BUYER IS A PURCHASER IN "GOOD FAITH" IN ACCORDANCE WITH BANKRUPTCY CODE SECTION 363(m) ... 13

V.  THE BANKRUPTCY COURT HAS THE AUTHORITIEY TO APPROVE THE BIDDING PROCEDURES ... 15

    A.  The Proposed Procedures are Untainted by Self-Dealing. ... 15
    B.  The Proposed Procedures Encourage Bidding and are Fair in Amount. ... 15
    C.  The Proposed Bidding Procedures are Fair, Reasonable and Serve the Best Interests of the Estate. ... 16

VI.  THE COURT SHOULD ORDER THAT BANKRUPTCY RULE 6004(h) WILL NOT APPLY TO THE PROPERTY ... 16

VII.  CONCLUSION ... 17

DECLARATION OF THOMAS H. CASEY ... 19

DECLARATION OF TIM SMITH ... 26

Ringstad & Sanders
L.L.P.
4910 Birch Street, Suite 120
Newport Beach, California 92660
949.851.7450

- i -

**TABLE OF AUTHORITIES**

**Cases:**

*Barnes v. 309 Rte 100 Dover LLC,*
    2:20-cv-00045 (D. Vt. Nov. 6, 2020)    14

*Citicorp Homeowners Services, Inc. v. Elliott (In re Elliott)*,
    94 B.R. 343, 345 (Bankr. W.D. Tex. 1989)    13

*In re Abbotts Dairies, Inc.*,
    788 F.2d 143, 149-150 (3rd. Cir. 1986)    13

*In re Airlift Int'l, Inc.*,
    18 B.R. 787, 789 (Bankr. S.D. Fla.1982)    11

*In re Crown Corporation*,
    679 F.2d 774 (9th Cir. 1982)    15

*In re Gucci,*
    126 F.3d 380, 390 (2d Cir. 1997)    14

*In re Industrial Valley Refrig. & Air Cond.  Supplies, Inc.*,
    77 B.R. 15, 21 (Bankr. E.D. Pa. 1987)    11

*In re Ionosphere Clubs, Inc.*,
    184 B.R. 648 (S.D.N.Y. 1995)    11

*In re Lionel*,
    722 F.2d 1063, 1071-1071 (2nd Cir. 1983)    11

*In re Rock Indus. Mach. Corp.,*
    572 F2d 1195, 1198 (8th Cir. 1978)    14

*In re Wilde Horse Enterprises, Inc.*,
    136 B.R. 830, 841 (Bankr. C.D. Cal. 1991)    11

*RE Palm Springs II, LLC*,
    No. 21-11244 (5th Cir. Apr. 17, 2023)    14


Statutes:

11 U.S.C. Section 101    4
11 U.S.C. Section 105(a)    15
11 U.S.C. Section 363(b)    2, 11
11 U.S.C. Section 363(b)(1)    11, 13, 15
11 U.S.C. Section 363(f)    2, 13
11 U.S.C. Section 363(f)(2)    13
11 U.S.C. Section 363(f)(4)    13
11 U.S.C. Section 363(f)(5)    13
11 U.S.C. Section 363(m)    2, 7, 13, 14, 17
11 U.S.C. Section 1112(b)    4

Federal Rules of Bankruptcy Procedure, Rule 6004(h)    2, 3, 16, 17

Ringstad & Sanders

L.L.P.
4910 Birch Street, Suite 120
Newport Beach, California 92660
949.851.7450

### MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### STATEMENT OF FACTS

**A.      Case Background and Appointment of the Trustee.**

Serenade Newport, LLC, a California limited liability corporation (the "Debtor"), is the Debtor in this Chapter 11 bankruptcy case.  On July 11, 2025, the Debtor commenced this bankruptcy proceeding by filing a voluntary petition under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101 et seq.

On August 14, 2025, Bryan Gadol and Darren Testa, individuals, filed a Notice and Motion to Dismiss this Bankruptcy Case for Cause as Doc. 53 (the "Dismissal Motion").  The Dismissal Motion came on for hearing on September 9, 2025.  At the hearing, the Court determined that cause existed to grant the motion and dismiss or convert the case under 11 U.S.C. section 1112(b).  However, the Court further determined that appointment of a Chapter 11 Trustee in lieu of dismissal or conversion of the case was in the best interests of the creditors and the bankruptcy estate (the "Estate").  The Court therefore entered its Order Granting Motion to Dismiss Bankruptcy for Cause (the "Dismissal Order") as Doc. 92, which authorized and directed the United States Trustee ("UST") to promptly appoint a Chapter 11 Trustee in the case.

Thereafter, on September 16, 2025, the UST filed its Notice of Appointment of Chapter 11 Trustee appointing Thomas H. Casey as chapter 11 Trustee [Doc. 95] and the Acceptance of Appointment of Chapter 11 Trustee [Doc. 96], in which Mr. Casey accepted the appointment. The same day, the UST filed its Application for Order Approving Appointment of Trustee and Fixing Bond [Doc. 97], and the Court promptly entered its Order Approving the U.S. Trustee's Application for the Appointment of a Chapter 11 Trustee approving the UST's Application and appointing Thomas H. Casey as Chapter 11 Trustee. [Doc. 98]  Since September 16, 2025, Thomas H. Casey has served and continues to serve as Chapter 11 Trustee herein (the "Trustee").

The sole asset of this Estate is a single family residence located at 1501 Serenade Terrace, Corona del Mar, California, APN 050-282-16 (the "Property").  The Trustee has marketed the

Ringstad & Sanders
L.L.P.
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

- 4 -

Property aggressively in an effort to liquidate the asset and provide a fund for payment of valid secured claims, approved administrative claims, and general unsecured claims of this Estate.

**B.      The Liens Asserted Against the Property.**

Pursuant to the preliminary title report, a true and correct copy of which is attached to the Declaration of Thomas H. Casey as Exhibit "1," obtained by the Trustee regarding the Property and formal proofs of claim filed with the Clerk of the Court, the Property is encumbered by the following:

| Claim | Amount | Source | Notes |
|---|---|---|---|
| Property Taxes (County of Orange) | $80,585.86, plus addl. interest and penalties | Preliminary Title Report (Ex. 1 attached) | Trustee has no objection to this claim. |
| PPRF REIT, LLC | $5,278,125 plus accrued interest and other charges | Proof of Claim No. 6-1 filed 9/30/2026 | Subject to further review. |
| Sitlani Holdings LLC and Mahesh Tilokani | $500,000 plus accrued interest and other charges | Proof of Claim No. 7-1 filed 09/30/2025 | Subject to further review. |
| **Total Secured Debt** | To be determined. | | |

**C.      The Trustee's Efforts to Sell the Property.**

On October 20, 2025, the Trustee filed his *Chapter 11 Trustee's Application to Employ Real Estate Agent (Tim Smith of Coldwell Banker Realty)*(Dkt. No. 117).  No objections were filed to the Application, and the Court's *Order Granting Chapter 11 Trustee's Application to Employ Real Estate Agent* was entered on December 17, 2025.  The Property was beautifully staged for showing and on or about November 13, 2025 was formally listed for sale by Tim Smith Realty (the "Broker") with an initial asking price of $9,295,000.

The Property was shown to multiple interested and qualified parties on an appointment basis, and several open house showings were conducted.  After ample exposure to the market, the Trustee accepted an all-cash offer of $8,200,000 from Jacob Sweidan ("Proposed Buyer").  The purchase is "As-is" in its present physical condition.  Additional terms include:

--Seller is the duly appointed and acting Chapter 11 Trustee in the Chapter

Ringstad & Sanders
L.L.P.
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

- 5 -

Ringstad & Sanders
L.L.P.
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

11 bankruptcy case of Serenade Newport, LLC, pending as Case No. 8:25-bk-11898-MH (the "Case") pending in the United States Bankruptcy Court, Central District of California, Santa Ana Division (the "Court"). The Sale is subject to Court approval of the Sale in the Case.  Seller shall use due diligence to obtain Court approval at a Sale at a Sale Hearing to occur within 60 days.

--Sale is subject to overbids by third parties who have provided a deposit to Seller equivalent to the Proposed Buyer's Deposit. Minimum initial overbid to be at least $10,000 higher than the purchase price between Seller and Proposed Buyer, with subsequent bids in the amount of not less than $5,000. In the event of any qualified overbids, the Trustee may conduct an auction between Proposed Buyer and any qualified overbidders to occur at the Sale Hearing before the Court. Overbidder to match all terms and conditions of Seller's Agreement with Proposed Buyer.  Each bid musth be all cash, non-contingent and include a cash deposit of $246,000.

-- If a successful overbidder is accepted and confirmed by the Court, then the successful overbidder is to reimburse the Proposed Buyer up to $5,000.00 for costs incurred.  Such costs are limited to physical and termite inspection costs, and are in addition to and not deducted from the Purchase price.  Proof of monies spent to be provided to overbidder by the Proposed Buyer. Sale is as-is, where-is with no representations or warranties regarding the condition of the Property or the improvements thereon. Pest control/termite inspection report and any corrective work will not be provided, completed by, nor paid for by the Seller.

--Qualified overbids must be received by the Trustee no later than 5:00 p.m. on May 21, 2026 (or such other date as is subsequently announced by the Trustee) together with a cashier's check in the amount of $246,000.

--Escrow to close within 7-10 days after entry of an Order of the Bankruptcy Court approving the sale.  The Initial Deposit is fully refundable if the Bankruptcy Court does not approve the sale or approves the sale to another overbidder. If the

- 6 -

Ringstad & Sanders
L.L.P.
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

Bankruptcy Court approves the sale to the Proposed Buyer, the Initial Deposit becomes non-refundable, and shall be forfeited by the Proposed Buyer and retained by the Seller as liquidated damages if the Proposed Buyer fails to perform their obligations and timely close escrow.

--Any and all disputes, which involve in any manner the Seller, the Bankruptcy Estate or Thomas H. Casey arising from the Purchase Contract, this Addendum or relating in any manner to the Subject Property, shall be resolved only in the United States Bankruptcy, Central District of California. Santa Ana Division.

The Broker continues to aggressively market and show the Property with the goal of generating one or more overbids. Based upon the advice of the Brokers, the Trustee believes that the pending Offer is within the range of the Property's actual current market value.

If the Brokers procure an overbidder prior to the hearing on this Motion, the Trustee will endeavor to supplement this Motion with details regarding same, or present the terms of the proposed overbid to the Court at the time of the hearing hereon.

Based on the advice his real estate agent Tim Smith, the Trustee believes that the offer by the Proposed Buyer is generally reflective of the current fair market value of the Property. To the best of his knowledge, the Trustee believes that this is an arm's-length transaction. The Proposed Buyer is not related to anyone connected with the Trustee, the Brokers, or the Trustee's counsel, nor is the Proposed Buyer an insider of the Debtor, with the Proposed Buyer satisfying the requirements for a good faith finding by the Court pursuant to Section 363(m).

The Trustee and the Proposed Buyer understand and agree that the Sale Agreement and proposed sale are subject to overbid and request that the Court approve the bidding procedures or increments set forth in the Sale Agreement and as described herein.

//

//

**D.** **The Trustee Proposes to Sell the Property Free and Clear of Liens, Claims, and Encumbrances.**

The Trustee is informed, through the Declarations of Sahand Zargari and Michael Gerro attached to the former Debtor in Possession's Notice of Hearing on Motion and Motion for Order: (1) Authorizing Sale of Real Property, etc., filed herein as Dkt. No. 43, that the Debtor, Serenade Newport, LLC, was formed to purchase the Property from the former owner, the Haim Family Trust, Mordechai Ferder and Edit Ferder, Trustees. The purchase was closed on June 18, 2025. On July 11, 2025, Serenade Newport, LLC filed a voluntary petition under Chapter 11 of the Bankruptcy Code commencing this case. Due to the proximity of the purchase of the Property by Debtor to the commencement of this case, Trustee seeks an Order selling the Property free and clear of any interests of the Haim Family Trust, Mordechai Ferder, Edit Ferder, or any related persons or entities.

The Trustee, through escrow, is in the process of gathering current payoff numbers from each lienholder. The secured first trust deed obligation held by PPRF REIT, LLC and the secured second trust deed obligation held by Sitlani Holdings, LLC and Mahesh Tolokani (collectively, the "Secured Creditors") appear to be purchase money obligations that financed the purchase of the Property by Debtor from Mordechai H. Ferder and Edit F. Ferder, as Trustees of The Haim Family Trust, u/d/t February 24, 2009. However, the Trustee's investigation of these obligations continues.

On October 22, 2025, a Stipulation re Secured Claims was filed in the Bankruptcy Case as Dkt. No. 119, pursuant to which the Trustee agreed (i) to promptly and diligently proceed with the marketing and sale of the Property and (ii) in the event that the Trustee files a Motion to approve a sale of the Property, the Trustee will, in any such Motion, request authorization to pay all principal due to the Secured Creditors, and all undisputed interest, fees and charges to the Secured Creditors on close of the sale; and reserve in escrow until determination by the Court or agreement of the parties, sufficient funds to pay in full all disputed interest, fees and charges if any such amounts are disputed.

In return, the Secured Creditors and each of them, agreed not to seek to set aside the

Ringstad & Sanders
L.L.P.
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

- 8 -

bankruptcy stay to pursue foreclosure of either of the deeds of trust securing their loans, or to otherwise pursue foreclosure or other recourse to obtain payment of amounts owed to them under their loans, until the earlier of a) completion of the sale of the Property, or b) a period of six months from the date last signed below, conditioned on the Trustee's ongoing diligent pursuit of sale of the Property.

The Stipulation re Secured Claims was approved by the Order re Stipulation re Secured Creditors Claims entered on November 6, 2025 as Dkt. No. 127.

The Trustee therefore requests authorization to pay all principal due to the Secured Creditors, and all undisputed interest, fees and charges to the Secured Creditors on close of the sale; and reserve in escrow until determination by the Court or agreement of the parties, sufficient funds to pay in full all disputed interest, fees and charges if any such amounts are disputed.

The Trustee further seeks an order of the Court authorizing the distribution of the proceeds of the sale of the Property through the escrow and contingent on, and payable at, the closing of escrow, as follows:

A.      Accrued and prorated property taxes due to the County of Orange.

B.      Real Estate Commissions – consistent with the terms of the Trustee's employment of the Brokers, payment of a commission equal to 4.0% of the total sale price, with such commission divided equally between the Trustee's Brokers, and the broker for the Proposed Buyer.

C.      Closing Costs – normal "closing costs," which may include things such as the Estate's share (pursuant to the terms of the Sale Agreement and local custom) of escrow charges, recording fees, documentary transfer taxes, utilities, association dues and charges, and other normal and customary charges, pro-rations, costs and fees.

## II.

## PROPOSED OVERBID PROCEDURES

In order to obtain the highest and best price for the benefit of the creditors of the Estate, the Trustee proposes that the sale of the Property be subject to overbid on the following terms:

- 9 -

A.      Only a qualified bidder may submit an overbid.  A "qualified bidder" is an individual or entity that provides a financial statement or proof of funds, and such business and banking references as are required in the Trustee's reasonable discretion to assure the Trustee of the bidder's ability to consummate the purchase of the Property, and one who can consummate the purchase of the Property on the same terms and conditions, other than price, as those proposed in the Sales Agreement.

B.      Each bid, as well as information and/or documentation establishing a bidder's qualification as a "qualified bidder," must be received by the Trustee by 5:00 p.m. on or before May 21, 2026.

C.      The initial minimum overbid must be at least $10,000.00 over the amount of the proposed net sale price, which results in a minimum initial overbid of $8,210,000. Subsequent overbids shall be in increments of $5,000.00.

D.      Each bid must be all cash, non-contingent, and on the same terms and conditions, as those proposed in the current Sales Agreement between the Trustee and the Proposed Buyer.

E.      Each bidder must make an earnest money deposit of at least $246,000.00 which must be tendered to the Trustee by 5:00 p.m. on May 21, 2026. The deposit must be in the form of a cashier's check made payable to "Chapter 11 Trustee Thomas H. Casey," and must be deposited with the Trustee so that the Trustee will have access to said funds no later than 5:00 p.m., May 21, 2026, or the deposit must be wired to the Trustee's account prior to 5:00 p.m., May 21, 2026.  The overbidder will be informed that the deposit is a non-refundable deposit if they are the successful bidder and unable to consummate the sale.

The Trustee believes that the foregoing procedures will provide for an orderly completion of the sale of the Property by permitting all bidders to compete on similar terms, and will allow all interested parties and the Court to compare competing bids in order to realize the greatest possible benefit to the Estate.

Ringstad & Sanders
L.L.P.
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

**III.**

**ARGUMENT AND APPLICABLE LEGAL AUTHORITY**

**A.    The Trustee May Sell the Property Pursuant to Bankruptcy Code Section 363(b).**

Bankruptcy Code section 363(b)(1) provides, in relevant part: "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Although the section does not expressly articulate a standard for determining whether a court should approve a sale, courts consistently apply an "articulated business judgment" standard.  *See, In re Lionel*, 722 F.2d 1063, 1071-1071 (2nd Cir. 1983); *In re Ionosphere Clubs, Inc.*, 184 B.R. 648 (S.D.N.Y. 1995).   To that end, the proponent of the sale must establish that there is a sound business purpose of the sale and that the sale is in the best interests of the estate, i.e., the sale is for a fair and reasonable price, that there is accurate and reasonable notice to creditors and that the sale is made in good faith. *In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991); *In re Lionel Corp., supra*, at 1069; *In re Industrial Valley Refrig. & Air Cond.  Supplies, Inc.*, 77 B.R. 15, 21 (Bankr. E.D. Pa. 1987).

Section 363(b)(1) does not require that a court substitute its business judgment for that of the debtor. *In re Ionosphere*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989).  Rather, a court should ascertain whether the debtor has articulated a sound business justification for the proposed transaction.  This interpretation of section 363(b)(1) is consistent with "broad authority to operate the business of the debtor" that is given to a trustee. *In re Airlift Int'l, Inc.*, 18 B.R. 787, 789 (Bankr. S.D. Fla.1982).  This broad authority "indicates Congressional intent to limit court involvement in business decisions by the trustee." *Id*.  Thus, "a court may not interfere with a reasonable business decision made in good faith by a trustee." *Id*.

In light of the foregoing, the Court's approval of the sale of the Property is justified on the following grounds:

**1.    A Sound Business Purpose Justifies the Proposed Sale.**

The sale of the Property, the primary asset of the Estate, will generate funds that will be used to pay the allowed secured and unsecured claims.  The Trustee believes that he has fulfilled his mandate to market the Property and obtain an acceptable purchase offer, and as such there is a

Ringstad & Sanders
L.L.P.
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

- 11 -

sound business purpose for the sale.

**2. Fair and Reasonable Price.**

As is set forth in the attached Declaration of Tim Smith, the Property has been or will have been marketed by the Brokers for approximately six months as of the date of the hearing on the Motion. Marketing efforts will continue in the days following the submission of this Motion with the goal of generating additional interest and qualifying potential overbidders.

Moreover, in order to obtain the highest and best offer for the benefit of creditors of this Estate, the Trustee also seeks Court approval of the overbid procedures set forth above. The Trustee has determined that it would benefit the Estate by permitting all interested parties to receive information and bid for the Property instead of selling it to the Proposed Buyer on an exclusive basis.

**3. Accurate and Reasonable Notice.**

The Trustee intends to serve notice on all creditors and interested parties within the time period prescribed by the Local Bankruptcy Rules. As such, it is expected that the notice of this Motion will satisfy the requirements for accurate and reasonable notice and will be appropriate under the circumstances.

**4. Good Faith.**

In this case, the proposed sale is to an unrelated third party and is an arm's-length transaction. As noted above, to the Trustee's knowledge, the Proposed Buyer is not related in any way to the Trustee, the Trustee's counsel, or the Brokers, nor is the Proposed Buyer an insider of the Debtor.

The Trustee submits that the sale has been brought to the Court in good faith and the proposed sale price is fair and reasonable and should be approved.

**B. The Trustee May Sell the Property Free and Clear of Claims, Interests, and Encumbrances.**

As set forth above, the Property is subject to the Secured Claims. By this Motion, the Trustee requests that the Court authorize the Trustee to sell the Property free and clear of the Secured Claims.

Ringstad & Sanders
L.L.P.
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

Section 363(f) allows a trustee to sell property of the bankruptcy estate "free and clear of any interest in such property of an entity," if any one of the following five conditions is met:

1.       Applicable non-bankruptcy law permits a sale of such property free and clear of such interest;

2.       Such entity consents;

3.       Such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

4.       Such interest is in bona fide dispute; or,

5.       Such entity could be compelled, in a legal or equitable proceeding, to accept money satisfaction of such interest.

11 U.S.C. § 363(f).

Section 363(f) is written in the disjunctive—satisfaction of any one of the five conditions is sufficient to sell property free and clear of liens. *See, e.g., Citicorp Homeowners Services, Inc. v. Elliott (In re Elliott)*, 94 B.R. 343, 345 (Bankr. W.D. Tex. 1989).

Applied here, the Trustee believes he has satisfied several of the five conditions outlined by section 363(f).   The Trustee is informed and believes that the holders of the Secured Claims will not oppose the sale of the Property free and clear of the Secured Claims, thus satisfying 363(f)(2).  If there is a dispute as to a final claim amount asserted through escrow the property can be sold free and clear of Secured Claims under section 363(f)(4) with the allowed amount of the claim to be determined by the Court and paid upon final determination.  Finally, these are monetary obligations and the creditors holding the claim could be compelled to accept a money satisfaction of their interests, thereby satisfying section 363(f)(5).

**IV.**

**THE PROPOSED BUYER IS A PURCHASER IN "GOOD FAITH" IN ACCORDANCE WITH BANKRUPTCY CODE SECTION 363(m)**

"[W]hen a bankruptcy court authorizes a sale of assets pursuant to section 363(b)(1), it is required to make a finding with respect to the 'good faith' of the purchaser." *In re Abbotts Dairies, Inc.*, 788 F.2d 143, 149-150 (3rd. Cir. 1986).   The purpose of such a finding is to

Ringstad & Sanders
L.L.P.
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

- 13 -

facilitate the operation of the Code section 363(m), which provides a safe harbor for purchases of a debtor's property that have acted in "good faith."

As noted by the court in *RE Palm Springs II, LLC*, No. 21-11244 (5th Cir. Apr. 17, 2023) The Bankruptcy Code does not explicitly define 'good faith,' but this Court has "defined the term in two ways": (1) a notice-based definition, wherein a "good faith purchaser" is "one who purchases the assets for value, in good faith, and without notice of adverse claims"; and (2) a conduct-based definition, meaning one who does not engage in "misconduct" including, *inter alia*, "fraud, collusion between the purchaser and other bidders, or an attempt to take grossly unfair advantage of other bidders."

*See, also*, *Barnes v. 309 Rte 100 Dover LLC,* 2:20-cv-00045 (D. Vt. Nov. 6, 2020) ("[t]he good faith of a purchaser is shown by the integrity of his conduct during the course of the sale proceedings." *In re Gucci*, 126 F.3d 380, 390 (2d Cir. 1997). It may be "lost by 'fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.'" *Id.* (quoting *In re Rock Indus. Mach. Corp.,* 572 F2d 1195, 1198 (8th Cir. 1978)). In determining whether a purchaser acted in good faith, the court focuses on conduct during bankruptcy proceedings, including "the purchaser's actions in preparation for and during the sale itself[m]" as opposed to the purchaser's "general business practices." *Id.*).

In this case, the Trustee believes that the Proposed Buyer (or any successful overbidder) is entitled to the safe harbor provided by section 363(m). By his declaration, the Trustee demonstrates that the negotiations between the Proposed Buyer and the Trustee were at all times conducted at arm's-length and in good faith. To the Trustee's knowledge, the Proposed Buyer is not related in any way to the Trustee, the Trustee's counsel, or the Brokers. Furthermore, the Proposed Buyer is not an insider or affiliate of the Debtor. Throughout the negotiations with the Proposed Buyer, the Trustee has acted with the sole purpose of obtaining the most consideration that can realistically be obtained for the Property. In sum, the facts before the Court warrant a finding that the Proposed Buyer (or any successful overbidder) is a good faith purchaser.

Ringstad & Sanders
L.L.P.
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

Ringstad & Sanders
L.L.P.
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

# V.

## THE BANKRUPTCY COURT HAS THE AUTHORITY

## TO APPROVE THE BIDDING PROCEDURES

Implementation of the bidding procedures is an action outside the ordinary course of business. A trustee "after notice and hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Furthermore, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Thus, pursuant to sections 363(b)(1) and 105(a), this Court may authorize the implementation of overbidding procedures.

The Ninth Circuit, in a case under the Bankruptcy Act, recognized the power of a bankruptcy court to issue orders determining the terms and conditions for overbids with respect to a sale of estate assets. *In re Crown Corporation*, 679 F.2d 774 (9th Cir. 1982). The *Crown Corporation* court entered an order specifying the minimum consideration required for an overbid as well as the particular contractual terms required to be offered by overbidders. *Id.* at 777. The *Crown Corporation* decision also approves of an order requiring and setting the amount of potential overbidders' deposits and authorized courts to determine the disposition of such deposits. *Id*. While the discussion is not extensive, the *Crown Corporation* decision recognizes the inherent authority of bankruptcy courts to order the implementation of bidding procedures such as those proposed in the present case.

### A.    The Proposed Procedures are Untainted by Self-Dealing.

The proposed overbid procedures have been presented in good faith and have been negotiated on an "arm's-length" basis. Therefore, the dealings between the Trustee and the Proposed Buyer (or any successful buyer) are not tainted.

### B.    The Proposed Procedures Encourage Bidding and are Fair in Amount.

The overbid procedures are designed to encourage, not hamper, bidding and are reasonable under the circumstances. This Motion is intended to provide potential overbidders with adequate information to make an informed decision as to the amount of their bid.

**C.**      **The Proposed Bidding Procedures are Fair, Reasonable and Serve the Best Interests of the Estate.**

The proposed bidding procedures serve the Estate in several ways.  First, the procedures themselves are fair, reasonable, and productive; they will permit the Trustee to conduct an orderly sale of the Property and obtain the best possible price on the best possible terms.  Second, the bidding procedures are a necessary component of the Trustee's sale of the Property.

The bidding procedures will ensure that all bids will be comparable.  If competing bids are received, the Trustee will determine which bid is the highest and best for the Estate.  The comparability requirement of the bidding procedures will make it possible to accomplish this task.

The bidding procedures will help the Trustee to obtain the highest and best price for the Property.  The procedures institute minimum overbid increments that the Trustee believes are reasonable.  Thus, if competing bids are received, the Trustee will be able to obtain substantial benefit for this Estate from the sale of the Property. The bidding procedures require potential bidders to deposit certified funds prior to the hearing on the Motion.  It would be a serious loss to the Estate if the Trustee surrendered the opportunity to sell the Property to the Proposed Buyer in favor of a competing bidder, only to later discover that the bidder is incapable of consummating the transaction.  Thus, requiring bidders to make a substantial non-refundable deposit in the event the sale to the bidder is approved will protect the Estate from such a loss.

**VI.**

**THE COURT SHOULD ORDER THAT BANKRUPTCY RULE 6004(h)
WILL NOT APPLY TO THE PROPERTY**

Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease or property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).  The Purchase Offer received from the Proposed Buyer presented the Trustee with an all cash offer that the Proposed Buyer is prepared to close within 7 days from Court approval.  The Trustee therefore respectfully requests that the Court order that Rule 6004(h) not apply to the sale of the Property.  This will allow the

- 16 -

sale to be closed as quickly as possible, unless otherwise agreed to in writing by the parties, in accordance with the wishes of the Trustee and the Proposed Buyer as set forth in the Sale Agreement, result in payment of the Secured Claims and the cessation of continued interest accrual on claims, all to the benefit of unsecured creditors.

## VII.

## CONCLUSION

Based on the foregoing, the Trustee respectfully requests that the Court enter an Order:

1.      Granting the Motion and authorizing the sale of the Property to the Proposed Buyer on the terms set forth in the Sale Agreement, or to any qualified overbidder, according to the terms and conditions proposed herein, free and clear of any liens, interests and encumbrances;

2.      Authorizing the payment of valid secured creditor claims, property taxes, brokers' commissions, and costs of sale directly from escrow;

3.      Approving the overbid procedures requested herein;

4.      Finding that the sale of the Property was conducted in good faith within the meaning of 11 U.S.C. § 363(m) and that the Proposed Buyer, or a Successful Overbidder, is a purchaser in good faith entitled to the protections of Sectio 363(m);

5.      Authorizing the Trustee to sign any and all documents necessary and to undertake any non-material amendments and modifications necessary to complete the sale of the Property to the highest qualified bidder without further notice, hearing or order of this Court[2];

6.      Waiving the 10 day stay of Rule 6004(h) of the Federal Rules of Bankruptcy Procedure; and,

//

//

---

[2] Including the waiver of any non-material condition established by the Sale Agreement, by the mutual consent of the parties.

- 17 -

7.    For such other and further relief as the Court deems just and proper.

Dated: April 30, 2026                    Respectfully submitted,

RINGSTAD & SANDERS LLP

By:    */s/ Todd C. Ringstad*
           Todd C. Ringstad
General Bankruptcy Counsel for
Thomas H. Casey, Chapter 11 Trustee

Ringstad & Sanders
L.L.P.
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

- 18 -

### DECLARATION OF THOMAS H. CASEY

I, Thomas H. Casey, declare as follows:

1.      The following matters are true and correct and within my own personal knowledge, except those matters set forth on information and belief; and as to those matters, I am informed and believe them to be true.  If called upon to do so, I could and would competently testify as to the truth of the matters set forth herein.  In preparing this declaration and conducting my investigation in this case, I reviewed the electronic docket ("Docket") maintained by the Court for this case and the relevant documents contained in the Docket.

2.      I am the duly appointed and acting Chapter 11 trustee.  On September 16, 2025, the United States Trustee filed its Notice of Appointment, as Dkt. No. 95, pursuant to which I was appointed as Chapter 11 trustee for the bankruptcy estate (the "Estate") of debtor Serenade Newport, LLC ("Debtor").  On the same day, I filed my "Acceptance of Appointment as Chapter 11 Trustee" as Dkt. No. 96.

3.      I make this this Declaration in support of my Motion (the "Motion") for an order approving the sale of the Estate's interest in certain residential real property commonly known as 1501 Serenade Terrace, Corona del Mar, California, APN 050-282-16 (the "Property"), subject to overbids, and free and clear of liens, claims, and encumbrances pursuant to 11 U.S.C. §§ 363(b), 363(f), and 363(m).

4.      This case is a single asset real estate case as the Property is the only significant asset of the Estate.

5.      During the course of the case, I engaged Tim Smith of Coldwell Banker Realty as my real estate agent for the purpose of selling the Property.  The Property was beautifully staged for showing and on or about November 13, 2025 was formally listed for sale by Tim Smith Realty (the "Broker") with an initial asking price of $9,295,000.

6.      The Property was shown to multiple interested and qualified parties on an appointment basis, and several open house showings were conducted.  After ample exposure to the market, in my capacity as Trustee, I accepted an all-cash offer of $8,200,000 from proposed buyer Jacob Sweidan ("Proposed Buyer").  Based upon the advice of my Brokers, I believe that

Ringstad & Sanders
L.L.P.
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

the pending Offer is within the range of the Property's actual current market value.  The purchase is "As-is" in its present physical condition.  Additional terms include:

--Seller is the duly appointed and acting Chapter 11 Trustee in the Chapter 11 bankruptcy case of Serenade Newport, LLC, pending as Case No. 8:25-bk-11898-MH (the "Case") pending in the United States Bankruptcy Court, Central District of California, Santa Ana Division (the "Court"). The Sale is subject to Court approval of the Sale in the Case.  Seller shall use due diligence to obtain Court approval at a Sale at a Sale Hearing to occur within 60 days.

--Sale is subject to overbids by third parties who have provided a deposit to Seller equivalent to the Proposed Buyer's Deposit. Minimum initial overbid to be at least $10,000 higher than the purchase price between Seller and Proposed Buyer, with subsequent bids in the amount of not less than $5,000. In the event of any qualified overbids, the Trustee may conduct an auction between Proposed Buyer and any qualified overbidders to occur at the Sale Hearing before the Court. Overbidder to match all terms and conditions of Seller's Agreement with Proposed Buyer.  Each bid must be all cash, non-contingent and include a cash deposit of $246,000.

-- If a successful overbidder is accepted and confirmed by the Court, then the successful overbidder is to reimburse the Proposed Buyer up to $5,000.00 for costs incurred.  Such costs are limited to physical and termite inspection costs, and are in addition to and not deducted from the Purchase price.  Proof of monies spent to be provided to overbidder by the Proposed Buyer. Sale is as-is, where-is with no representations or warranties regarding the condition of the Property or the improvements thereon. Pest control/termite inspection report and any corrective work will not be provided, completed by, nor paid for by the Seller.

--Qualified overbids must be received by the Trustee no later than 5:00 p.m. on May 21, 2026 (or such other date as is subsequently announced by the Trustee) together with a cashier's check in the amount of $246,000.

- 20 -

--Escrow to close within 7-10 days after entry of an Order of the Bankruptcy Court approving the sale.  The Initial Deposit is fully refundable if the Bankruptcy Court does not approve the sale or approves the sale to another overbidder. If the Bankruptcy Court approves the sale to the Proposed Buyer, the Initial Deposit becomes non-refundable, and shall be forfeited by the Proposed Buyer and retained by the Seller as liquidated damages if the Proposed Buyer fails to perform their obligations and timely close escrow.

--Any and all disputes, which involve in any manner the Seller, the Bankruptcy Estate or Thomas H. Casey arising from the Purchase Contract, this Addendum or relating in any manner to the Subject Property, shall be resolved only in the United States Bankruptcy, Central District of California. Santa Ana Division.

6.      As noted above, as Trustee I have conditionally accepted the offer subject to overbidding by qualified bidders and Court approval.  As Trustee, I request approval of the following overbid procedures:

**PROPOSED OVERBID PROCEDURES**

7.      In order to obtain the highest and best price for the benefit of the creditors of the Estate, the Trustee proposes that the sale of the Property be subject to overbid on the following terms:

A.      Only a qualified bidder may submit an overbid.  A "qualified bidder" is an individual or entity that provides a financial statement or proof of funds, and such business and banking references as are required in my reasonable discretion to provide assurance of the bidder's ability to consummate the purchase of the Property, and one who can consummate the purchase of the Property on the same terms and conditions, other than price, as those proposed in the Sales Agreement.

Ringstad & Sanders
L.L.P.
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

Ringstad & Sanders
L.L.P.
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

B.     Each bid, as well as information and/or documentation establishing a bidder's qualification as a "qualified bidder," must be received by the Trustee by 5:00 p.m. on or before May 21, 2026.

C.     The initial minimum overbid must be at least $10,000.00 over the amount of the proposed net sale price, which results in a minimum initial overbid of $8,210,000.   Subsequent overbids shall be in minimum increments of $5,000.00.

D.     Each bid must be all cash, non-contingent, and on the same terms and conditions, as those proposed in the current Sales Agreement between the Trustee and the Proposed Buyer.

E.     Each bidder must make an earnest money deposit of at least $246,000.00 which must be tendered to the Trustee by 5:00 p.m. on May 21, 2026.  The deposit must be in the form of a cashier's check made payable to "Chapter 11 Trustee Thomas H. Casey," and must be deposited with the Trustee so that the Trustee will have access to said funds no later than 5:00 p.m., May 21, 2026, or the deposit must be wired to the Trustee's account prior to 5:00 p.m., May 21, 2026.  The overbidder will be informed that the deposit is a non-refundable deposit if they are the successful bidder and unable to consummate the sale.

F.     If a successful overbidder is accepted and confirmed by the Court, then the successful overbidder is to reimburse the Proposed Buyer up to $5,000.00 for costs incurred.  Such costs are limited to physical and termite inspection costs, and are in addition to and not deducted from the Purchase price.  Proof of monies spent to be provided to overbidder by the Proposed Buyer.

8.     I believe that the foregoing procedures will provide for an orderly completion of the sale of the Property by permitting all bidders to compete on similar terms, and will allow all interested parties and the Court to compare competing bids in order to realize the greatest possible benefit to the Estate.  I reserve the right, in my exercise of reasonable business discretion, to

Ringstad & Sanders
L.L.P.
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

determine the most favorable bid considering all factors, and shall recommend confirmation of the most favorable bid by the Court.  All overbids must be on the same terms, and conditions as set forth herein, or such other terms and conditions as I in my sole discretion may determine are no less favorable to the Estate.

### THE LIENS ASSERTED AGAINST THE PROPERTY.

9.    Pursuant to the Preliminary Title Report obtained from Lawyer's Title, a true and correct copy of which is attached hereto as Exhibit "1," the Property is encumbered by the following liens and encumbrances

| Claim | Amount | Source | Notes |
|---|---|---|---|
| Property Taxes (County of Orange) | $80,585.86, plus addl. interest and penalties | Preliminary Title Report (Ex. 1 attached) | Trustee has no objection to this claim. |
| PPRF REIT, LLC | $5,278,125 plus accrued interest and other charges | Proof of Claim No. 6-1 filed 9/30/2026 | Subject to further review. |
| Sitlani Holdings LLC and Mahesh Tilokani | $500,000 plus accrued interest and other charges | Proof of Claim No. 7-1 filed 09/30/2025 | Subject to further review. |
| **Total Secured Debt** | To be determined. | | |

10.    On October 22, 2025, a Stipulation re Secured Claims was filed in the Bankruptcy Case as Dkt. No. 119, pursuant to which in my capacity as Trustee, I agreed (i) to promptly and diligently proceed with the marketing and sale of the Property and (ii) in the event that the Trustee files a Motion to approve a sale of the Property, the Trustee will, in any such Motion, request authorization to pay all principal due to the Secured Creditors, and all undisputed interest, fees and charges to the Secured Creditors on close of the sale; and reserve in escrow until determination by the Court or agreement of the parties, sufficient funds to pay in full all disputed interest, fees and charges if any such amounts are disputed.  In return, the Secured Creditors and each of them, agreed not to seek to set aside the bankruptcy stay to pursue foreclosure of either of the deeds of trust securing their loans, or to otherwise pursue foreclosure or other recourse to obtain payment of amounts owed to them under their loans, until the earlier of a) completion of the sale of the Property, or b) a period of six months from the date last signed below, conditioned

on the Trustee's ongoing diligent pursuit of sale of the Property.

11.    The Stipulation re Secured Claims was approved by the Order re Stipulation re Secured Creditors Claims entered on November 6, 2025 as Dkt. No. 127. As Trustee, I therefore request authorization to pay all principal due to the Secured Creditors, and all undisputed interest, fees and charges to the Secured Creditors on close of the sale; and reserve in escrow until determination by the Court or agreement of the parties, sufficient funds to pay in full all disputed interest, fees and charges if any such amounts are disputed.

12.    As Trustee, I further seek an order of the Court authorizing the distribution of the proceeds of the sale of the Property through the escrow and contingent on, and payable at, the closing of escrow, as follows:

       i.    Accrued and prorated property taxes due to the County of Orange.

       ii.    Real Estate Commissions – consistent with the terms of the Trustee's employment of the Brokers, payment of a commission equal to 4.0% of the total sale price, with such commission divided equally between the Trustee's Brokers, and the broker for the Proposed Buyer.

       iii.    Closing Costs – normal "closing costs," which may include things such as the Estate's share (pursuant to the terms of the Sale Agreement and local custom) of escrow charges, recording fees, documentary transfer taxes, utilities, association dues and charges, and other normal and customary charges, pro-rations, costs and fees.

13.    The terms of the proposed sale with the Proposed Buyer provide for an all-cash purchase, with no financing, and no contingencies. Proposed Buyer has expressed that he is purchasing the Property for a family member's immediate use and seeks to close promptly upon entry of an Order authorizing the sale. As Trustee, I desire to accommodate the needs of the Proposed Buyer, particularly under the circumstances of an all-cash, no contingencies sale. As Trustee, I therefore request waiver of the 10-day stay of Rule 6004(h) of the Federal Rules of

Ringstad & Sanders
L.L.P.
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

Bankruptcy Procedure and authorization to the successfully bidder to close the sale promptly upon entry of the Order approving the sale.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 30th day of April, 2026, at Mission Viejo, California.

_____
Thomas H. Casey

**DECLARATION OF TIM SMITH**

I, Tim Smith, declare as follows:

1.      I am an individual over the age of eighteen.  The matters set forth herein are personally known to me to be true, except those matters set forth on information and belief, and as to those matters, I am informed and believe them to be true.  If called upon to do so, I could and would competently testify as to the truth of the matters set forth herein.  I make this declaration in support of this *Motion of Chapter 11 Trustee for Order: (1) Approving the Sale of Real Property of the Estate, Free and Clear of Liens, Claims, and Encumbrances Pursuant to 11 U.S.C. §§ 363(b), 363(f), and 363(m); (2) Approving Overbid Procedures; (3) Authorizing the Trustee to Pay Allowed Secured Claims, Costs of Sale, and Broker Commissions in Full From Net Sale Proceeds, and (4) Waiving the Stay of Rule 6004(h)* (the "Motion"), relating to the real property located at 1501 Serenade Terrace, Corona del Mar, California, APN 050-282-16 (the "Property").

2.      I am a licensed real estate broker and agent in the state of California.  I have over two decades experience as a broker of high-end residential properties in Newport Beach and surrounding communities.  I am a member of Coldwell Banker's Presidential Premier group, which represents the top 1% of sale associates internationally.   I am a principal in and the founder of Tim Smith Real Estate Group, an agency with 22 agents.

3.      In order to maximize the selling price of the Property, my staff engaged a professional staging company and the Property was beautifully staged for showing.  The Property is a vacant single-family residence with and on or about November 13, 2025 was formally listed for sale by Tim Smith Realty (the "Broker") with an initial asking price of $9,295,000.

4.      The Property was shown to multiple interested and qualified parties on an appointment basis, and we conducted several open house showings.  After ample exposure to the market, the Trustee accepted an all-cash offer of $8,200,000, subject to overbids.  The purchase is "As-is" in its present physical condition.

5.      In order to continue generating overbids, we maintain the listing on the MLS after

Ringstad & Sanders
L.L.P.
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

the Property entered escrow, and continued arranging showings of the Property to qualified interested parties.  Per the instructions of the Trustee, we will continue such efforts until on or after May 21, 2026, the date chosen by the Trustee as the last day for submission of overbids.

6.    Based upon my long experience as a real estate agent and broker, I believe that the marketing of this Property, and the continued efforts to market the Property to overbidders after the Property entered escrow, has maximized the Property's exposure to the marketplace and has ensured that the Property will sell for its maximum fair market value under current market conditions.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed April __, 2026, at _____, California.

Original signature to be provided

Tim Smith

Ringstad & Sanders
L.L.P.
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450



# Preliminary Report

**File No.:** LT1257806779

**Your Reference No:** 106328-AA

**Escrow No.:** LT1257806779

**Property Address:** 1501 Serenade Terrace (Corona Del Mar Area), Newport Beach, CA

**Title Officer:** Michael Chediak & Ed Amaya Title Unit 78

## Welcome to the new titleLOOK®!



titleLOOK upgrades the traditional title report experience from a static report with large zip files of supporting documents to a real-time interactive title report. With titleLOOK, you'll enjoy:

- an easy-to-use summary page of your report findings
- color-coded requirements and exceptions so you can focus on what is important
- hyperlinks directly into the documents referenced on your report
- a transparent and convenient title report experience

### [Click to view custom titleLOOK®](#)



When you click on the above button/link to access your titleLOOK report, you will be taken to inHere, our platform designed to transform the experience of buying or selling real estate from the moment a transaction is started all the way through closing. inHere provides a safe and convenient method of delivering documents and information about your real estate transaction.

## PRELIMINARY REPORT



Prelim Number:

**LT1257806779**

7530 N Glenoaks Blvd
Burbank, CA 91504
Phone No.:  800-747-7777

---

Issuing Policies of **Commonwealth Land Title Insurance Company**

---

Order No.: LT1257806779

| | |
|---|---|
| A&A Escrow Services | Title Officer:  Michael Chediak & Ed Amaya Title Unit 78 |
| 15250 Ventura Blvd #715 | Phone No.:  818-252-3778 |
| Sherman Oaks, CA 91403 | Fax No.: |
| Attn:  Antonia Delgado | Email:  TU78@Ltic.com |
| Email:  antonia@aaescrow.com | |

**Ref No.:**   106328-AA

Property:   1501 Serenade Terrace (Corona Del Mar Area), Newport Beach, CA

---

In response to the application for a policy of title insurance referenced herein, **Lawyers Title Company** hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a policy or policies of title insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of a defect, lien or encumbrance not shown or referred to as an exception herein or not excluded from coverage pursuant to the printed Schedules, Exclusions from Coverage, and Conditions of said policy forms.

With respect to any contemplated owner's policy, the printed Exceptions and Exclusions from the coverage and Limitations on Covered Risks of said policy or policies are set forth in Attachment One.  The policy to be issued may contain an arbitration clause.  When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties.  Limitations on Covered Risks applicable to the CLTA/ALTA Homeowner's Policy of Title Insurance, which establish a Deductible Amount and a Maximum Dollar Limit of Liability for certain coverages are also set forth in Attachment One.  Copies of the policy forms should be read.  They are available from the office which issued this report.

**Please read the exceptions shown or referred to herein and the exceptions and exclusions set forth in Attachment One of this report carefully.  The exceptions and exclusions are meant to provide you with notice of matters which are not covered under the terms of the title insurance policy and should be carefully considered.**

**It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects, and encumbrances affecting title to the land.**

This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby.  If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a binder or commitment should be requested.

Countersigned By:

*Michele Weill*

Authorized Officer or Agent
Michele Weill, County Manager

---

CLTA Preliminary Report Form (02/03/2023)

Page 1

Printed:  04.10.26 @ 08:29 AM
CA-CW-FXDB-03410.204099-SPS-1-26-LT1257806779

Exhibit "1"
Page 29

**LAWYERS TITLE COMPANY**                                           **PRELIM NO. LT1257806779**

**Effective date:  March 18, 2026 at 07:30 AM**

The form of Policy or Policies of Title Insurance contemplated by this Report is:

CLTA Standard Coverage Owner's Policy - 2022

ALTA Loan Policy 2021

1.   The estate or interest in the Land hereinafter described or referred to covered by this Report is:

    **A FEE**

2.   Title to said estate or interest at the date hereof is <u>vested in:</u>

    **Serenade Newport, LLC, a California Limited Liability Company, subject to proceedings
pending in the Bankruptcy Court where a petition commencing the case was filed on July 11, 2025, by or
on behalf of Serenade Newport, LLC, in the Central U.S. District Court as Case No. 2025-11898**

3.   The Land referred to in this Report is described as follows:

    SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

CLTA Preliminary Report Form (02/03/2023)                                           Printed:  04.10.26 @ 08:29 AM
                                     Page 2           CA-CW-FXDB-03410.204099-SPS-1-26-LT1257806779

                                                                                   Exhibit "1"
                                                                                   Page 30

# EXHIBIT A
Legal Description

**For APN/Parcel ID(s):     050-282-16**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF NEWPORT BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

Lot 39 of Tract No. 1701, in the City of Newport Beach, County of Orange, State of California, as shown on a Map recorded in Book 52, Pages 9 and 10 of Miscellaneous Maps, in the Office of the County Recorder of said County.

EXCEPTING THEREFROM all oil, gas, casinghead gas, asphaltum and other hydrocarbons and all chemical gas now or hereafter found, situated or located in all or any part or portion of the land herein described lying more than 500 feet below the surface thereof, together with the right to slant drill for and remove all or any of said oil, gas, casinghead gas, asphaltum and other hydrocarbon, and chemical gas lying below a depth of more than 500 feet below the surface of but without any right whatsoever to enter upon the surface of said land or upon any land or upon any part or said lands within 500 feet vertical distance below the surface thereof, as reserved in the deed by The Irvine Company, recorded March 28, 1984 as Instrument No. 84-126815 of Official Records.

CLTA Preliminary Report Form (02/03/2023)                                                                      Printed:  04.10.26 @ 08:29 AM
Page 3                                        CA-CW-FXDB-03410.204099-SPS-1-26-LT1257806779

Exhibit "1"
Page 31

**LAWYERS TITLE COMPANY**                                                                    **PRELIM NO. LT1257806779**

### EXCEPTIONS

At the date hereof, items to be considered and exceptions to coverage in addition to the printed exceptions and exclusions in said policy form would be as follows:

1.    Property taxes, which are a lien not yet due and payable, including any assessments collected with taxes to be levied for the fiscal year 2026-2027.

2.    Property taxes, including any personal property taxes and any assessments collected with taxes, are as follows:

| | |
|---|---|
| Tax Identification No.: | 050-282-16 |
| Fiscal Year: | 2025-2026 |
| 1st Installment: | $31,889.95, Delinquent (Delinquent after December 10) |
| Penalty: | $3,188.99 |
| 2nd Installment: | $31,889.95, Open (Delinquent after April 10) |
| Penalty and Cost: | $3,211.99 |
| Homeowners Exemption: | $0.00 |
| Code Area: | 07-001 |
| Land: | $4,683,990.00 |
| Improvements: | $1,364,640.00 |
| Personal Property: | $0.00 |

3.    Supplemental assessment for 2025-2026:

| | |
|---|---|
| 1st Installment | $5,202.49, Delinquent |
| Must be Paid By: | December 10, 2025 |
| 2nd Installment: | $5,202.49, Open |
| Must be Paid By: | April 10, 2026 |
| Bill No.: | 0100 |
| Tracer No.: | None shown |

4.    The lien of supplemental or escaped assessments of property taxes, if any, made pursuant to the provisions of Chapter 3.5 (commencing with Section 75) or Part 2, Chapter 3, Articles 3 and 4, respectively, of the Revenue and Taxation Code of the State of California as a result of the transfer of title to the vestee named in Schedule A or as a result of changes in ownership or new construction occurring prior to Date of Policy.

5.    Water rights, claims or title to water, whether or not disclosed by the public records.

6.    Easement(s) for the purpose(s) shown below and rights incidental thereto, as delineated on or as offered for dedication on

| | |
|---|---|
| Map/Plat: | Tract No. 1701 |
| Recording No.: | In Book 52, Pages 9 and 10 of Maps |
| Purpose: | public utilities and incidental purposes |
| Affects: | The Southwesterly 5 feet of said land |

7.    Easement(s) for the purpose(s) shown below and rights incidental thereto, as granted in a document:

| | |
|---|---|
| Granted to: | Southern California Edison Company |
| Purpose: | public utilities and incidental purposes |
| Recording Date: | December 8, 1954 |
| Recording No.: | as instrument no. 103172, in Book 2891 Page 119 of Official Records |
| Affects: | The Southwesterly 10 feet of said land |

CLTA Preliminary Report Form (02/03/2023)                                                      Printed:  04.10.26 @ 08:29 AM
                                        Page 4                          CA-CW-FXDB-03410.204099-SPS-1-26-LT1257806779

                                                                                              Exhibit "1"
                                                                                              Page 32

**LAWYERS TITLE COMPANY**                                                      **PRELIM NO. LT1257806779**

8.      Easement(s) for the purpose(s) shown below and rights incidental thereto, as granted in a document:

Granted to:        The Pacific Telephone & Telegraph Company
Purpose:           public utilities and incidental purposes
Recording Date:    December 10, 1954
Recording No.:     as instrument no. 104221, in Book 2893 Page 473 of Official Records
Affects:           The Southwesterly 10 feet of said land

9.      Covenants, conditions and restrictions but omitting any covenants or restrictions, if any, including but not limited to those based upon age, race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, marital status, national origin, ancestry, familial status, source of income, disability, veteran or military status, genetic information, medical condition, citizenship, primary language, and immigration status, as set forth in applicable state or federal laws, except to the extent that said covenant or restriction is permitted by applicable law, as set forth in the document

Recording Date:    August 6, 1971
Recording No.:     as instrument no. 6341, in Book 9752 Page 373 of Official Records

Said covenants, conditions and restrictions provide that a violation thereof shall not defeat the lien of any mortgage or deed of trust made in good faith and for value.

10.     Declaration of covenants, conditions and restrictions but omitting any covenants or restrictions, if any, including but not limited to those based upon age, race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, marital status, national origin, ancestry, familial status, source of income, disability, veteran or military status, genetic information, medical condition, citizenship, primary language, and immigration status, as set forth in applicable state or federal laws, except to the extent that said covenant or restriction is permitted by applicable law, as set forth in the below document, which, among other things, may contain or provide for easements; assessments, liens and the subordination thereof; said covenants, conditions and restrictions provide that a violation thereof shall not defeat the lien of any mortgage or deed of trust made in good faith and for value:

Recording Date:    September 17, 1971
Recording No:      as instrument no. 14978, in Book 9808 Page 888 of Official Records

Modification(s) of said covenants, conditions and restrictions

Recording Date:    May 25, 1976
Recording No.:     as instrument no. 28142, in Book 11748 Page 1027 of Official Records

A document entitled "Declaration of Agreement and Appointment", recorded April 19, 2011 as instrument no. 2011-199768 of Official Records.

11.     Notice of assessment pursuant to the declaration shown herein.

Association:       Irvine Terrace Community Association
Recording Date:    June 11, 1981
Recording No:      as instrument no. 17764, in Book 14096 Page 1238 of Official Records

12.     Easement(s) for the purpose(s) shown below and rights incidental thereto as reserved in a document;

Reserved by:       The Irvine Company, a Michigan Corporation
Purpose:           Community Antenna Television System; landscaping and irrigation systems
Recording Date:    March 28, 1984
Recording No.:     as instrument no. 84-126815 of Official Records
Affects:           Common Area

13.     A homestead declaration

Executed by:       Edit Fintzi Ferder

CLTA Preliminary Report Form (02/03/2023)                                  Printed: 04.10.26 @ 08:29 AM
Page 5                          CA-CW-FXDB-03410.204099-SPS-1-26-LT1257806779

Exhibit "1"
Page 33

**LAWYERS TITLE COMPANY**                                                    **PRELIM NO. LT1257806779**

Recording Date:   June 16, 2025
Recording No.:    as instrument no. 2025-170904 of Official Records

14.    Intentionally deleted

15.    Intentionally Deleted.

16.    A deed of trust to secure an indebtedness in the amount shown below,

Amount:           $5,278,125.00
Dated:            June 17, 2025
Trustor/Grantor   Serenade Newport, LLC, a California Limited Liability Company
Trustee:          California TD Specialists
Beneficiary:      PPRF REIT, LLC, a California Limited Liability Company
Loan No.:         8159
Recording Date:   June 18, 2025
Recording No.:    as instrument no. 2025-174619 of Official Records

17.    A deed of trust to secure an indebtedness in the amount shown below,

Amount:           $500,000.00
Dated:            June 17, 2025
Trustor/Grantor   Serenade Newport, LLC, a California Limited Liability Company
Trustee:          California TD Specialists
Beneficiary:      Sitlani Holdings LLC, a California Limited Liability Company as to an undivided
200,000.00/500,000.00 interest; Mahesh Tilokani, a married man, as his sole and separate property as to an
undivided 300,000.00/500,000.00 interest
Loan No.:         8160
Recording Date:   June 18, 2025
Recording No.:    as instrument no. 2025-174620 of Official Records

This Company will require that the original note, the original deed of trust and a properly executed request for full reconveyance together with appropriate documentation (i.e., copy of trust, partnership agreement or corporate resolution) be in this office prior to the close of this transaction if the above-mentioned item is to be paid through this transaction or deleted from a policy of title insurance.

Any demands submitted to us for payoff must be signed by all beneficiaries as shown on said deed of trust, and/or any assignments thereto.  In the event said demand is submitted by an agent of the beneficiary(s), we will require the written approval of the demand by the beneficiary(s).  Servicing agreements do not constitute approval for the purposes of this requirement.

If no amounts remain due under the obligation a zero balance demand will be required along with the reconveyance documents.

In addition, we require the written approval of said demand by the trustor(s) on said deed of trust or the current owners if applicable.

18.    Intentionally deleted

       Intentionally deleted

19.    Intentionally Deleted.

       Intentionally Deleted.

---

CLTA Preliminary Report Form (02/03/2023)                                     Printed:  04.10.26 @ 08:29 AM
                                   Page 6                     CA-CW-FXDB-03410.204099-SPS-1-26-LT1257806779

Exhibit "1"
Page 34

**LAWYERS TITLE COMPANY**                                                          **PRELIM NO. LT1257806779**

20.    Matters which may be disclosed by an inspection and/or by a correct ALTA/ACSM Land Title Survey of said Land that is satisfactory to the Company, and/or by inquiry of the parties in possession thereof.

An inspection of said Land has been ordered; upon its completion the Company reserves the right to except additional items and/or make additional requirements.

21.    Any rights of the parties in possession of a portion of, or all of, said Land, which rights are not disclosed by the public records.

The Company will require, for review, a full and complete copy of any unrecorded agreement, contract, license and/or lease, together with all supplements, assignments and amendments thereto, before issuing any policy of title insurance without excepting this item from coverage.

The Company reserves the right to except additional items and/or make additional requirements after reviewing said documents.

22.    Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other matters which a correct survey would disclose and which are not shown by the public records.

23.    Any invalidity or defect in the title of the vestees in the event that the trust referred to herein is invalid or fails to grant sufficient powers to the trustee(s) or in the event there is a lack of compliance with the terms and provisions of the trust instrument.

If title is to be insured in the trustee(s) of a trust, (or if their act is to be insured), this Company will require a Trust Certification pursuant to California Probate Code Section 18100.5.

The Company reserves the right to add additional items or make further requirements after review of the requested documentation.


**END OF EXCEPTIONS**


**PLEASE REFER TO THE "INFORMATIONAL NOTES" AND "REQUIREMENTS" SECTIONS WHICH FOLLOW FOR INFORMATION NECESSARY TO COMPLETE THIS TRANSACTION.**

CLTA Preliminary Report Form (02/03/2023)                                     Printed:  04.10.26 @ 08:29 AM
                                        Page 7                          CA-CW-FXDB-03410.204099-SPS-1-26-LT1257806779

                                                                            Exhibit "1"
                                                                            Page 35

**LAWYERS TITLE COMPANY**                                                      **PRELIM NO. LT1257806779**

## REQUIREMENTS

1.    In order to complete this report, the Company requires a Statement of Information to be completed by the following party(ies),

Party(ies):  All Parties

The Company reserves the right to add additional items or make further requirements after review of the requested Statement of Information.

NOTE:  The Statement of Information is necessary to complete the search and examination of title under this order.  Any title search includes matters that are indexed by name only, and having a completed Statement of Information assists the Company in the elimination of certain matters which appear to involve the parties but in fact affect another party with the same or similar name.  Be assured that the Statement of Information is essential and will be kept strictly confidential to this file.

2.    The Company will require either (a) a complete copy of the trust agreement and any amendments thereto certified by the trustee(s) to be a true and complete copy with respect to the hereinafter named trust, or (b) a Certification, pursuant to California Probate Code Section 18100.5, executed by all of the current trustee(s) of the hereinafter named trust, a form of which is attached.

Name of Trust:           Haim Family Trust, u/d/t February 24, 2009

This Company will require a full copy of the trust agreement and any amendments thereto.

3.    The Company will require the following documents for review prior to the issuance of any title insurance predicated upon a conveyance or encumbrance from the entity named below.

Limited Liability Company:  Serenade Newport, LLC, a California Limited Liability Company

   a.   A copy of its operating agreement, if any, and any and all amendments, supplements and/or modifications thereto, certified by the appropriate manager or member.

   b.   If a domestic Limited Liability Company, a copy of its Articles of Organization and all amendment thereto with the appropriate filing stamps.

   c.   If the Limited Liability Company is  member-managed a full and complete current list of members certified by the appropriate manager or member.

   d.   A current dated certificate of good standing from the proper governmental authority of the state in which the entity was created

   e.   If less than all members, or managers, as appropriate, will be executing the closing documents, furnish evidence of the authority of those signing.

   f.   If Limited Liability Company is a Single Member Entity, a Statement of Information for the Single Member will be required.

   g.   Each member and manager of the LLC without an Operating Agreement must execute in the presence of a notary public the Certificate of California LLC (Without an Operating Agreement) Status and Authority form

4.    Satisfactory evidence must be furnished from the secretary or other duly qualified officer of the Association showing that all assessments and fees, including special assessments or payments due to others, such as master associations, are paid in full through the date of closing.

5.    **This transaction requires high liability approval prior to close of escrow together with an inspection of the subject property.**

CLTA Preliminary Report Form (02/03/2023)                                        Printed:  04.10.26 @ 08:29 AM
Page 8                    CA-CW-FXDB-03410.204099-SPS-1-26-LT1257806779

Exhibit "1"
Page 36

**LAWYERS TITLE COMPANY**                                              **PRELIM NO. LT1257806779**

**Please advise title department with an estimated date that your transaction will close so we can schedule the necessary approvals and inspections.**

**END OF REQUIREMENTS**

CLTA Preliminary Report Form (02/03/2023)                                    Printed: 04.10.26 @ 08:29 AM
Page 9                        CA-CW-FXDB-03410.204099-SPS-1-26-LT1257806779

Exhibit "1"
Page 37

**LAWYERS TITLE COMPANY**                                                    **PRELIM NO. LT1257806779**

## INFORMATIONAL NOTES

1.      The information on the attached plat is provided for your convenience as a guide to the general location of the subject property.  The accuracy of this plat is not guaranteed, nor is it a part of any policy, report or guarantee to which it may be attached.

2.      California insurance code section 12413.1 regulates the disbursement of escrow and sub-escrow funds by title companies. The law requires that funds be deposited in the title company escrow account and available for withdrawal prior to disbursement. Funds deposited with the company by wire transfer may be disbursed upon receipt. Funds deposited with the company via cashier's check or teller's check drawn on a California based bank may be disbursed on the next business day after the day of deposit. If funds are deposited with the company by other methods, recording and/or disbursement may be delayed.  All escrow and sub-escrow funds received by the company will be deposited with other escrow funds in one or more non-interest bearing escrow accounts of the company in a financial institution selected by the company. The company may receive certain direct or indirect benefits from the financial institution by reason of the deposit of such funds or the maintenance of such accounts with such financial institution, and the company shall have no obligation to account to the depositing party in any manner for the value of, or to pay to such party, any benefit received by the company. Those benefits may include, without limitation, credits allowed by such financial institution on loans to the company or its parent company and earnings on investments made with the proceeds of such loans,  accounting, reporting and other services and products of such financial institution. Such benefits shall be deemed additional compensation of the company for its services in connection with the escrow or sub-escrow.

        **For wiring Instructions please contact your Title Officer or Title Company Escrow officer.**

3.      Lawyers Title is a division of Commonwealth Land Title Insurance Company.  The insurer in policies of title insurance, when issued in this transaction, will be Commonwealth Land Title Insurance Company.

4.      Notice:  Please be aware that due to the conflict between federal and state laws concerning the cultivation, distribution, manufacture or sale of marijuana, the Company is not able to close or insure any transaction involving Land that is associated with these activities.

5.      Pursuant to Government Code Section 27388.1, as amended and effective as of 1-1-2018, a Documentary Transfer Tax (DTT) Affidavit may be required to be completed and submitted with each document when DTT is being paid or when an exemption is being claimed from paying the tax.  If a governmental agency is a party to the document, the form will not be required. DTT Affidavits may be available at a Tax Assessor-County Clerk-Recorder.

CLTA Preliminary Report Form (02/03/2023)                                      Printed:  04.10.26 @ 08:29 AM
                                Page 10                           CA-CW-FXDB-03410.204099-SPS-1-26-LT1257806779

                                                                               Exhibit "1"
                                                                               Page 38

**LAWYERS TITLE COMPANY**                                                      **PRELIM NO. LT1257806779**

6.   Note:  None of the items shown in this report will cause the Company to decline to attach CLTA Endorsement Form 100 to an ALTA Loan Policy, when issued.

Note:  The following information will be included in the CLTA Form 116 or ALTA Form 22-06 Endorsement to be issued pursuant to this order:

There is located on said Land:  a single family residence
Known as:  1501 Serenade Terrace (Corona Del Mar Area), Newport Beach, California

Note:  The Company requires current beneficiary demands prior to closing.  If the demand is expired and a current demand cannot be obtained, our requirements will be as follows:

a)   If the Company accepts a verbal update on the demand, we may hold an amount equal to one monthly mortgage payment.  This hold will be in addition to the verbal hold the lender may have stipulated.

b)   If the Company cannot obtain a verbal update on the demand, we will either pay off the expired demand or wait for the amended demand, at our discretion.

c)   All payoff figures are verified at closing.  If the customer's last payment was made within 15 days of closing, our Payoff Department may hold one month's payment to insure the check has cleared the bank (unless a copy of the cancelled check is provided, in which case there will be no hold).

7.   Note:  The only conveyance(s) affecting said Land, which recorded within 24 months of the date of this report, are as follows:

Grantor:            Mordechai H. Ferder and Edit F. Ferder, as Trustees of The Haim Family Trust, u/d/t February 24, 2009
Grantee:            Serenade Newport, LLC, a California Limited Liability Company
Recording Date:     June 18, 2025
Recording No.:      as instrument no. 2025-174618 of Official Records

8.   Note:  Association Assessments are periodically due from holders of title to said Land to the Homeowner's Association and transfer fees may be due whenever there is a transfer of title of any of the units.  In order to ascertain seller's/buyer's association assessments and transfer fee requirements prior to transfer of a unit, Escrow companies are requested to contact said Homeowner's Association.

9.   The Company is required by Federal law to collect additional information about certain transactions in specified geographic areas in accordance with the Bank Secrecy Act.  If this transaction is required to be reported under a Geographic Targeting Order issued by FinCEN, the Company must be supplied with a completed ALTA Information Collection Form ("ICF") prior to insuring the transaction contemplated herein.

**END OF INFORMATIONAL NOTES**

CLTA Preliminary Report Form (02/03/2023)                                         Printed:  04.10.26 @ 08:29 AM
Page 11                           CA-CW-FXDB-03410.204099-SPS-1-26-LT1257806779

Exhibit "1"
Page 39

**FIDELITY NATIONAL FINANCIAL**
**CALIFORNIA PRIVACY NOTICE**

Fidelity National Financial, Inc. and its majority-owned subsidiary companies (collectively, "FNF," "our," or "we") respect and are committed to protecting your privacy. This California Privacy Notice explains how we collect, use, and disclose Personal Information, when and to whom we disclose such information, and the rights you, as a California resident ("Consumer"), have regarding your Personal Information ("California Privacy Rights"). "Personal Information" means information that identifies, relates to, describes, and is reasonably capable of being associated with, or could reasonably be linked, directly or indirectly, with a particular consumer or household. If FNF has collected, used, or disclosed your Personal Information in relation to a job application or employment, independent contractor, officer, owner, or director relationship with FNF, FNF's practices are discussed in our Notice at Collection for Prospective Employees, available at **_Prospective California Employees_**.

Some subsidiaries maintain separate California Privacy Notices or privacy statements. If a subsidiary has a separate California Privacy Notice, it will be available on the subsidiary's website, and this California Privacy Notice does not apply.

**Collection of categories of Personal Information:**

In the preceding twelve (12) months FNF has collected, and will continue to collect, the following categories of Personal Information from you:

- Identifiers such as name, address, telephone number, IP address, email address, account name, social security number, driver's license number, state identification card, passport number, financial information, date of birth, or other similar identifiers;
- Characteristics of protected classifications under California or Federal law;
- Commercial information, including records of personal property, products or services purchased, or other purchasing or consuming histories;
- Internet or other electronic network activity information including, but not limited to browsing history on FNF websites and information regarding a Consumer's interaction with an FNF website;
- Geolocation data;
- Unique biometric data used to authenticate a specific individual such as a fingerprint, retina, or iris image;
- Professional or employment information;
- Education Information.

**This Personal Information is collected from the following sources:**

- Information we receive from you on applications or other forms;
- Information about your transactions with FNF, our affiliates, or others;
- Information we receive from consumer reporting agencies and/or governmental entities, either directly from these entities, or from internet service providers, data analytics providers, and social networks;
- Information from the use of our websites and mobile applications;
- Information we receive directly from you related to doing business with us.

**This Personal Information is collected for the following business purposes:**

- To provide products and services to you or in connection with a transaction involving you;
- To perform a contract between FNF and the Consumer;
- To improve our products and services;
- To comply with legal obligations;
- To detect and protect against fraudulent or illegal activity;

Copyright © 2026. Fidelity National Financial, Inc. All Rights Reserved.

- To communicate with you about FNF or our affiliates;
- To maintain an account with FNF or our affiliates;
- To maintain the security of our systems, tools, accounts, and applications;
- To verify and authenticate identities and credentials;
- To provide, support, personalize, and develop our websites, products, and services;
- To directly market our products to consumers;
- As described to you when collecting your Personal Information or as otherwise set forth in the California Consumer Privacy Act.

**Disclosures of Personal Information for a business purpose:**

In the preceding twelve (12) months FNF has disclosed, and will continue to disclose, the categories of Personal Information listed above for a business purpose.  We may disclose Personal Information for a business purpose to the following categories of third parties:

- FNF affiliates and subsidiaries;
- Non-affiliated third parties, with your prior consent;
- Businesses in connection with the sale or other disposition of all or part of the FNF business and/or assets;
- Service Providers and non-affiliated third parties such as data analytics providers;
- Law enforcement or authorities in connection with an investigation, or in response to a subpoena or court order.

**Sale of Personal Information:**

In the preceding twelve (12) months, FNF has not sold or shared Personal Information.  FNF does not sell or share Personal Information.

**Retention Periods:**

Due to the breadth and variety of data collected by FNF, it is not possible for us to provide you with a comprehensive list of timeframes during which we retain each category of Personal Information.  FNF retains categories of information as reasonably necessary to satisfy the purpose for which we collect the information.  This time period varies depending on the purpose for which we collected the information, the nature and frequency of our interactions and relationship with you, whether we have a legal basis to continue retaining the information, industry practices, the value and sensitivity of the information, and state and federal recordkeeping requirements.

**Personal Information of minors:**

FNF does not knowingly collect the Personal Information of minors.  FNF does not sell or share the information of consumers under sixteen (16) years of age.

**Sensitive Personal Information:**

FNF does not use or disclose sensitive Personal Information for any purposes other than those specified in the California Consumer Privacy Act.

**Right to know:**

Consumers have a right to know about Personal Information collected, used, disclosed, shared, or sold, including the categories of such Personal Information, as well as the purpose for such collection, use, disclosure, sharing, or selling, categories of third parties to whom Personal Information is disclosed, shared or sold, and the specific pieces of Personal Information collected about the consumer.  Consumers have the right to request FNF disclose what Personal Information it collected, used, and disclosed in the past twelve (12) months.

Copyright © 2026.  Fidelity National Financial, Inc.  All Rights Reserved.

Exhibit "1"
Page 41

**Right to request deletion:**

Consumers have a right to request the deletion of their Personal Information, subject to certain exceptions.

**Right to Correct:**

Consumers have the right to correct inaccurate Personal Information.

**Right to non-discrimination:**

Consumers have a right not to be discriminated against because of exercising their consumer privacy rights.  We will not discriminate against Consumers for exercising any of their California Privacy Rights.

**Privacy Requests:**

**To exercise any of your California Privacy Rights, or if acting as an authorized agent on behalf of another individual, please visit *California Privacy Request* (FNF.com/California-privacy), call us Toll Free at 888-413-1748, or write to the address at the end of this notice.**

Upon making a California Privacy Request, FNF will verify the consumer's identity by requiring an account, loan, escrow number, or other identifying information from the consumer.

The above-rights are subject to any applicable rights and obligations including both Federal and California exemptions rendering FNF, or Personal Information collected by FNF, exempt from certain CCPA requirements.

A Consumer may use an Authorized Agent to submit any CCPA request.  Authorized agents' requests will be processed like any other CCPA request, but FNF will also require the Consumer provide the agent written permission to make the request and verify his or her identity with FNF.

**FNF website services for mortgage loans:**

Certain FNF companies provide services to mortgage loan servicers, including hosting websites that collect customer information on behalf of mortgage loan servicers (the "Service Websites").  The Service Websites may contain links to both this Privacy Notice and the mortgage loan servicer or lender's privacy notice.  The sections of this Privacy Notice describing the categories, sources, and uses of your Personal Information do not apply to the Service Websites.  The mortgage loan servicer or lender's privacy notice governs use, disclosure, and access to your Information.  FNF does not share Information collected through the Service Websites, except (1) as required or authorized by contract with the mortgage loan servicer or lender, or (2) as required by law or in the good-faith belief that such disclosure is necessary to comply with a legal process or applicable law, to enforce this Privacy Notice, or to protect the rights, property, or safety of FNF or the public.

**California Privacy Notice - Effective Date:**

This California Privacy Notice was last updated on January 1, 2026.

**Contact for more information:**

For questions or concerns about FNF's California Privacy Notice and privacy practices, or to exercise any of your California Privacy Rights, please visit *California Privacy (FNF.com/California-privacy)*, call Toll Free 888-413-1748, or contact us by mail at the below address.

Fidelity National Financial, Inc.
601 Riverside Avenue
Jacksonville, Florida 32204
Attn:  Chief Privacy Officer

Copyright © 2026.  Fidelity National Financial, Inc.  All Rights Reserved.

# Notice of Available Discounts

Pursuant to Section 2355.3 in Title 10 of the California Code of Regulations Fidelity National Financial, Inc. and its subsidiaries ("FNF") must deliver a notice of each discount available under our current rate filing along with the delivery of escrow instructions, a preliminary report or commitment.  Please be aware that the provision of this notice does not constitute a waiver of the consumer's right to be charged the filed rate.  As such, your transaction may not qualify for the below discounts.

You are encouraged to discuss the applicability of one or more of the below discounts with a Company representative.  These discounts are generally described below; consult the rate manual for a full description of the terms, conditions and requirements for such discount.  These discounts only apply to transactions involving services rendered by the FNF Family of Companies.  This notice only applies to transactions involving property improved with a one-to-four family residential dwelling.

Not all discounts are offered by every FNF Company.  The discount will only be applicable to the FNF Company as indicated by the named discount.

**FNF Underwritten Title Companies**
CTC - Chicago Title Company
CLTC - Commonwealth Land Title Company
FNTC - Fidelity National Title Company
FNTCCA - Fidelity National Title Company of California
TICOR - Ticor Title Company of California
LTC - Lawyer's Title Company
SLTC - ServiceLink Title Company

**Underwritten by FNF Underwriters**
CTIC - Chicago Title Insurance Company
CLTIC - Commonwealth Land Title Insurance Co.
FNTIC - Fidelity National Title Insurance Co.
NTINY - National Title Insurance of New York

**Available Discounts**

**CHURCHES OR CHARITABLE NON-PROFIT ORGANIZATIONS (CTIC, CLTIC, FNTIC, NTINY)**
On properties used as a church or for charitable purposes within the scope of the normal activities of such entities, provided said charge is normally the church's obligation the charge for an owner's policy shall be fifty percent (50%) to seventy percent (70%) of the appropriate title insurance rate, depending on the type of coverage selected.  The charge for a lender's policy shall be forty percent (40%) to fifty percent (50%) of the appropriate title insurance rate, depending on the type of coverage selected.

**DISASTER AREA TRANSACTIONS (CTIC, CLTIC, FNTIC, NTINY)**
This rate is available for individuals or entities that were victims of a national or state disaster.  The rate can be used for a Lender's Policy (Standard or Extended), or an Owner's Policy (Standard or Homeowners coverage).  To qualify for this rate, the applicant must, prior to the closing of the applicable transaction, make a written request, including a statement meeting the following criteria:

A.  The subject property is in a disaster area declared by the government of the United States or the State of California.

B.  The subject property was substantially or totally destroyed in the declared disaster.

C.  The subject property ownership has not changed since the time of the disaster.

The rate will be fifty percent (50%) of the applicable rate, and the transaction must be completed within sixty (60) months of the date of the declaration of the disaster.

Notice of Available Discounts
SCA0002598.doc / Updated:  12.13.24

Printed:  04.10.26 @ 08:29 AM by
CA-CW-FXDB-03410.204099-LT1257806779

Exhibit "1"
Page 43

# Notice of Available Discounts
(continued)

**DISASTER AREA ESCROWS (CTC, CLTC, FNTC, TICOR, LTC)**
This rate is available for individuals or entities that were victims of a national or state disaster. The rate can be used for a loan or a sale escrow transaction. To qualify for this rate, the applicant must, prior to the closing of the applicable transaction, make a written request, including a statement meeting the following criteria:

A.  The subject property is in a disaster area declared by the government of the United States or the State of California.

B.  The subject property was substantially or totally destroyed in the declared disaster.

C.  The subject property ownership has not changed since the time of the disaster.

The rate will be fifty percent (50%) of the applicable rate, and the transaction must be completed within sixty (60) months of the date of the declaration of the disaster. Standard minimum charge applies based upon property type. No other discounts or special rates, or combination of discounts or special rates, shall be applicable. Applies to a single transaction per property.

This rate is applicable to the following Zones/Counties:
Zone 1.A:  Orange County
Zone 1.B:  Riverside and San Bernardino Counties
Zone 2:  Los Angeles County
Zone 3:  Ventura County
Zone 10:  San Diego County
Zone 12:  Imperial County

If used for a sale transaction, the application of this rate assumes the charge for the Residential Sale Escrow Services (RSES) fee will be split evenly between buyer and seller. As such and regardless of how the calculated applicable RSES will be split between the disaster victim and the other principal, the rate will be applied only to one half (1/2) of the calculated applicable RSES fee, regardless of whether the disaster victim is paying half (1/2) of the RSES fee (as is customary) or paying the entire fee. The rate under this provision will be fifty percent (50%) of disaster victims' one half (1/2) portion only and shall not apply to any portion paid by non-disaster victim. Additional services will be charged at the normal rates.

**MILITARY DISCOUNT RATE (CTIC, CLTIC, FNTIC)**
Upon the Company being advised in writing and prior to the closing of the transaction that an active duty, honorably separated, or retired member of the United States Military or Military Reserves or National Guard is acquiring or selling an owner occupied one-to-four family property, the selling owner or acquiring buyer, as applicable, will be entitled to a discount equal to fifteen percent (15%) of the otherwise applicable rates such party would be charged for title insurance policies. Minimum charge: Four Hundred Twenty-Five And No/100 Dollars ($425.00)

The Company may require proof of eligibility from the parties to the transaction verifying they are entitled to the discount as described. No other discounts or special rates, or combination of discounts or special rates, shall be applicable.

Notice of Available Discounts
SCA0002598.doc / Updated:  12.13.24

Printed:  04.10.26 @ 08:29 AM by
CA-CW-FXDB-03410.204099-LT1257806779

Exhibit "1"
Page 44

**WIRE SAFE™** | Inquire before you wire!

# WIRE FRAUD ALERT

This Notice is not intended to provide legal or professional advice.
If you have any questions, please consult with a lawyer.

All parties to a real estate transaction are targets for wire fraud and many have lost hundreds of thousands of dollars because they simply relied on the wire instructions received via email, without further verification. **If funds are to be wired in conjunction with this real estate transaction, we strongly recommend verbal verification of wire instructions through a known, trusted phone number prior to sending funds.**

In addition, the following non-exclusive self-protection strategies are recommended to minimize exposure to possible wire fraud.

- **NEVER RELY** on emails purporting to change wire instructions.  Parties to a transaction rarely change wire instructions in the course of a transaction.

- **ALWAYS VERIFY** wire instructions, specifically the ABA routing number and account number, by calling the party who sent the instructions to you.  DO NOT use the phone number provided in the email containing the instructions, use phone numbers you have called before or can otherwise verify.  **Obtain the number of relevant parties to the transaction as soon as an escrow account is opened.**  DO NOT send an email to verify as the email address may be incorrect or the email may be intercepted by the fraudster.

- **USE COMPLEX EMAIL PASSWORDS** that employ a combination of mixed case, numbers, and symbols.  Make your passwords greater than eight (8) characters.  Also, change your password often and do NOT reuse the same password for other online accounts.

- **USE MULTI-FACTOR AUTHENTICATION** for email accounts.  Your email provider or IT staff may have specific instructions on how to implement this feature.

For more information on wire-fraud scams or to report an incident, please refer to the following links:

|  |  |
|---|---|
| *Federal Bureau of Investigation:* | *Internet Crime Complaint Center:* |
| *http://www.fbi.gov* | *http://www.ic3.gov* |

Wire Fraud Alert                                                                                                          Page 1
Original Effective Date:  5/11/2017
Current Version Date:  5/11/2017                                                                            LT1257806779
*TM and © Fidelity National Financial, Inc. and/or an affiliate.  All rights reserved*

Exhibit "1"
Page 45

# ATTACHMENT ONE

**CALIFORNIA LAND TITLE ASSOCIATION
STANDARD COVERAGE POLICY - 1990 (11-09-18)**

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1.  (a)  Any law, ordinance or governmental regulation (including but not limited to building or zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien, or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

    (b)  Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2.  Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3.  Defects, liens, encumbrances, adverse claims or other matters:

    (a)  whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant;

    (b)  not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;

    (c)  resulting in no loss or damage to the insured claimant;

    (d)  attaching or created subsequent to Date of Policy; or

    (e)  resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage or for the estate or interest insured by this policy.

4.  Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with the applicable doing business laws of the state in which the land is situated.

5.  Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6.  Any claim, which arises out of the transaction vesting in the insured the estate or interest insured by this policy or the transaction creating the interest of the insured lender, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws.

## EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART I

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1.  Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.

    Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.

2.  Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.

3.  Easements, liens or encumbrances, or claims thereof, not shown by the public records.

4.  Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.

5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.

6.  Any lien or right to a lien for services, labor or material unless such lien is shown by the public records at Date of Policy.

## EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART II

*(Variable exceptions such as taxes, easements, CC&R's, etc., are inserted here)*

## ATTACHMENT ONE
### (CONTINUED)

### CALIFORNIA LAND TITLE ASSOCIATION
### STANDARD COVERAGE OWNER'S POLICY (02-04-22)
### EXCLUSIONS FROM COVERAGE

The following matters are excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.  a.  any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) that restricts, regulates, prohibits, or relates to:
        i.   the occupancy, use, or enjoyment of the Land;
        ii.  the character, dimensions, or location of any improvement on the Land;
        iii. the subdivision of land; or
        iv.  environmental remediation or protection.
    b.  any governmental forfeiture, police, regulatory, or national security power.
    c.  the effect of a violation or enforcement of any matter excluded under Exclusion 1.a. or 1.b.
    Exclusion 1 does not modify or limit the coverage provided under Covered Risk 5 or 6.
2.  Any power of eminent domain. Exclusion 2 does not modify or limit the coverage provided under Covered Risk 7.
3.  Any defect, lien, encumbrance, adverse claim, or other matter:
    a.  created, suffered, assumed, or agreed to by the Insured Claimant;
    b.  not Known to the Company, not recorded in the Public Records at the Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
    c.  resulting in no loss or damage to the Insured Claimant;
    d.  attaching or created subsequent to the Date of Policy (Exclusion 3.d. does not modify or limit the coverage provided under Covered Risk 9 or 10); or
    e.  resulting in loss or damage that would not have been sustained if consideration sufficient to qualify the Insured named in Schedule A as a bona fide purchaser had been given for the Title at the Date of Policy.
4.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights law, that the transaction vesting the Title as shown in Schedule A is a:
    a.  fraudulent conveyance or fraudulent transfer;
    b.  voidable transfer under the Uniform Voidable Transactions Act; or
    c.  preferential transfer:
        i.   to the extent the instrument of transfer vesting the Title as shown in Schedule A is not a transfer made as a contemporaneous exchange for new value; or
        ii.  for any other reason not stated in Covered Risk 9.b.
5.  Any claim of a PACA-PSA Trust. Exclusion 5 does not modify or limit the coverage provided under Covered Risk 8.
6.  Any lien on the Title for real estate taxes or assessments imposed or collected by a governmental authority that becomes due and payable after the Date of Policy.
    Exclusion 6 does not modify or limit the coverage provided under Covered Risk 2.b.
7   Any discrepancy in the quantity of the area, square footage, or acreage of the Land or of any improvement to the Land.

### EXCEPTIONS FROM COVERAGE

**Some historical land records contain Discriminatory Covenants that are illegal and unenforceable by law.  This policy treats any Discriminatory Covenant in a document referenced in Schedule B as if each Discriminatory Covenant is redacted, repudiated, removed, and not republished or recirculated. Only the remaining provisions of the document are excepted from coverage.**

This policy does not insure against loss or damage and the Company will not pay costs, attorneys' fees, or expenses resulting from the terms and conditions of any lease or easement identified in Schedule A, and the following matters:

### PART I

1.  (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2.  Any facts, rights, interests, or claims that are not shown by the Public Records at Date of Policy but that could be (a) ascertained by an inspection of the Land, or (b) asserted by persons or parties in possession of the Land.
3.  Easements, liens or encumbrances, or claims thereof, not shown by the Public Records at Date of Policy.
4.  Any encroachment, encumbrance, violation, variation, easement, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records at Date of Policy.
5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6.  Any lien or right to a lien for services, labor, material or equipment unless such lien is shown by the Public Records at Date of Policy.
7.  Any claim to (a) ownership of or rights to minerals and similar substances, including but not limited to ores, metals, coal, lignite, oil, gas, uranium, clay, rock, sand, and gravel located in, on, or under the Land or produced from the Land, whether such ownership or rights arise by lease, grant, exception, conveyance, reservation, or otherwise; and (b) any rights, privileges, immunities, rights of way, and easements associated therewith or appurtenant thereto, whether or not the interests or rights excepted in (a) or (b) appear in the Public Records or are shown in Schedule B.

### PART II

*(Variable exceptions such as taxes, easements, CC&R's, etc., are inserted here)*

## ATTACHMENT ONE
### (CONTINUED)

## CLTA/ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE (7-01-21)
### EXCLUSIONS FROM COVERAGE

The following matters are excluded from the coverage of this policy and We will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. a. any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) that restricts, regulates, prohibits, or relates to:
    i. the occupancy, use, or enjoyment of the Land;
    ii. the character, dimensions, or location of any improvement on the Land;
    iii. the subdivision of land; or
    iv. environmental remediation or protection.
   b. any governmental forfeiture, police, or regulatory, or national security power.
   c. the effect of a violation or enforcement of any matter excluded under Exclusion 1.a. or 1.b.
   Exclusion 1 does not modify or limit the coverage provided under Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23, or 27.
2. Any power to take the Land by condemnation.  Exclusion 2 does not modify or limit the coverage provided under Covered Risk 17.
3. Any defect, lien, encumbrance, adverse claim, or other matter:
   a. created, suffered, assumed, or agreed to by You;
   b. not Known to Us, not recorded in the Public Records at the Date of Policy, but Known to You and not disclosed in writing to Us by You prior to the date You became an Insured under this policy;
   c. resulting in no loss or damage to You;
   d. attaching or created subsequent to the Date of Policy (Exclusion 3.d. does not modify or limit the coverage provided under Covered Risk 5, 8.f., 25, 26, 27, 28, or 32); or
   e. resulting in loss or damage that would not have been sustained if You paid consideration sufficient to qualify You as a bona fide purchaser of the Title at the Date of Policy.
4. Lack of a right:
   a. to any land outside the area specifically described and referred to in Item 3 of Schedule A; and
   b. in any street, road, avenue, alley, lane, right-of-way, body of water, or waterway that abut the Land.
   Exclusion 4 does not modify or limit the coverage provided under Covered Risk 11 or 21.
5. The failure of Your existing structures, or any portion of Your existing structures, to have been constructed before, on, or after the Date of Policy in accordance with applicable building codes. Exclusion 5 does not modify or limit the coverage provided under Covered Risk 14 or 15.
6. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights law, that the transfer of the Title to You is a:
   a. fraudulent conveyance or fraudulent transfer;
   b. voidable transfer under the Uniform Voidable Transactions Act; or
   c. preferential transfer:
    i. to the extent the instrument of transfer vesting the Title as shown in Schedule A is not a transfer made as a contemporaneous exchange for new value; or
    ii. for any other reason not stated in Covered Risk 30.
7. Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.
8. Negligence by a person or an entity exercising a right to extract or develop oil, gas, minerals, groundwater, or any other subsurface substance.
9. Any lien on Your Title for real estate taxes or assessments, imposed or collected by a governmental authority that becomes due and payable after the Date of Policy.  Exclusion 9 does not modify or limit the coverage provided under Covered Risk 8.a or 27.
10. Any discrepancy in the quantity of the area, square footage, or acreage of the Land or of any improvement to the Land.

### LIMITATIONS ON COVERED RISKS

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:

- For Covered Risk 16, 18, 19 and 21 Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.

The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

|  | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 16: | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $ 10,000.00 |
| Covered Risk 18: | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $ 25,000.00 |
| Covered Risk 19: | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $ 25,000.00 |
| Covered Risk 21: | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $ 5,000.00 |

## ATTACHMENT ONE
### (CONTINUED)

### CLTA/ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE (12-02-13)
### EXCLUSIONS

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:

1.  Governmental police power, and the existence or violation of those portions of any law or government regulation concerning:
    a.  building;
    b.  zoning;
    c.  land use;
    d.  improvements on the Land;
    e.  land division; and
    f.  environmental protection.
    This Exclusion does not limit the coverage described in Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23 or 27.
2.  The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes. This Exclusion does not limit the coverage described in Covered Risk 14 or 15.
3.  The right to take the Land by condemning it. This Exclusion does not limit the coverage described in Covered Risk 17.
4.  Risks:
    a.  that are created, allowed, or agreed to by You, whether or not they are recorded in the Public Records;
    b.  that are Known to You at the Policy Date, but not to Us, unless they are recorded in the Public Records at the Policy Date;
    c.  that result in no loss to You; or
    d.  that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8.e., 25, 26, 27 or 28.
5.  Failure to pay value for Your Title.
6.  Lack of a right:
    a.  to any land outside the area specifically described and referred to in paragraph 3 of Schedule A; and
    b.  in streets, alleys, or waterways that touch the Land.
    This Exclusion does not limit the coverage described in Covered Risk 11 or 21.
7.  The transfer of the Title to You is invalid as a preferential transfer or as a fraudulent transfer or conveyance under federal bankruptcy, state insolvency, or similar creditors' rights laws.
8.  Contamination, explosion, fire, flooding, vibration, fracturing, earthquake or subsidence.
9.  Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.

### LIMITATIONS ON COVERED RISKS

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:

- For Covered Risk 16, 18, 19 and 21, Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.

The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

|  | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 16: | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $ 10,000.00 |
| Covered Risk 18: | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $ 25,000.00 |
| Covered Risk 19: | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $ 25,000.00 |
| Covered Risk 21: | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $  5,000.00 |

## ATTACHMENT ONE
### (CONTINUED)

### ALTA OWNER'S POLICY (07-01-2021)
### EXCLUSIONS FROM COVERAGE

The following matters are excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.  a.  any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) that restricts, regulates, prohibits, or relates to:
        i.   the occupancy, use, or enjoyment of the Land;
        ii.  the character, dimensions, or location of any improvement on the Land;
        iii. the subdivision of land; or
        iv.  environmental remediation or protection.
    b.  any governmental forfeiture, police, regulatory, or national security power.
    c.  the effect of a violation or enforcement of any matter excluded under Exclusion 1.a. or 1.b.
    Exclusion 1 does not modify or limit the coverage provided under Covered Risk 5 or 6.
2.  Any power of eminent domain. Exclusion 2 does not modify or limit the coverage provided under Covered Risk 7.
3.  Any defect, lien, encumbrance, adverse claim, or other matter:
    a.  created, suffered, assumed, or agreed to by the Insured Claimant;
    b.  not Known to the Company, not recorded in the Public Records at the Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
    c.  resulting in no loss or damage to the Insured Claimant;
    d.  attaching or created subsequent to the Date of Policy (Exclusion 3.d. does not modify or limit the coverage provided under Covered Risk 9 or 10); or
    e.  resulting in loss or damage that would not have been sustained if consideration sufficient to qualify the Insured named in Schedule A as a bona fide purchaser had been given for the Title at the Date of Policy.
4.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights law, that the transaction vesting the Title as shown in Schedule A is a:
    a.  fraudulent conveyance or fraudulent transfer;
    b.  voidable transfer under the Uniform Voidable Transactions Act; or
    c.  preferential transfer:
        i.   to the extent the instrument of transfer vesting the Title as shown in Schedule A is not a transfer made as a contemporaneous exchange for new value; or
        ii.  for any other reason not stated in Covered Risk 9.b.
5.  Any claim of a PACA-PSA Trust. Exclusion 5 does not modify or limit the coverage provided under Covered Risk 8.
6.  Any lien on the Title for real estate taxes or assessments, imposed or collected by a governmental authority that becomes due and payable after the Date of Policy. Exclusion 6 does not modify or limit the coverage provided under Covered Risk 2.b.
7.  Any discrepancy in the quantity of the area, square footage, or acreage of the Land or of any improvement to the Land.

### EXCEPTIONS FROM COVERAGE

**Some historical land records contain Discriminatory Covenants that are illegal and unenforceable by law. This policy treats any Discriminatory Covenant in a document referenced in Schedule B as if each Discriminatory Covenant is redacted, repudiated, removed, and not republished or recirculated. Only the remaining provisions of the document are excepted from coverage.**

This policy does not insure against loss or damage and the Company will not pay costs, attorneys' fees, or expenses resulting from the terms and conditions of any lease or easement identified in Schedule A, and the following matters:

*NOTE: The 2021 ALTA Owner's Policy may be issued to afford either Standard Coverage or Extended Coverage. In addition to variable exceptions such as taxes, easements, CC&R's, etc., the Exceptions from Coverage in a Standard Coverage policy will also include the Western Regional Standard Coverage Exceptions listed as 1 through 7 below:*

1.  (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2.  Any facts, rights, interests, or claims that are not shown by the Public Records at Date of Policy but that could be (a) ascertained by an inspection of the Land or (b) asserted by persons or parties in possession of the Land.
3.  Easements, liens or encumbrances, or claims thereof, not shown by the Public Records at Date of Policy.
4.  Any encroachment, encumbrance, violation, variation, easement, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records at Date of Policy.
5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6.  Any lien or right to a lien for services, labor, material or equipment unless such lien is shown by the Public Records at Date of Policy.
7.  Any claim to (a) ownership of or rights to minerals and similar substances, including but not limited to ores, metals, coal, lignite, oil, gas, uranium, clay, rock, sand, and gravel located in, on, or under the Land or produced from the Land, whether such ownership or rights arise by lease, grant, exception, conveyance, reservation, or otherwise; and (b) any rights, privileges, immunities, rights of way, and easements associated therewith or appurtenant thereto, whether or not the interests or rights excepted in (a) or (b) appear in the Public Records or are shown in Schedule B.

## ATTACHMENT ONE
### (CONTINUED)

### 2006 ALTA OWNER'S POLICY (06-17-06)

### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

   (i) the occupancy, use, or enjoyment of the Land;

   (ii) the character, dimensions, or location of any improvement erected on the Land;

   (iii) the subdivision of land; or

   (iv) environmental protection;

   or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.

   (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3. Defects, liens, encumbrances, adverse claims, or other matters

   (a) created, suffered, assumed, or agreed to by the Insured Claimant;

   (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;

   (c) resulting in no loss or damage to the Insured Claimant;

   (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or

   (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.

4. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is

   (a) a fraudulent conveyance or fraudulent transfer; or

   (b) a preferential transfer for any reason not stated in Covered Risk 9 of this policy.

5. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

### EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees, or expenses that arise by reason of:

*NOTE: The 2006 ALTA Owner's Policy may be issued to afford either Standard Coverage or Extended Coverage. In addition to variable exceptions such as taxes, easements, CC&R's, etc., the Exceptions from Coverage in a Standard Coverage policy will also include the Western Regional Standard Coverage Exceptions listed below as 1 through 7 below:*

1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2. Any facts, rights, interests, or claims that are not shown by the Public Records at Date of Policy but that could be (a) ascertained by an inspection of the Land, or (b) asserted by persons or parties in possession of the Land.

3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records at Date of Policy.

4. Any encroachment, encumbrance, violation, variation, easement, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records at Date of Policy.

5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.

6. Any lien or right to a lien for services, labor, material or equipment unless such lien is shown by the Public Records at Date of Policy.]

7. Any claim to (a) ownership of or rights to minerals and similar substances, including but not limited to ores, metals, coal, lignite, oil, gas, uranium, clay, rock, sand, and gravel located in, on, or under the Land or produced from the Land, whether such ownership or rights arise by lease, grant, exception, conveyance, reservation, or otherwise; and (b) any rights, privileges, immunities, rights of way, and easements associated therewith or appurtenant thereto, whether or not the interests or rights excepted in (a) or (b) appear in the Public Records or are shown in Schedule B.

RECORDING REQUESTED BY

Lawyers Title Company

WHEN RECORDED MAIL TO:

ORDER NO.:  LT1257806779

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## CERTIFICATION OF TRUST
## California Probate Code Section 18100.5

The undersigned declare(s) under penalty of perjury under the laws of the State of California that the following is true and correct:

1.  The Trust known as _____ ,
    executed on _____ , is a valid and existing trust.

2.  The name(s) of the settlor(s) of the Trust is (are): _____

    _____

3.  The name(s) of the currently acting trustee(s) is (are): _____

    _____

4.  The trustee(s) of the Trust have the following powers (initial applicable line(s)):

    _____ Power to acquire additional property.

    _____ Power to sell and execute deeds.

    _____ Power to encumber, and execute deeds of trust.

    _____ Other: _____

5.  The Trust is (check one):  ☐ Revocable  ☐ Irrevocable

    The name of the person who may revoke the Trust is: _____

6.  The number of trustees who must sign documents in order to exercise the powers of the Trust is (are):_____ ,
    whose name(s) is (are): _____

7.  Title to Trust assets is to be taken as follows: _____

8.  The Trust has not been revoked, modified or amended in any manner which would cause the representations contained herein to be incorrect.

9.  I (We) am (are) all of the currently acting trustees.

10. I (We) understand that I (we) may be required to provide copies of excerpts from the original Trust documents which designate the trustees and confer the power to act in the pending transaction.

Trust Certification
SCA0002940.doc / Updated:  03.06.23          Page 1          Printed:  04.10.26 @ 08:29 AM by
CA-CW-FXDB-03410.204099-LT1257806779

Exhibit "1"
Page 52

IN WITNESS WHEREOF, the undersigned have executed this document on the date(s) set forth below.

_____
Print Trust Name

_____
Signature

By: _____
Print Name

Its: _____
Print Title

_____
Signature

By: _____
Print Name

Its: _____
Print Title

(Acknowledgement must be attached)

Trust Certification                                                                                   Printed:  04.10.26 @ 08:29 AM by
SCA0002940.doc / Updated:  03.06.23                          Page 2                          CA-CW-FXDB-03410.204099-LT1257806779

Exhibit "1"
Page 53

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of _____

County of _____

On _____ before me, _____, Notary Public,
(here insert name and title of the officer)

personally appeared _____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Signature

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of _____

County of _____

On _____ before me, _____, Notary Public,
(here insert name and title of the officer)

personally appeared _____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Signature

Trust Certification
SCA0002940.doc / Updated:  03.06.23                    Page 3                    Printed:  04.10.26 @ 08:29 AM by
CA-CW-FXDB-03410.204099-LT1257806779

Exhibit "1"
Page 54



# ALTA INFORMATION COLLECTION FORM

Under 31 U.S.C. § 5326(a), the Treasury Department's Financial Crimes Enforcement Network (FinCEN) issued a Geographic Targeting Order to title insurance companies requiring the collection of beneficial ownership information for certain real estate transactions.

Please complete the below questionnaire.  This Company will rely on the answers provided to meet its reporting obligations.

## Who is completing this form?

| Name | Position/Title | Company/Law Firm | |
|---|---|---|---|
| Postal Address (Headquarters) | City | State | Zip |
| Phone | Email | Fax | |

## Transactional Information

| Property Address *(If multiple properties see NOTE below):* | | | | |
|---|---|---|---|---|
| City | | State | Zip | County |
| Date of Settlement | Total purchase price *(If multiple properties see NOTE below)* $ | | | |
| Type of Transaction:  ☐ Residential (1-4 family)    ☐ Commercial | | Bank Financing:  ☐ Yes  ☐ No | | |
| Purchaser type:  ☐ Natural Person    ☐ Corporation    ☐ LLC    ☐ Partnership    ☐ Other | | | | |

**NOTE**: *If more than one property is purchased, list each address and purchase price on an addendum.*

## Purchase Funds Information

| Total Amount paid by below instruments:  $ | |
|---|---|
| Which type of Monetary Instruments were used *(Use check boxes below)* | |
| ☐ U.S. Currency (Paper money and coin) | |
| ☐ Foreign Currency | Country: |
| ☐ Cashier's check(s) | ☐ Money order(s) |
| ☐ Certified check(s) | ☐ Personal or Business check(s) |
| ☐ Wire or other funds transfer(s) | ☐ Virtual Currency |

ALTA Information Collection Form (Rev. 12/2018)
SSCORPD5620.doc / Updated:  01.03.19

Page 1

Printed:  04.10.26 @ 08:29 AM by
CA-CW-FXDB-03410.204099-LT1257806779

Exhibit "1"
Page 55



# ALTA INFORMATION COLLECTION FORM

**Individual Primarily Representing Purchaser**

*(Defined as the individual authorized by the entity to enter into legally binding contracts.)*

| Attach Legible copy of government issued identification (i.e. passport, driver's license, etc.) | | | |
|---|---|---|---|
| Type of ID | Issuing State or Country | Gov't ID No. | |
| Last Name | First Name | | M.I. |
| Date of Birth / Occupation | Individual Taxpayer ID No. *(if none write N/A)* | % of ownership | |
| Address | City | State | Zip |

**Purchaser's Name and Address**

| Name of Purchaser | | | |
|---|---|---|---|
| Taxpayer ID No. or EIN *(if none write N/A)* | Doing Business Name (DBA) *(If none write N/A)* | | |
| Address | City | State | Zip |

***Complete the following pages if the real estate purchase is being made by a corporation, LLC, partnership, or other legal entity.  (Do not report trusts.)***

***For Corporations, LLCs, Partnerships and Other Entities provide the information for:***

- Each **BENEFICIAL OWNER** defined as an individual who, directly or indirectly, owns Twenty-Five Percent (25%) or more of the equity interests of the Purchaser.

- If a legal entity or a series of legal entities own the equity interests of the Purchaser, provide information for each **BENEFICIAL OWNER**, of each legal entity in the series of legal entities.

**(Note:  It is NOT necessary to complete the address fields if the information is on a legible copy of the government issued ID submitted to the title underwriter.)**

ALTA Information Collection Form (Rev. 12/2018)
SSCORPD5620.doc / Updated:  01.03.19                    Page 2                    Printed:  04.10.26 @ 08:29 AM by
CA-CW-FXDB-03410.204099-LT1257806779

Exhibit "1"
Page 56



# ALTA INFORMATION COLLECTION FORM

| Attach Legible copy of government issued identification (i.e. passport, driver's license, etc.) | | | | |
|---|---|---|---|---|
| Type of ID | | Issuing State or Country | Gov't ID No. | |
| Last Name | | First Name | | M.I. |
| Date of Birth | Occupation | Individual Taxpayer ID No. *(if none write N/A)* | % of ownership | |
| Address | | City | State | Zip |

| Attach Legible copy of government issued identification (i.e. passport, driver's license, etc.) | | | | |
|---|---|---|---|---|
| Type of ID | | Issuing State or Country | Gov't ID No. | |
| Last Name | | First Name | | M.I. |
| Date of Birth | Occupation | Individual Taxpayer ID No. *(if none write N/A)* | % of ownership | |
| Address | | City | State | Zip |

| Attach Legible copy of government issued identification (i.e. passport, driver's license, etc.) | | | | |
|---|---|---|---|---|
| Type of ID | | Issuing State or Country | Gov't ID No. | |
| Last Name | | First Name | | M.I. |
| Date of Birth | Occupation | Individual Taxpayer ID No. *(if none write N/A)* | % of ownership | |
| Address | | City | State | Zip |

ALTA Information Collection Form (Rev. 12/2018)
SSCORPD5620.doc / Updated:  01.03.19                                    Page 3

Printed:  04.10.26 @ 08:29 AM by
CA-CW-FXDB-03410.204099-LT1257806779

Exhibit "1"
Page 57



# ALTA INFORMATION COLLECTION FORM

| Attach Legible copy of government issued identification (i.e. passport, driver's license, etc.) | | | |
|---|---|---|---|
| Type of ID | Issuing State or Country | Gov't ID No. | |
| Last Name | First Name | | M.I. |
| Date of Birth | Occupation | Individual Taxpayer ID No. *(if none write N/A)* | % of ownership |
| Address | City | State | Zip |

| Attach Legible copy of government issued identification (i.e. passport, driver's license, etc.) | | | |
|---|---|---|---|
| Type of ID | Issuing State or Country | Gov't ID No. | |
| Last Name | First Name | | M.I. |
| Date of Birth | Occupation | Individual Taxpayer ID No. *(if none write N/A)* | % of ownership |
| Address | City | State | Zip |

| Attach Legible copy of government issued identification (i.e. passport, driver's license, etc.) | | | |
|---|---|---|---|
| Type of ID | Issuing State or Country | Gov't ID No. | |
| Last Name | First Name | | M.I. |
| Date of Birth | Occupation | Individual Taxpayer ID No. *(if none write N/A)* | % of ownership |
| Address | City | State | Zip |

ALTA Information Collection Form (Rev. 12/2018)
SSCORPD5620.doc / Updated:  01.03.19                    Page 4

Printed:  04.10.26 @ 08:29 AM by
CA-CW-FXDB-03410.204099-LT1257806779

Exhibit "1"
Page 58



# ALTA INFORMATION COLLECTION FORM

| Attach Legible copy of government issued identification (i.e. passport, driver's license, etc.) | | | |
|---|---|---|---|
| Type of ID | Issuing State or Country | Gov't ID No. | |
| Last Name | First Name | | M.I. |
| Date of Birth | Occupation | Individual Taxpayer ID No. *(if none write N/A)* | % of ownership |
| Address | City | | State | Zip |

| Attach Legible copy of government issued identification (i.e. passport, driver's license, etc.) | | | |
|---|---|---|---|
| Type of ID | Issuing State or Country | Gov't ID No. | |
| Last Name | First Name | | M.I. |
| Date of Birth | Occupation | Individual Taxpayer ID No. *(if none write N/A)* | % of ownership |
| Address | City | | State | Zip |

I declare that to the best of my knowledge, the information I have furnished is true, correct and complete.  I understand that this Title Company will rely on this information for the purposes of completing any reports made pursuant to an obligation under 31 U.S.C. § 5326(a).

IN WITNESS WHEREOF, the undersigned have executed this document on the date(s) set forth below.

| Signature: | Date: |
|---|---|
| Type or Print Name: | Title: |

ALTA Information Collection Form (Rev. 12/2018)
SSCORPD5620.doc / Updated:  01.03.19          Page 5          Printed:  04.10.26 @ 08:29 AM by
CA-CW-FXDB-03410.204099-LT1257806779

Exhibit "1"
Page 59

# UNINSURED DEED AFFIDAVIT
# DECLARATION OF CONVEYANCE

**Order No.:**   LT1257806779
**Property:**   1501 Serenade Terrace (Corona Del Mar Area)
Newport Beach, CA 92625

This declaration is in connection with the deed recorded _____ as Instrument No. _____ executed by the undersigned, a copy of which is attached for reference.

The undersigned declares as follows:

1.  That the undersigned did execute and deliver the subject deed to the Grantee or authorized representative.

2.  That the undersigned, in the execution and delivery of the subject deed, acted voluntarily and did not act under coercion or duress.

3.  That the undersigned no longer has any interest in the property described in the subject deed.

4.  That the obligations of _____, the Grantee, to the undersigned in connection with the transfer of the property described in the subject deed have been fully paid and/or satisfied.

This declaration is made for the protection of the parties involved in the transfer of title and their successors.

This declaration is also for the protection of Lawyers Title Company who must rely on this document as a legal and proper transfer in connection with the issuance of policies of title insurance.

The undersigned will testify as to the truth of facts set forth hereinabove in the event an action is instituted disputing these facts.

IN WITNESS WHEREOF, the undersigned have executed this document on the date(s) set forth below.

_____
Signature

_____
Print Name

_____
Signature

_____
Print Name

Affidavit (Uninsured Deed - Generic)
SCA0002941.doc / Updated:  12.06.22                     Page 1            Printed:  04.10.26 @ 08:29 AM by
CA-CW-FXDB-03410.204099-LT1257806779

Exhibit "1"
Page 60

## UNINSURED DEED AFFIDAVIT
## DECLARATION OF CONVEYANCE
(continued)

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of _____

County of _____

Subscribed and sworn to (or affirmed) before me on this _____ day of _____, 20___, by

_____,
proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

_____
Signature

Affidavit (Uninsured Deed - Generic)                                                      Printed:  04.10.26 @ 08:29 AM by
SCA0002941.doc / Updated:  12.06.22                Page 2                CA-CW-FXDB-03410.204099-LT1257806779

Exhibit "1"
Page 61



**STATEMENT OF INFORMATION
CONFIDENTIAL INFORMATION
FOR YOUR PROTECTION**

**Escrow No.:** LT1257806779

Completion of this statement expedites your application for title insurance, as it assists in establishing identity, eliminating matters affecting persons with similar names and avoiding the use of fraudulent or forged documents.  Complete all blanks (please print) or indicate "none" or "N/A."  If more space is needed for any item(s), use the reverse side of the form.  Each party (and spouse/domestic partner, if applicable) to the transaction should personally sign this form.

## NAME AND PERSONAL INFORMATION

_____ Date of Birth _____
First Name            Middle Name              Last Name              Maiden Name
                                          (If none, indicate)

Home Phone _____ Business Phone _____ Birthplace _____

Cell Phone _____ Fax _____ Email _____

Social Security No. _____ Driver's License No. _____

List any other name you have used or been known by _____

State of residence _____ I have lived continuously in the U.S.A. since _____

Are you currently married? ☐ Yes   ☐ No   Are you currently a registered domestic partner? ☐ Yes   ☐ No

If yes, complete the following information:

     Date and place of marriage _____

     Spouse/Domestic Partner _____ Date of Birth _____
                              First Name     Middle Name    Last Name    Maiden Name
                                             (If none, indicate)

     Home Phone _____ Business Phone _____ Birthplace _____

     Cell Phone _____ Fax _____ Email _____

     Social Security No. _____ Driver's License No. _____

     List any other name you have used or been known by _____

     State of residence _____ I have lived continuously in the U.S.A. since _____

## CHILDREN

Child Name: _____ Date of Birth: _____ Child Name: _____ Date of Birth: _____

Child Name: _____ Date of Birth: _____ Child Name: _____ Date of Birth: _____
(if more space is required, use reverse side of form)

## RESIDENCES (LAST 10 YEARS)

_____
Number & Street                              City                              From (date) to (date)

_____
Number & Street                              City                              From (date) to (date)
(if more space is required, use reverse side of form)

## OCCUPATIONS/BUSINESSES (LAST 10 YEARS)

_____
Firm or Business Name                        Address                           From (date) to (date)

_____
Firm or Business Name                        Address                           From (date) to (date)
(if more space is required, use reverse side of form)

## SPOUSE'S/DOMESTIC PARTNER'S OCCUPATIONS/BUSINESSES (LAST 10 YEARS)

_____
Firm or Business Name                        Address                           From (date) to (date)

_____
Firm or Business Name                        Address                           From (date) to (date)
(if more space is required, use reverse side of form)

Statement of Information  (UE-34 (Rev. 06-08))                                          Printed:  04.10.26 @ 08:29 AM by
SCA0000279.doc / Updated:  02.14.25                     Page 1                    CA-CW-FXDB-03410.204099-LT1257806779

Exhibit "1"
Page 62

# STATEMENT OF INFORMATION
# CONFIDENTIAL INFORMATION FOR YOUR PROTECTION
(continued)

## PRIOR MARRIAGE(S) and PRIOR DOMESTIC PARTNERSHIP(S)

Any prior marriages or domestic partnerships for either person? _____ If yes, complete the following:

Prior spouse's (Party A) name: _____ Prior Spouse of Party A: _____

Marriage ended by: ☐ Death ☐ Divorce/Dissolution ☐ Nullification   Date of Death/Divorce: _____

Prior spouse's (Party B) name: _____ Prior Spouse of Party B: _____ Spouse

Marriage ended by: ☐ Death ☐ Divorce/Dissolution ☐ Nullification   Date of Death/Divorce: _____

(if more space is required, use reverse side of form)

## INFORMATION ABOUT THE PROPERTY

Buyer intends to reside on the property in this transaction:  ☐ Yes    ☐ No

### Owner to complete the following items

Street Address of Property in this transaction: _____

The land is ☐ unimproved; or improved with a structure of the following type: ☐ A Single or 1-4 Family ☐ Condo Unit ☐ Other _____

Improvements, remodeling or repairs to this property have been made within the past six (6) months: ☐ Yes   ☐ No

If yes, have all costs for labor and materials arising in connection therewith been paid in full?    ☐ Yes  ☐ No

Any current loans on property? _____ If yes, complete the following:

Lender_____ Loan Amount_____ Loan Account No. _____

Lender_____ Loan Amount_____ Loan Account No. _____

The undersigned declare, under penalty of perjury, that the foregoing is true and correct.

IN WITNESS WHEREOF, the undersigned have executed this document on the date(s) set forth below.

_____          _____
Signature                                                    Date

_____
Print Name

_____          _____
Signature                                                    Date

_____
Print Name

(Note:  If applicable, both spouses/domestic partners must sign.)
### THANK YOU.

Statement of Information (UE-34 (Rev. 06-08))                                                                   Printed:  04.10.26 @ 08:29 AM by
SCA0000279.doc / Updated:  02.14.25                              Page 2                         CA-CW-FXDB-03410.204099-LT1257806779

Exhibit "1"
Page 63



Exhibit "1"
Page 64

This map/plat is being furnished as an aid in locating the herein described Land in relation to adjoining streets, natural boundaries and other land, and is not a survey of the land depicted. Except to the extent a policy of title insurance is expressly modified by endorsement, if any, the Company does not insure dimensions, distances, location of easements,

050-28

442-41

442-01

1" = 100'

EAST COAST HIGHWAY

BONNIE DOONE TERRACE

TERRACE

SANTANELLA TERRACE

SERENADE TERRACE

DOLPHIN TERRACE

BAYSIDE DRIVE

RAMONA DRIVE

NO. 1701

NO. 2334

TRACT

BLK. 94 IRVINE SUB. 236
PORLOT B.445

27    29    40

ASSESSOR'S MAP
BOOK 050 PAGE 28
COUNTY OF ORANGE

NOTE – ASSESSOR'S BLOCK &
PARCEL NUMBERS
SHOWN IN CIRCLES

IRVINE SUB. 1701
TRACT NO. 1701          M.M. 1-88
TRACT NO. 2334          M.M. 52-9, 10
                        M.M. 62-20

MARCH 1954

This map/plat is being furnished as an aid in locating the herein described Land in relation to adjoining streets, natural boundaries and other land, and is not a survey of the land depicted. Except to the extent a policy of title insurance is expressly modified by endorsement, if any, the Company does not insure dimensions, distances, location of easements, acreage or other matters shown thereon.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
23101 Lake Center Drive, Suite 355, Lake Forest, Ca 92630.

A true and correct copy of the foregoing documents entitled (*specify*): **MOTION OF CHAPTER 11 TRUSTEE FOR ORDER: (1) APPROVING SALE OF REAL PROPERTY OF THE ESTATE, FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES, PURSUANT TO 11 U.S.C. §§ 363(B), 363(F) AND 363(M); (2) APPROVING OVERBID PROCEDURES; (3) AUTHORIZING TRUSTEE TO PAY ALLOWED SECURED CLAIMS, COSTS OF SALE, AND BROKER COMMISSIONS IN FULL FROM NET SALE PROCEEDS; AND (4) WAIVING THE STAY OF RULE 6004 (H); MEMORANDUM OF POINTS AND AUTHORITIES, DECLARATIONS OF THOMAS H. CASEY AND TIM SMITH IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On April 30, 2026 , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Reem J Bello    rbello@goeforlaw.com, kmurphy@goeforlaw.com**
- **Anthony Bisconti    tbisconti@bklwlaw.com, 1193516420@filings.docketbird.com,docket@bklwlaw.com**
- **Thomas H Casey (TR)    msilva@tomcaseylaw.com, thc@trustesolutions.net**
- **Matthew Tyler Davis    tdavis@kbkllp.com**
- **George Gerro    george@gerrolaw.com**
- **Robert P Goe    rgoe@goeforlaw.com, kmurphy@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goeforlaw.com**
- **Christopher J Harney    charney@tocounsel.com, kmanson@tocounsel.com**
- **Paul Jasper    pjasper@perkinscoie.com, david.kline@rimonlaw.com**
- **Steven J. Katzman    skatzman@bklwlaw.com, 1193516420@filings.docketbird.com,docket@bklwlaw.com**
- **Maxim B Litvak    mlitvak@pszjlaw.com**
- **Bahram Paya    brian.paya@payafirm.com**
- **Charles Pernicka    charles@opuslawfirm.com**
- **Todd C. Ringstad    becky@ringstadlaw.com, arlene@ringstadlaw.com**
- **Matthew Rosene    mrosene@epgrlawyers.com**
- **United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov**
- **David B Zolkin    dzolkin@wztslaw.com, maraki@wztlfirm.com,sfritz@wztlfirm.com,admin@wztlfirm.com**

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On  April 30, 2026, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Honorable Mark D. Houle, U.S. Bankruptcy Court, Ronald Reagan Federal Building, 411 W. Fourth St., Suite 6135, Courtroom 6C, Santa Ana, CA 92701-4593

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____ , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 30, 2026 | Becky Metzner | /s/ Becky Metzner |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*  **F 9013-3.1.PROOF.SERVICE**